**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARIE TRAVIS, on behalf of herself and all
others similarly situated,

Plaintiff,

-against-

NAVIENT CORPORATION and NAVIENT
SOLUTIONS, INC.,

Defendants.

Case No. 2:17-CV-04885-JFB-GRB

## DEFENDANTS' COMBINED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND .................................................................................................. 2

    A.    NSL And Its Loan Servicing Operations ............................................. 2

    B.    Travis And Her Student Loans ............................................................. 3

    C.    The Complaint ...................................................................................... 4

II.   ARGUMENT ....................................................................................................... 7

    A.    The Complaint Fails To State A Claim Under Rules 12(b)(6) and 9(b) ................ 7

        1.    The Complaint Should Be Dismissed Based On HEA Preemption .......... 8

        2.    Even If Preemption Did Not Apply, Travis Does Not State A
Claim ................................................................................................ 11

            a.    The Claim Under The DCFA Fails For Multiple Reasons .......... 11

            b.    Travis' Contract Claim Is Entirely Baseless ................................ 12

            c.    The Claim For Violation Of Section 349 Likewise Is
Defeated ............................................................................... 16

            d.    Count IV For Declaratory Judgment Also Should Be
Dismissed .............................................................................. 18

    B.    If The Complaint Survives The Motion To Dismiss, Which It Should Not,
The Court Should Strike The Class Allegations ................................ 18

III.  CONCLUSION .................................................................................................. 23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

AAA Life Ins. Co. v. Kneavel,
  No. 1:10-CV-00158, 2012 WL 895953 (M.D. Pa. Mar. 15, 2012) ........................................16

Altria Group, Inc. v. Good,
  555 U.S. 70 (2008).................................................................................................................8

Amchem Prods. Inc. v. Windsor,
  521 U.S. 591 (1997)...............................................................................................................20

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009).............................................................................................................7

Astra USA, Inc. v. Santa Clara County,
  563 U.S. 110 (2011)...............................................................................................................13

Auguste v. Wing,
  1996 U.S. Dist. LEXIS 20118 (E.D.N.Y. Nov. 18. 1996)......................................................19

Ayco Co., L.P. v. Lipton,
  2012 U.S. Dist. LEXIS 123044 (W.D. Pa. Aug. 29, 2012) ....................................................12

Bd. of Trs. of the S. Cal. Ibew-Neca Defined Contribution Plan v. Bank of N.Y.
  Mellon Corp.,
  287 F.R.D. 216 (S.D.N.Y. 2012) ............................................................................................20

Binder v. Weststar Mortg., Inc.,
  2016 U.S. Dist. LEXIS 90620 (E.D. Pa. July 13, 2016)........................................................18

Brooks v. Sallie Mae, Inc.,
  2011 Conn. Super. LEXIS 52 (Conn. Sup. Court Jan. 4, 2011) ..............................................9

Chae v. SLM Corp.,
  593 F.3d 936 (9th Cir. 2010) .......................................................................................3, 8, 9, 10

Cipollone v. Liggett Group,
  505 U.S. 504 (1992)................................................................................................................8

Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Washington,
  699 F.2d 1274 (D.C. Cir. 1983)..............................................................................................16

College Loan Corp. v. SLM Corp.,
  396 F.3d 588 (4th Cir. 2005) ...................................................................................................9

Crawford v. Franklin Credit Mgmt. Corp.,
    758 F.3d 473 (2d Cir. 2014)............................................................16

In re Currency Conversion Fee Antitrust Litig.,
    230 F.R.D. 303 (S.D.N.Y. 2004) ...................................................20

Duquesne Light Co. v. Westinghouse Elec. Corp.,
    66 F.3d 604 (3d Cir. 1995)...........................................................17

DuRocher v. NCAA,
    2015 U.S. Dist. LEXIS 41110 (S.D. Ind. Mar. 31, 2015).......................19

Eames v. Nationwide Mut. Ins. Co.,
    412 F. Supp. 2d 431 (D. Del. 2006)...............................................12

Edwards v. Ocwen Loan Servicing, LLC,
    24 F. Supp. 3d 21 (D.D.C. 2014) .................................................14

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974)...................................................................22

Equal Rights Ctr. v. Kohl's Corp.,
    2015 U.S. Dist. LEXIS 71529 (N.D. Ill. June 3, 2015) .......................19

Federal Nat'l Mortg. Ass'n v. LeCrone,
    868 F.2d 190 (6th Cir. 1989) .......................................................14

Fiore v. McDonald's Corp.,
    1996 U.S. Dist. LEXIS 12354 (E.D.N.Y. June 24, 1996) ...................7, 12

Freightliner Corp. v. Myrick,
    514 U.S. 280 (1995).....................................................................8

Gen. Tel. Co. of Southwest v. Falcon,
    457 U.S. 147 (1982)...................................................................19

In re Initial Pub. Offerings Secs. Litig.,
    471 F.3d 24 (2d Cir. 2006).........................................................21

Kalin v. Xanboo, Inc.,
    526 F. Supp. 2d 392 (S.D.N.Y. 2007)...........................................17

Kearns v. Ford Motor Co.,
    567 F.3d 1120 (9th Cir. 2009) .......................................................8

Kottler v. Deutsche Bank AG,
    2010 U.S. Dist. LEXIS 30590 (S.D.N.Y. March 29, 2010) ...................22

L'Ggrke v. Benkula,
        966 F.2d 1346 (10th Cir. 1992) ........................................................14

Labickas v. Arkansas State Univ.,
        78 F.3d 333 (8th Cir. 1996) ............................................................14

Estate of Leventhal v. Wells Fargo Bank, N.A.,
        2015 U.S. Dist. LEXIS 129402 (S.D.N.Y. Sept. 25, 2015)...................18

Luce v. Edelstein,
        802 F.2d 49 (2d Cir. 1986)..............................................................7

Luppe v. Cheswick Generating Station,
        2015 U.S. Dist. LEXIS 9791 (W.D. Pa. Jan. 28, 2015)......................19

M&T Bank Corp. v. LaSalle Bank Nat. Ass'n,
        852 F. Supp. 2d 324 (W.D.N.Y. 2012) ..............................................15

MacKenzie v. Flagstar Bank FSB,
        738 F.3d 486 (1st Cir. 2013) ...........................................................14

McCulloch v. PNC Bank Inc.,
        298 F.3d 1217 (11th Cir. 2002) ....................................................8, 14

National Union Fire Ins. Co. of Pittsburgh PA v. Rite Aid of South Carolina, Inc.,
        210 F.3d 246 (4th Cir. 2000) ...........................................................16

Nguyen v. US. Catholic Cong.,
        719 F.2d 52 (3d Cir. 1983).............................................................13

Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.,
        558 A.2d 1066 (Del. Super. Ct. 1989) ..............................................11

Norton v. Town of Islip,
        678 Fed. Appx. 17 (2d Cir. 2017) .....................................................18

Parks Sch. Of Business, Inc. v. Symington,
        51F.3d 1480, 1484 (9th Cir. 1995) ..................................................14

Paul v. Bank of Am. Corp.,
        2011 U.S. Dist. LEXIS 15569 (E.D.N.Y. Feb. 14, 2011).....................15

Pelman v. McDonald's Corp.,
        237 F. Supp. 2d 512 (S.D.N.Y. 2003).................................................16

Perron v. JP Morgan Chase Bank, N.A.,
        2014 WL 931897 (S.D. Inc. Mar. 10, 2014)......................................14

Quincy Park Condo. Unit Owners' Ass'n v. D.C. Bd. of Zoning Adjustment,
    4 A.3d 1283 (D.C. Cir. 2010) ................................................................17

Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.,
    68 F.3d 1478 (2d. Cir. 1995).................................................................17

Rey-Willis v. Citibank, N.A.,
    No. 03 CIV 2006, 2004 WL 315267 (S.D.N.Y. Feb. 18, 2004) ...........................16

Rivera v. Bank of Am. Home Loans,
    2011 U.S. Dist. LEXIS 43138 (E.D.N.Y. April 21, 2011) ......................................13

Sanders v. Apple, Inc.,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................21

Sanon v. Dep't of Higher Ed.,
    453 F. App'x 28 (2d Cir. 2011) ............................................................14

Schwartz v. Lights of Am.,
    No. CV-11-1712, 2012 WL 4497398 (C.D. Cal. Aug. 31, 2012)............................12

Slovinec v. DePaul Univ.,
    332 F.3d 1068 (7th Cir. 2003) .............................................................14

Stearns v. Select Comfort Retail Corp.,
    2009 U.S. Dist. LEXIS 112971 (N.D. Cal. Dec. 4, 2009) .....................................19

Thomas M Cooley Law School v. American Bar Ass'n,
    459 F.3d 705 (6th Cir. 2006) ..............................................................14

Travelers Indem. Co. v. Household Int'l, Inc.,
    775 F. Supp. 518 (D. Conn. 1991) ........................................................16

United States v. Gorski,
    No. 11-4252, 2012 WL 12886823 (C.D. Cal. Mar. 22, 2012)..................................8

United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.,
    414 F.3d 558 (5th Cir. 2005) ..............................................................17

Voss v. Bank of Am., N.A.,
    2015 U.S. Dist. LEXIS 173143 (N.D.N.Y. Dec. 30, 2015).....................................15

Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541 (2011)..............................................................18, 19, 20

Williams v. National Sch. of Health Tech., Inc.,
    836 F. Supp. 273 (E.D. Pa. 1993) .........................................................14

In re Worldcom, Inc.,
   343 B.R. 412 (Bankr. S.D.N.Y. 2006) ..........................................................22

Worldspan, L.P. v. Ultimate Living Grp., LLC,
   390 F. Supp. 2d 412 (D. Del. 2005) ...........................................................11

Zinser v. Accufix Research Inst., Inc.,
   253 F.3d 1180 (9th Cir. 2001) .........................................................20, 21, 22

**Statutes**

34 C.F.R. § 682.202 .........................................................................................3

34 C.F.R. § 682.208 .........................................................................................3

34 C.F.R. § 682.209 .........................................................................................3

34 C.F.R. §§ 682.210–211 ..............................................................................3

34 C.F.R. § 682.700(a) .....................................................................................3

34 C.F.R. § 682.706 .........................................................................................3

34 C.F.R. § 685.202 .........................................................................................3

34 C.F.R. §§ 685.204–205 ..............................................................................3

34 C.F.R. § 685.208 .........................................................................................3

6 Del. C. § 2511(6) .........................................................................................11

6 Del. C. § 2512 .............................................................................................11

6 Del. C. § 2513(a) .........................................................................................11

6 Del. C. § 2525(a) .........................................................................................12

77 Fed. Reg. 42,086-01 (July 17, 2012) .........................................................3

20 U.S.C. § 1070(b) .......................................................................................14

20 U.S.C. § 1071 .............................................................................................2

20 U.S.C. § 1082(a)(1) ...............................................................................3, 14

20 U.S.C. § 1087a .........................................................................................2, 3

20 U.S.C. § 1087e ............................................................................................3

20 U.S.C. § 1087e(a)(1) ................................................................................3

20 U.S.C. § 1098a(a)(1) ...............................................................................3

20 U.S.C. § 1098a(b)(1) ...............................................................................3

20 U.S.C. § 1098g ........................................................................................8

Delaware Consumer Fraud Act, Del. C. 1953, § 2513, et seq. ............................................. *passim*

Health Care and Education Reconciliation Act,
    Pub. L. 111-152, § 2201 et seq. (Mar. 30, 2010) ....................................................2

Higher Education Act,
    Pub. L. No. 89-329, 79 Stat. 1219 (1965)................................................... *passim*

N.Y. Gen. Bus. Law § 349............................................................................ *passim*

U.S. Const. art. VI, cl. 2 ...............................................................................8

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................7

Fed. R. Civ. P. 19........................................................................................15

Fed. R. Civ. P. 19(a)(l)(B) ...........................................................................15

Fed. R. Civ. P. 23........................................................................................2, 18

Fed. R. Civ. P. 23(a) ...............................................................................18, 19, 20

Fed. R. Civ. P. 23(b) ...................................................................................18

Fed. R. Civ. P. 23(b)(2)................................................................................18

Fed. R. Civ. P. 23(b)(3)...........................................................................18, 20

Fed. R. Civ. P. 23(c)(1)................................................................................19

Defendant Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL"), is a servicer of federally owned or guaranteed student loans. In her Class Action Complaint (Docket Entry 1, the "Complaint"), plaintiff Marie Travis ("Travis") alleges that NSL improperly "steered" her and other delinquent borrowers into loan forbearance programs, which allow borrowers to defer payments on a short-term basis, rather than offering those borrowers income driven repayment ("IDR") programs, which could permit lower monthly payments over the term of the loans. In Travis' view, NSL secures greater profits through this alleged practice. Accordingly, based on these contentions, Travis asserts claims against NSL for herself and two supposed classes of borrowers on federally owned or guaranteed student loans for: (1) violation of the Delaware Consumer Fraud Act, Del. C. 1953, § 2513, et seq. (the "DCFA"); (2) breach of NSL's servicing contract with the United States Department of Education ("ED"); (3) violation of N.Y. Gen. Bus. Law § 349 ("Section 349"); and (4) declaratory judgment, seeking a finding that the alleged "steering" is unlawful. However, while the Complaint is sprawling – consisting of 54 pages and 161 paragraphs – the allegations are insufficient to plead a cause of action for Travis and they also affirmatively demonstrate that no class could be certified here.

Indeed, as explained below, all of Travis' claims are preempted by the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965) (the "HEA"). Travis' claims are, in essence, grounded in NSL's alleged failure to disclose, and preemption under the HEA therefore plainly applies. However, even if preemption did not apply, Travis does not state a claim against NSL. For instance, Count I fails because the DCFA applies to the sale, lease or advertisement of merchandise, not to the servicing of student loans years after origination. Also, Count II should be dismissed because, contrary to her position, Travis is not a third-party beneficiary of the servicing contract between NSL and ED and, in any event, she does not allege a specific portion

1

of the servicing contract that supposedly was breached.  Meanwhile, Count III is defeated because Travis has failed to plead her claim under Section 349 with the specificity required by Federal Rule of Civil Procedure 9(b).  Moreover, Count IV is untenable because declaratory relief is not an independent cause of action.

In addition, setting aside the fact that the Complaint should be dismissed based on these deficiencies alone, the Court should strike the class allegations.  Those allegations turn upon advice that NSL supposedly should have given during conversations between NSL's loan servicing representatives and supposedly millions of borrowers.  Given such allegations, Travis could not meet the requirements of commonality, predominance and superiority under Rule 23 and, thus, no class could be certified.  The Court therefore should grant the Motion.

## I.    Background

### A.    NSL and Its Loan Servicing Operations

As noted above, NSL is a servicer of federally owned or guaranteed student loans. (Complaint, p. 1).  With respect to federal loans, more than 50 years ago, Congress enacted the HEA and began to "provide financial assistance for students in postsecondary and higher education."  Pub. L. No. 89-329, 79 Stat. 1219 (1965).  The "financial assistance for students" is covered in Title IV of the HEA.  Thus, for instance, until 2010, loans were originated under the Federal Family Education Loan Program, 20 U.S.C. § 1071, et seq. (the "FFELP").  On FFELP loans, the federal government acts as the ultimate guarantor.  NSL continues to service those loans.[1]  Additionally, loans are originated under the William D. Ford Direct Loan Program, 20 U.S.C. § 1087a, et seq. (the "Direct Loan Program").  On Direct Loans, the federal government is the lender.  NSL services some of those loans as well, and "loans made to borrowers [under

---

[1]    In 2010, Congress terminated lending under the FFELP.  Health Care and Education Reconciliation Act, Pub. L. 111-152, § 2201 et seq. (Mar. 30, 2010).  No new FFELP Loans were disbursed after June 30, 2010.  Id.

2

the Direct Loan Program] shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made to borrowers under [the FFELP]."  20 U.S.C. § 1087e(a)(1).

The servicing of these federal loans is highly regulated.  See Chae v. SLM Corp., 593 F.3d 936, 945 (9th Cir. 2010) (noting that Congress "instruct[ed]" ED to "[e]stablish a set of rules that will apply across the board.").  Through a public notice and comment process, detailed and extensive regulations have been promulgated prescribing every aspect of federal student loan servicing, including charges to borrowers (34 C.F.R. § 682.202, § 685.202), repayment plans (§ 682.209, § 685.208), deferment and forbearance (§§ 682.210–211, §§ 685.204–205) and due diligence in seeking payments (§ 682.208).  ED may limit the participation of a federal student loan servicer that violates any statutory provision, regulation or agreement (§ 682.700(a)).  In some circumstances, it can terminate participation entirely (§ 682.706).  ED administers the program and has broad and exclusive authority to prescribe servicer requirements.  20 U.S.C. §§ 1082(a)(1), 1087a, 1087e. ED's rules are the product of statutorily required "negotiated rulemakings" in which ED develops regulations in public meetings with representatives of interested parties.  20 U.S.C. § 1098a(a)(1), (b)(1).  Recent negotiated rulemaking sessions have developed rules for alternative repayment options, forbearance and electronic notices to borrowers. See, e.g., 77 Fed. Reg. 42,086-01 (July 17, 2012).

## B.    Travis And Her Student Loans

Travis is a New York resident who obtained two federal student loans to pay for her education at Briarcliff College.  (Complaint, ¶ 22).  NSL serviced those loans pursuant to an agreement with ED (the "Servicing Contract").  (Complaint, ¶ 137).  Travis alleges that the Servicing Contract calls for NSL "to provide 'any potential services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt.'"  (Complaint, ¶ 55).

Travis alleges that, during the course of her education, she was diagnosed with a life-threatening medical condition that she survived, but that prevented her from working. (Complaint, ¶¶ 108, 113).  She therefore was unable to make her regular student loan payments, and she contacted NSL to inquire about repayment options.  (Complaint, ¶¶ 109 - 110).  Travis does not allege the date, time or specific content of any conversation she had with NSL, but states that NSL "never" informed her of the purportedly more favorable IDR option, instead steering her toward an expensive and disadvantageous forbearance.  (Complaint, ¶¶ 110 - 115). For instance, Travis alleges the following representations were made (or not made) to her:

- NSL told her that she would need to continue paying the entire monthly payment. (Complaint, ¶ 110).

- NSL told Plaintiff she had only two choices: pay the full amount or enter forbearance.  (Complaint, ¶ 111).

- NSL has not informed Plaintiff about IDR.  (Complaint, ¶¶ 110 - 116).

Travis asserts that, as a result of NSL's alleged misrepresentations or omissions regarding IDR and forbearance, she suffered financial harm and emotional distress.  (Complaint, ¶ 117).

### C.    The Complaint

The Complaint is premised on the allegation that federal student loans provide key benefits that private student loans do not, including flexible repayment options like IDR. (Complaint, ¶ 6).  Federal loans can also enter into forbearance, which temporarily delays monthly loan payments.  (Complaint, ¶ 7).  Travis alleges that, although IDR is often a better option for borrowers, servicers must invest more time and resources to determine a borrower's eligibility for IDR and to help the borrower apply, as opposed to simply placing the borrower in forbearance.  (Complaint, ¶ 8).

Nonetheless, according to Travis, both ED and NSL have made representations indicating that borrowers can rely on servicers to educate them and assist with repayment options.

(Complaint, ¶¶ 9 - 11).  Travis alleges that ED advises borrowers through its website to contact their servicers before applying for any alternative repayment plans, including by instructing borrowers that, "before you apply for an income-driven repayment plan, contact your loan servicer if you have any questions.  Your loan servicer will help you decide whether one of these plans is right for you."  (Complaint, ¶ 9 (emphasis added)).  Based on such statements, ED "encouraged borrowers to contact their student loan servicers for advice and information about repayment options."  (Id.).

In tandem with these allegations regarding ED, Travis asserts that NSL, "and other servicers, have also actively advertised their role in educating borrowers about and assisting borrowers with their repayment options."  (Complaint, ¶ 10).  In support of this allegation, Travis identifies the following types of statements by NSL in 10-K filings and on its website:

- We help our customers navigate the path to financial success through proactive outreach and emphasis on identifying the payment plan that best fits their individual budgets and financial goals.  (Complaint, ¶ 31(b)) (emphasis added).

- [I]f you're having trouble, there are options for assistance, including income-driven repayment plans, deferment, forbearance, and solutions to help you avoid delinquency and prevent default . . . We can work with you to help you get back on track, and are sometimes able to offer new or temporarily reduced payment schedules.  Contact us at 800-722-1300 and let us help you make the right decision for your situation.  (Complaint, ¶ 78(b)) (emphasis added).

- [NSL] is committed to giving you the information and tools you need to understand and evaluate your student loan payment options.  We can help you

5

find an option that fits your budget, simplifies payment, and minimizes your total interest cost. (Complaint, ¶ 78(a) (emphasis added)).

However, NSL allegedly failed to provide adequate assistance, instead steering borrowers toward repayment options that were easy for NSL to manage, but more costly for the borrowers. (Complaint, ¶¶ 12, 14). Travis alleges that NSL "enrolled over 1.5 million borrowers nationwide in two or more consecutive forbearances totaling twelve months or longer" (Complaint, ¶ 99), meaning that her Complaint places at issue millions of independent factual circumstances, telephone conversations, and personal financial decisions.

Based on these allegations, and as noted above, Travis asserts claims against NSL for: (1) violation of the DCFA; (2) breach of the Servicing Contract, as a supposed third-party beneficiary; (3) violation of Section 349; and (4) declaratory judgment. Travis purports to bring these claims for herself and a nationwide class or, alternatively, a New York class, as follows:

> All individuals who are direct student loan borrowers from the federal government and who had at least one federal loan serviced by [defendants] and/or any of [their] predecessors between January 1, 2010 and the present who were placed in forbearance. [("Nationwide Class")].
>
> . . .
>
> All residents of New York who are direct student loan borrowers from the federal government and who had at least one federal loan serviced by [defendants] and/or any of [their] predecessors between January 1, 2010 and the present who were placed in forbearance. [("New York Class")].

(Complaint, ¶¶ 118 - 119).

In the prayer for relief, Travis seeks certification of the proposed classes, a declaration that NSL's conduct is unlawful, injunctive relief, damages, interest, attorneys' fees and costs. (Complaint, p. 52).

## II.      Argument

### A.      The Complaint Fails To State A Claim Under Rules 12(b)(6) and 9(b).

It is axiomatic that, to survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n] -- 'that the pleader is entitled to relief.'" Ashcroft, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. at 1949 (citing Twombly, 550 U.S. at 557).

Further, on fraud-based claims, a heightened pleading standard applies.  Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  Fiore v. McDonald's Corp., 1996 U.S. Dist. LEXIS 12354, *25-26 (E.D.N.Y. June 24, 1996) (citing Tel-Phonic Services, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1138 - 39 (5th Cir. 1992)).  "The complaint must specify the fraudulent conduct that is alleged, and the allegations must be supported by factual assertions."  See Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986).  Additionally, because "nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded

7

with particularity under Rule 9(b)."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir.

2009).

### 1.     The Complaint Should Be Dismissed Based On HEA Preemption.

The Supremacy Clause of the United States Constitution provides that federal law "shall

be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  The United States Supreme Court,

in interpreting that clause, has held that "state laws that conflict with federal law are without

effect."  Altria Group, Inc. v. Good, 555 U.S. 70, 70 (2008).  Federal preemption occurs, for

example, where Congress has "explicitly stated [as much] in the statute's language" (express

preemption) or where state law "actually conflicts with federal law" (conflict preemption).

Cipollone v. Liggett Group, 505 U.S. 504, 516 (1992).  Conflict preemption can occur in two

situations:  (1) when "it is impossible for a private party to comply with both state and federal

requirements"; or (2) when "state law stands as an obstacle to the accomplishment and execution

of the full purposes and objectives of Congress."  Freightliner Corp. v. Myrick, 514 U.S. 280,

287 (1995).

As relevant here, the HEA provides that "[l]oans made, insured, or guaranteed pursuant

to a program authorized by Title IV of the Higher Education Act . . . shall not be subject to any

disclosure requirement of any State law."  20 U.S.C. § 1098g.  Under the doctrine of express

preemption, that section has been interpreted as requiring dismissal of state law claims against

student loan servicers for alleged misrepresentations or omissions of fact.  See, e.g., Chae, 593

F.3d at 936 (claims against student loan servicer under California unfair business practice statute

alleging deceptive servicing methods were preempted by the HEA); McCulloch v. PNC Bank

Inc., 298 F.3d 1217, 1226 (11th Cir. 2002) ("Congress specifically intended for the HEA to

preempt any State disclosure requirements relating to loans under the federal guaranteed student

loan program.") (interpreting predecessor to 20 U.S.C. § 1098g); United States v. Gorski,

No. 11-4252, 2012 WL 12886823, at *7 (C.D. Cal. Mar. 22, 2012) (dismissing state consumer protection claims asserted against government in connection with student loans because such claims are preempted by HEA).  Moreover, courts have also found that conflict preemption can apply to the HEA.  See, e.g., College Loan Corp. v. SLM Corp., 396 F.3d 588, 595-96 (4th Cir. 2005); Chae, 593 F.3d at 943; Brooks v. Sallie Mae, Inc., 2011 Conn. Super. LEXIS 52, *22 - 23 (Conn. Sup. Court Jan. 4, 2011).  In such cases, the courts look not just at the language of the HEA itself, but also the extensive regulations promulgated thereunder.  See, e.g., Chae, 593 F.3d at 943.

    With respect to the preemption analysis here, the Chae decision is particularly instructive. In Chae, borrowers brought state law claims against loan servicers based on alleged misrepresentations related to interest calculation on billing statements, late fee assessment and repayment start dates.  Id. at 938.  The borrowers asserted claims sounding in contract, state business law and state consumer-protection law (and including misrepresentation).  Id. at 941. The Ninth Circuit upheld the district court's ruling on summary judgment, holding that all claims asserted by the borrowers were preempted, either under express preemption or conflict preemption.  Id.  The court found that, "[a]t bottom, the plaintiffs' misrepresentation claims are improper-disclosure claims.  The plaintiffs do not contend that California law prevents [defendant] from employing any of the three loan-servicing practices at issue.  We consider these allegations in substance to be a challenge to the allegedly-misleading method [defendant] used to communicate with the plaintiffs about its practices."  Id. at 942 - 943.  Thus, the court found that the misrepresentation claims were expressly preempted by HEA.  Id. at 943.  As for the remaining claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing and the use of fraudulent and deceptive practices apart from the

billing statements, the court held that they were barred by conflict preemption.  Id. at 947.  The

court held that "Congress intended uniformity within the [HEA and its related regulations].  The

statutory design, its detailed provisions for the [loan program's] operation, and its focus on the

relationship between borrowers and lenders persuade us that Congress intended to subject [loan

program] participants to uniform federal law and regulations."  Id.  Accordingly, the state law

claims that could introduce varying requirements were preempted.  Id. at 950.

Here, preemption is appropriate for the same reasons.  Travis may contend that her state

law consumer-protection claims turn not on the statements made to her, but rather on NSL's

policy of steering borrowers to forbearance.  But Travis does not contend that the practice of

allowing a forbearance is unlawful – only that she was not adequately informed about her

options and that she was misled about whether she "could rely on [NSL] to examine borrowers'

financial situations and determine the best repayment plan."  (Complaint, ¶ 129).  Indeed, on the

claims under the DCFA and Section 349, Travis explicitly references "[NSL's] representations

as to what services they were providing."  (Complaint, ¶¶ 133, 153).  Likewise, in her breach of

contract claim, Travis faults NSL for its alleged failure "to educate borrowers about IDR plans"

and to "inform borrowers about IDR plans."  (Complaint, ¶ 140).  Thus, these claims relate to

disclosures (or the alleged lack of disclosures) and are expressly preempted under the HEA.

Moreover, Travis' claims are barred by conflict preemption because Congress intended to

create a uniform structure for servicing these loans that is inconsistent with allowing individual

state law causes of action.  Allowing state statutes to be used to interpret whether the millions of

separate statements made by NSL to borrowers were sufficient to inform and educate borrowers

about repayment options would create a significant obstacle to implementation of the HEA's

statutory purpose and the related regulatory scheme. Accordingly, all of Travis' claims are preempted, and the case should be dismissed.

> **2.    Even If Preemption Did Not Apply, Travis Does Not State A Claim.**
>
> **a.    The Claim Under The DCFA Fails For Multiple Reasons.**

The DCFA is intended to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce." 6 Del. C. § 2512. To that end, the DCFA provides a private right of action where a defendant engages in deceptive conduct "in connection with the <u>sale, lease or advertisement</u> of any <u>merchandise</u>" which is defined as "any objects, wares, goods, commodities, intangibles, real estate or services." <u>See</u> 6 Del. C. § 2511(6), 2513(a) (emphasis added). As courts have noted, "the clear language of the statute . . . restricts its application to deceptive practices in connection with the sale or advertisement of the merchandise [and therefore] . . . post-sale representations which are not connected to the sale or advertisement of the [merchandise] do not constitute consumer fraud under the Act." <u>Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.</u>, 558 A.2d 1066, 1074 (Del. Super. Ct. 1989).

Here, the Complaint does not allege that NSL sold, leased or advertised <u>anything</u> to Travis. (<u>See generally</u> Complaint). Further, even if obtaining a student loan could fairly be construed as a purchase of "services" – and it should not – there is no allegation that NSL engaged in any deceptive conduct "in connection with" Travis applying for and obtaining any student loans. To the contrary, the Complaint relies on alleged conduct by NSL during the 10-plus years <u>after</u> she took out her loans. (Complaint, ¶ 107). Thus, the DCFA simply does not apply in these circumstances. <u>See</u> <u>Worldspan, L.P. v. Ultimate Living Grp., LLC</u>, 390 F. Supp. 2d 412, 414-15 (D. Del. 2005) (stating that the "[DCFA] provides remedies for violations of the 'vertical' relationship between a consumer and a seller of services.").

11

However, even if the DCFA did apply, Travis fails to plead her claim with the particularity required by Rule 9(b).  See Eames v. Nationwide Mut. Ins. Co., 412 F. Supp. 2d 431, 438 (D. Del. 2006) (holding that Rule 9(b) applies to claims under DCFA).  Travis must plead the "time, place, and contents" of the alleged deceptive conversation, "as well as the identity of the person making the misrepresentation and what he obtained thereby."  Fiore, 1996 U.S. Dist. LEXIS 12354 at *25-26.  Although Travis alleges that NSL told her she had to choose between full payment and forbearance, and never mentioned IDR (Complaint, ¶¶ 110-111, 113-115), she fails to identify the date, place or content of any misrepresentation allegedly directed at her or the identity and position of any person who allegedly engaged in deceptive conduct.  She therefore fails to satisfy Rule 9(b).

Finally, dismissal also is warranted because claims under the DCFA may "be brought in any court of competent jurisdiction in [Delaware]." 6 Del. C. § 2525(a).  This Court, obviously, is not in Delaware.  See Schwartz v. Lights of Am., No. CV-11-1712, 2012 WL 4497398, at *5 (C.D. Cal. Aug. 31, 2012) ("Delaware[] limit[s] private actions to transactions that occurred in the state, and require that the suit be brought in a court within the state.").

### b.    Travis' Contract Claim Is Entirely Baseless.

As an initial matter, Travis purports to be a third-party beneficiary of the Servicing Contract between NSL and ED.  Pursuant to settled law, a third-party beneficiary can be either an intended or incidental beneficiary when "the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  Ayco Co., L.P. v. Lipton, 2012 U.S. Dist. LEXIS 123044, *9 (W.D. Pa. Aug. 29, 2012) (citing Restatement (Second) of Contracts § 302 (1979)).  However, the relevant precedent further holds that participants in government programs, like Travis, are incidental, rather than intended,

12

beneficiaries of contracts between the government and its vendors and, therefore, cannot pursue remedies for alleged breach directly against the vendor.  The reasoning is straightforward: Government contracts by their very nature benefit the public, but individual members of the public are only incidental beneficiaries with no right to sue for breach unless the contract or the law authorizing the contract manifests a contrary intent.  See Restatement (Second) of Contacts § 313(2) ("[A] promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform" unless the contract itself or the applicable law indicates otherwise); see also Rivera v. Bank of Am. Home Loans, 2011 U.S. Dist. LEXIS 43138, *13 (E.D.N.Y. April 21, 2011) (adopting analysis in Restatement§ 313(2)); Nguyen v. U.S. Catholic Cong., 719 F.2d 52, 55-56 (3d Cir. 1983) (same).  Accordingly, "a plaintiff claiming to be the intended third party beneficiary of a government contract must show that he was 'intended to benefit from the contract and that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it.'"  Rivera, 2011 U.S. Dist. LEXIS 43138 at *14.  Further, the United States Supreme Court has concluded that a beneficiary of a government program may not sue to enforce a government contract when the statute giving rise to the contract provides no private right of action.  Astra USA, Inc. v. Santa Clara County, 563 U.S. 110 (2011).  As the Supreme Court explained, "[t]he absence of a private right to enforce the statutory . . . obligations would be rendered meaningless if [participants in government program] could overcome that obstacle by suing to enforce the contract's . . . obligations instead."  Id. at 119.

Under Astra USA, Rivera and the Restatement, Travis is not a third-party beneficiary of the Servicing Contract since no contract term or statute allows for such status.  There is no

provision in the Servicing Contract that renders a servicer liable to borrowers for any alleged failure to advise of IDR programs, nor is there any statutory right of action under the HEA.  In fact, courts universally acknowledge that the HEA affords no private right of action to individual borrowers like Travis.  See Sanon v. Dep't of Higher Ed., 453 F. App'x 28, 30 (2d Cir. 2011); Thomas M Cooley Law School v. American Bar Ass'n, 459 F.3d 705, 710-11 (6th Cir. 2006); Slovinec v. DePaul Univ., 332 F.3d 1068, 1069 (7th Cir. 2003); McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1225 (11th Cir. 2002); Labickas v. Arkansas State Univ., 78 F.3d 333, 334 (8th Cir. 1996); Parks Sch. of Business, Inc. v. Symington, 51F.3d 1480, 1484 (9th Cir. 1995); L'Ggrke v. Benkula, 966 F.2d 1346 (10th Cir. 1992); Williams v. National Sch. of Health Tech., Inc., 836 F. Supp. 273, 278-80 (E.D. Pa. 1993).  Rather, the HEA confers upon the Secretary of ED exclusive authority to implement and enforce the HEA, including with respect to third-party servicers.  See, e.g., 20 U.S.C. §§ 1070(b), 1082(a)(1).

Moreover, and unsurprisingly, courts consistently reject efforts by borrowers to assert rights under government contracts with loan servicers.  See, e.g., MacKenzie v. Flagstar Bank FSB, 738 F.3d 486, 492 (1st Cir. 2013) (finding that borrower is not a third-party beneficiary of agreement between loan servicer and Fannie Mae under federal Home Affordable Modification Program); Federal Nat'l Mortg. Ass'n v. LeCrone, 868 F.2d 190, 193 (6th Cir. 1989) ("[N]o express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies").  Instead, loan servicers have been exposed to liability only when a separate contract exists with the borrower, or when there is express assumption of liability on the borrower's note.  See, e.g., Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 28 (D.D.C. 2014); Perron v. JP Morgan Chase Bank, N.A., 2014 WL 931897, at *4 (S.D. Ind. Mar. 10, 2014).

Nevertheless, even if Travis were a third-party beneficiary, her claim still is defeated. Very simply, Travis does not allege the breach of any specific term in the Servicing Contract. She avers that NSL breached the contract by "failing to properly service borrowers' federal student loans and instead, focusing on its own profits." (Complaint, ¶ 139). Travis further states that "[NSL] failed to educate borrowers about IDR plans and failed to assist borrowers in choosing an appropriate repayment plan." (Complaint, ¶ 140). She does not, however, point to any term in the Servicing Contract that requires the servicer to enroll borrowers in any particular repayment plan or to offer a specific form of notice, education or assistance concerning IDR options. Thus, Travis fails to state a claim. See M&T Bank Corp. v. LaSalle Bank Nat. Ass'n, 852 F. Supp. 2d 324, 334 (W.D.N.Y. 2012) ("A claim or counterclaim based on breach of contract must identify the specific contractual provision(s) allegedly breached."); Paul v. Bank of Am. Corp., 2011 U.S. Dist. LEXIS 15569, *5 (E.D.N.Y. Feb. 14, 2011) (same); Voss v. Bank of Am., N.A., 2015 U.S. Dist. LEXIS 173143, *22 (N.D.N.Y. Dec. 30, 2015) (same).

Nonetheless, assuming that Travis could establish a breach of the Servicing Contract, the claim should be dismissed under Rule 19 for failure to join ED as a necessary and indispensable party. Rule 19 provides, in relevant part, that a party must be joined if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

Both prongs of Rule 19(a)(1)(B) are satisfied here. ED is, of course, a party to the Servicing Contract, so interpreting the contract without ED's involvement would impair ED's ability to protect its own interests and would subject NSL to a risk of inconsistent obligations. In

fact, it is beyond dispute that all parties to a contract must be involved in litigation interpreting that contract.  See, e.g., National Union Fire Ins. Co. of Pittsburgh PA v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 251-52 (4th Cir. 2000) (contracting party has direct interest in action seeking declaration of rights under contract); Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington, 699 F.2d 1274, 1279-80 (D.C. Cir. 1983) (breach of contract action properly dismissed where party to contract not able to be joined); AAA Life Ins. Co. v. Kneavel, No. 1:10-CV-00158, 2012 WL 895953, at 3 (M.D. Pa. Mar. 15, 2012) ("[I]n breach-of-contract actions, all parties to the contract should be joined."); Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) ("[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party.").  Because ED is a necessary and indispensable party in litigation of the Servicing Contract, Count II should be dismissed for failure to join.

       **c.**       **The Claim For Violation Of Section 349 Likewise Is Defeated.**

Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  NY Gen. Bus. § 349(a).  However, Count III fails here because Travis does not meet the requirements of Rule 9(b).  See Rey-Willis v. Citibank, N.A., No. 03 CIV 2006, 2004 WL 315267, at *1 (S.D.N.Y. Feb. 18, 2004) ("[A] § 349 claim must be pled in accordance with Rule 9(b)"); Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 526 (S.D.N.Y. 2003) (same).  To state a claim under Section 349, a plaintiff "must prove three elements:  first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014).

Here, Travis falls short of adequately pleading an act or practice that was misleading in a material way.  Again, although Travis alleges that NSL told her she had to choose between full payment and forbearance, and never mentioned IDR (Complaint, ¶¶ 110-111, 113-115), she fails to identify the date, place or content of any misrepresentation allegedly directed at her or the identity and position of any person who allegedly engaged in deceptive conduct.  She therefore does not satisfy Rule 9(b).  See Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 401 (S.D.N.Y. 2007) ("Rule 9(b) requires that Plaintiff's pleadings lay out the fraud with particularity, including 'the who, what, when, where, and how [of the fraud]: the first paragraph of any newspaper story.'").

Travis may contend that her claim is based only on NSL's alleged nondisclosure of more favorable repayment options, but this argument also should not succeed.  "[A] concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose." Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2d. Cir. 1995); see also United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 567 (5th Cir. 2005) (nondisclosure is neither fraudulent nor negligent in the absence of a duty to disclose); Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 611 (3d Cir. 1995) (to be liable for nondisclosure, a party must have a "duty to speak," which exists in only "limited circumstances").  And a person may reasonably rely on another to act as a fiduciary only where such a legal duty exists.  See, e.g., Quincy Park Condo. Unit Owners' Ass'n v. D.C. Bd. of Zoning Adjustment, 4 A.3d 1283, 1290 (D.C. Cir. 2010) (reliance on fiduciary entity to disclose information was reasonable "[g]iven the duties of loyalty and care imposed by law on a fiduciary").

Here, under these settled principles, NSL's relationship with borrowers is that of an arm's-length loan servicer, not a fiduciary counselor.  A servicer's role is to collect payments

owed by borrowers.  Courts therefore routinely hold that servicers "do not owe borrowers any specific fiduciary duties based upon their servicer/borrower relationship."  Binder v. Weststar Mortg., Inc., 2016 U.S. Dist. LEXIS 90620, *65 (E.D. Pa. July 13, 2016); see also Estate of Leventhal v. Wells Fargo Bank, N.A., 2015 U.S. Dist. LEXIS 129402, *32 (S.D.N.Y. Sept. 25, 2015) (noting "general rule that lenders do not owe borrowers special duties").  Thus, even if Travis frames her claim as a failure to disclose, it should be dismissed.

> d.     **Count IV For Declaratory Judgment Also Should Be Dismissed.**

Because Counts I through III are subject to dismissal, Count IV likewise fails.  "[T]he Declaratory Judgment Act 'is procedural only . . . and does not create an independent cause of action.'"  Norton v. Town of Islip, 678 Fed. Appx. 17, 22 (2d Cir. 2017).  Thus, when no other claims survive the pleading stage, a court lacks jurisdiction to hear a claim for declaratory relief.  Id.

> **B.     If The Complaint Survives The Motion To Dismiss, Which It Should Not, The Court Should Strike The Class Allegations.**

Class actions under Federal Rule 23 are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011).  Thus, as an initial matter, Rule 23(a) requires a plaintiff to establish numerosity, commonality, typicality and adequacy of representation; these requirements "limit the class claims to those fairly encompassed by the named plaintiff's claims."  Dukes, 131 S. Ct. at 2550 (quotations omitted).  The requirements of Rule 23(b) also must be met (and Travis purports to pursue the classes under Rule 23(b)(3)).[2]  (Complaint ¶ 121); see also Fed. R. Civ. P. 23(b)(3) (requiring a court to find "that the questions of law or

---

[2]     The Complaint references certification under Rule 23(b)(2), as well, but then contains no allegations directed to those requirements.  (See Complaint, ¶¶ 118, 119).  Defendants therefore assume that the references are in error.

fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). "The party seeking certification has the burden of demonstrating that all of the criteria are met." Auguste v. Wing, 1996 U.S. Dist. LEXIS 20118, *18 (E.D.N.Y. Nov. 18. 1996). Further, under Rule 23(c)(1), "a certification determination [must] be made '(a)s soon as practicable after the commencement of the action.'" See Fed. R. Civ. P. 23(c)(1).

Against this background, and particularly in view of Rule 23(c)(1)'s requirement of a prompt determination, the Supreme Court has reasoned that class certification issues are sometimes "plain enough from the pleadings" that discovery is not necessary to dispose of a proposed class. Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982). Thus, when presented with appropriate circumstances, courts will strike class allegations at the pleading stage. See, e.g., Equal Rights Ctr. v. Kohl's Corp., 2015 U.S. Dist. LEXIS 71529, *9 (N.D. Ill. June 3, 2015); DuRocher v. NCAA, 2015 U.S. Dist. LEXIS 41110, *42 (S.D. Ind. Mar. 31, 2015); Luppe v. Cheswick Generating Station, 2015 U.S. Dist. LEXIS 9791, *18 (W.D. Pa. Jan. 28, 2015); Stearns v. Select Comfort Retail Corp., 2009 U.S. Dist. LEXIS 112971, at *45 (N.D. Cal. Dec. 4, 2009).

This action certainly presents the appropriate circumstances for striking the class allegations because Travis cannot demonstrate commonality, predominance, or superiority. Under Rule 23(a), there must be "questions of law or fact common to the class." But a common question of law "does not mean merely that [the class members] have all suffered a violation of the same provision of law." Dukes, 131 S. Ct. at 2551. Rather, the claim must depend on a "common contention" that is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims

19

in one stroke." Id.  "What matters to class certification . . . is not the raising of common

'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate

common <u>answers</u> apt to drive the resolution of the litigation."  Id. (emphasis in original).

Meanwhile, Rule 23(b)(3) allows a class action to be maintained where "questions of law

or fact common to class members predominate over any questions affecting only individual

members, and . . . a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."   However, the Supreme Court has held that, although the

predominance requirement of Rule 23(b)(3) overlaps in some ways with the commonality

requirement of Rule 23(a), it is "far more demanding" because it "tests whether [the] proposed

classes are sufficiently cohesive to warrant adjudication by representation."  <u>Amchem Prods. Inc.</u>

<u>v. Windsor</u>, 521 U.S. 591, 623-24 (1997).  "[I]f the main issues in a case require the separate

adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would

be inappropriate. . . .  Moreover, when individual rather than common issues predominate, the

economy and efficiency of class action treatment are lost and the need for judicial supervision

and the risk of confusion are magnified."  <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180,

1189 (9th Cir. 2001) (citing 7A Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure § 1778 (2d ed. 1986)); <u>Bd. of Trs. of the S. Cal. Ibew-Neca Defined Contribution Plan</u>

<u>v. Bank of N.Y. Mellon Corp.</u>, 287 F.R.D. 216, 226 (S.D.N.Y. 2012) (denying class certification

where "individual issues of fact predominate and generalized proof would not suffice"); <u>In re</u>

<u>Currency Conversion Fee Antitrust Litig.</u>, 230 F.R.D. 303, 309 (S.D.N.Y. 2004) ("[A] plaintiff

must establish that the issues in the class action that are subject to generalized proof, and thus

applicable to the class as a whole, predominate over those issues that are subject only to

individualized proof.").  Indeed, courts have held that, when even a single essential element of a

20

proposed class claim must be resolved on an individual basis, predominance is defeated.  See, e.g., Zinser, 253 F.3d at 1189; In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

Here, Travis' proposed classes plainly do not meet the requisite standards because the ultimate analysis of liability will require a highly fact-intensive and individualized analysis of the interactions that NSL had with millions of borrowers.  In this regard, the decision in Sanders v. Apple, Inc., 672 F. Supp. 2d 978 (N.D. Cal. 2009), is instructive.  In Sanders, plaintiffs brought a putative class action against a computer manufacturer, alleging that they had purchased computer monitors based on sales materials that led them to believe that the monitors were of the same quality as previous-generation monitors, despite having inferior color resolution and a narrower viewing angle.  Id. at 982-83.  Plaintiffs asserted claims against defendant on behalf of a nationwide class for fraudulent concealment, among other things.  Id. at 983.  In response, defendant moved to strike the class allegations on the grounds that individual reliance issues related to the fraud allegations, which predominated over common questions.  Id. at 991.  The court agreed, explaining:

> [A]n adequate pleading of fraudulent concealment requires specific allegations that the plaintiff would not have acted as he did if he had known of the concealed or suppressed fact.  This requirement inquires into the specific facts surrounding each buyer's transaction, and is functionally equivalent to the 'reliance element' [of affirmative misrepresentation.]  If the proposed class were to be certified, the [c]ourt would be forced to engage in individual inquiries of each class member with respect to materiality of the statement, whether the member saw [defendant's] advertisements or visited [defendant's] website, and what caused the member to make the purchase.

Id. at 991.

Likewise, the viability of the claims that could be asserted on behalf of the nationwide class or the New York class alleged by Travis turns on the specific interaction that each putative class member had with NSL.  The classes purport to include anyone "placed in forbearance" by

21

NSL – a group that, according to Travis, numbers at least 1.5 million  (Complaint, ¶¶ 99, 118-119).  To determine if each class member has a claim, the Court would need to consider the nature of the putative class member's communications with NSL, whether the putative class member was eligible for IDR or any other alternative payment method, whether NSL adequately communicated that eligibility to them and whether the putative class member relied on the information (or lack of information) from NSL in choosing forbearance.  Courts uniformly hold that such fraud-based allegations are not suitable for class treatment, given the requirement of predominance.  See, e.g., In re Worldcom, Inc., 343 B.R. 412, 426 (Bankr. S.D.N.Y. 2006) ("A class action is generally not appropriate to resolve claims based upon common law fraud because each class member must prove his or her own reliance."); Kottler v. Deutsche Bank AG, 2010 U.S. Dist. LEXIS 30590, *8 (S.D.N.Y. March 29, 2010) ("Plaintiffs in a fraud-based class-action would need to produce evidence of individualized reliance, resulting in a series of mini-trials within a class-action framework.").

Moreover, a request for certification here would fail the requirement of superiority.  The superiority element tests whether the prevalence of individual issues will render certification inappropriate.  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"  Zinser, 253 F.3d at 1192.  The superiority factor "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164 (1974).  Here, it is obvious that class litigation of Travis' Complaint would be entirely inappropriate and unmanageable.  There are millions of potential class members, each of whom may have viewed or heard any number of representations, such as those set forth in the Complaint (see supra, pp. 5-6).  The need to evaluate each of these claims

22

individually creates an insurmountable hurdle to class certification, and the requirement of superiority could not be met.

**III.     Conclusion**

For the foregoing reasons, the Complaint should be dismissed or, alternatively, the class allegations should be stricken.

Dated: November 22, 2017                    VEDDER PRICE (CA), LLP


By:   */s/ Lisa M. Simonetti*

                    Lisa M. Simonetti (admitted *pro hac vice*)
                    lsimonetti@vedderprice.com
                    1925 Century Park East, Suite 1900
                    Los Angeles, California 90067
                    T:  +1 424 204 7700
                    F:  +1 424 204 7702

                    VEDDER PRICE P.C.
                    Ashley B. Huddleston
                    ahuddleston@vedderprice.com
                    1633 Broadway, 31st Floor
                    New York, New York 10019
                    T:  +1 212 407 7700
                    F:  +1 212 407 7799

                    Bryan K. Clark (admitted *pro hac vice*)
                    bclark@vedderprice.com
                    222 N. LaSalle Street
                    Chicago, IL 60601
                    T:  +1 312 609 7810
                    F:  +1 312 609 5005

                    Attorneys for Defendants
                    NAVIENT CORPORATION and
                    NAVIENT SOLUTIONS, LLC, formerly
                    known as NAVIENT SOLUTIONS, INC.