# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

MARIE TRAVIS, on behalf of herself and all others similarly situated,

        Plaintiff,

  vs.

NAVIENT CORPORATION & NAVIENT SOLUTIONS, INC.,

        Defendants.

Case No. 2:17-cv-04885-JFB-GRB

**PLAINTIFF MARIE TRAVIS'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT ........................................................................................................6

I.      Plaintiff's Claims Are Not Preempted Because the Higher Education Act's Only
        Express Preemption Provision Does Not Apply and Her Claims Do Not Conflict
        With Federal Law. ...................................................................................6

        A.      Plaintiff's Claims Are Not Expressly Preempted Because Her Claims Do Not
                Challenge a Federally-Approved Disclosure. ..........................................7

        B.      Plaintiff's Claims Are Not Impliedly Preempted Because They Do Not
                Conflict With Any Provision of the HEA and Are Consistent With
                Congressional Intent. ..........................................................................9

II.     Plaintiff Adequately Pleads Navient Violated Delaware's Consumer Fraud Act and
        New York's General Business Law § 349. ..............................................10

        A.      Fed. R. Civ. P. 9(b) Does Not Apply to Plaintiff's Consumer Protection
                Claims and Those Claims Survive Regardless of the Standard Applied. ...........10

                1.      *Rule 9(b) does not apply to Plaintiff's GBL § 349 or DCFA claims.* .......10

                2.      *Plaintiff's Plain Allegations Satisfy Any Pleading Standard.*....................11

        B.      Plaintiff States a Claim for Violation of the DCFA. ...............................13

        C.      Plaintiff States a Claim for a Violation of GBL § 349. ...........................15

                1.      *Navient's Deceptive Acts Were Directed at Consumers.*...........................15

                2.      *Navient's Deceptive Acts Were Misleading In a Material Way* ...............16

                3.      *Plaintiff and the Class Suffered Injury as a Result of Navient's
                        Deceptive Acts*...........................................................................17

        III.    Plaintiff Adequately Pleads Navient's Breach of Contract....................18

                1.      *Plaintiff Is an Intended Third Party Beneficiary of the Servicing Contract.* .........18

                2.      *The DOE is Not an Indispensable Party to Plaintiff's Contract Claim.*................22

IV.    Plaintiff Properly Pleads a Claim for Declaratory Judgment..................................23

V.    Navient's Motion to Strike Class Allegations Is Inappropriate at this Stage. .......23

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) .................................................................... 17

*Astra USA, Inc. v. Santa Clara County, California*,
  563 U.S. 110 (2011) ................................................................................ 21, 22

*Ayers v. Quillen*,
  No. A03C-02-004, 2004 WL 1965866 (Del. Sup. Ct. Mar. 26, 2004) .............................. 13, 14

*Bank v. Am. Home Shield Corp.*,
  No. 10-cv-4014, 2013 WL 789203 (E.D.N.Y. 2013) ................................................ 24

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) ...................................................... 23, 24, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 6

*Bible v. United Student Aid Funds*,
  799 F.3d 633 (7th Cir. 2015) ......................................................................... 9

*Brady v. Basic Research, L.L.C.*,
  101 F. Supp. 2d 217 (E.D.N.Y 2015) ................................................................ 24

*Bridge v. Phx. Bond & Idem. Co.*,
  553 U.S. 639 (2008) ................................................................................. 25

*Broadview Chem. Corp. v. Loctite Corp.*,
  417 F.2d 998 (2d Cir. 1969) ........................................................................ 23

*Brown v. Hambric*,
  168 Misc. 2d 502 (N.Y. City Ct. 1995) .............................................................. 15

*Calibuso v. Bank of Am. Corp.*,
  893 F. Supp. 2d 374 (E.D.N.Y. 2012) ............................................................... 23

*CFPB v. Frederick Hanna*,
  114 F. Supp. 3d 1342 (N.D. Ga. 2015) ........................................................... 10, 11

*Chae v. SLM Corp.*,
  593 F.3d 936 (9th Cir. 2010) ......................................................................... 8

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002) ........................................................................20

*Chen v. Street Beat Sportswear, Inc.*,
 226 F. Supp. 2d 355 (E.D.N.Y. 2002) .......................................................... 19

*Chenensky v. N.Y. Life Ins. Co.*,
 No. 07-cv-11504, 2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) ................... 24

*Chen–Oster v. Goldman, Sachs & Co.*,
 877 F. Supp. 2d 113 (S.D.N.Y. 2012) ........................................................... 24

*College Loan Corp. v. SLM Corp. LP*,
 396 F.3d 588 (4th Cir. 2005) ........................................................................... 9

*Conboy v. AT & T Corp.*,
 241 F.3d 242 (2d Cir. 2001) .......................................................................... 16

*Cont'l Cas. Co. v. Coastal Sav. Bank*,
 977 F.2d 734 (2d Cir. 1992) .......................................................................... 23

*CP Sols. PTE, Ltd. V. Gen. Elec. Co.*,
 553 F.3d 156 (2d Cir. 2009) .......................................................................... 22

*DeJesus v. BAC Home Loans Servicing, LP*,
 No. 13-CV-2864, 2014 WL 4804999 (E.D.N.Y. Sept. 26, 2014) ................... 23

*DFP Mfg. Corp. v. Northrop Grumman Corp.*,
 No. 97-CV-4494, 1999 WL 33458384 (E.D.N.Y. Mar. 23, 1999) ............ 18, 19

*Fed. Ins. Co. v. Safenet, Inc.*,
 758 F. Supp. 2d 251 (S.D.N.Y. 2010) ........................................................... 22

*Fed. Nat'l Mortg. Ass'n v. LeCrone*,
 868 F.3d  (6th Cir. 1989) ............................................................................... 21

*Flexfab, LLC v. United States*,
 424 F.3d 1254 (Fed. Cir. 2005) ..................................................................... 19

*Freudenberg v. E*Trade Financial Corp.*,
 712 F. Supp. 2d 171 (S.D.N.Y. 2010) ............................................................. 6

*FTC v Freecom Commc'ns, Inc.*,
 401 F.3d 1192 (10th Cir. 2005) ..................................................................... 11

*Genna v. Sallie Mae, Inc.*,
 No. 11-CV-7371, 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012) .............. 7, 8, 9

*Goldberg v. Manhattan Ford Lincoln-Mercury, Inc.*,
    492 N.Y.S.2d 318 (N.Y. Sup. Ct. 1985) ................................................ 16

*Greene v. Gerber Prods. Co.*, No.16-cv-1153,
    2017 WL 3327583 (E.D.N.Y. 2017) ................................................ 24

*Harnish v. Widener Univ. School of Law*,
    931 F. Supp. 2d 641 (D.N.J. 2013) ................................................ 13, 15

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
    No. 13-MD-2450 KMK, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ............ 7

*In re Ramos*,
    No. 11-BR-2642, 2012 WL 2974900 (Bankr. N.D. Iowa July 20, 2012) ............ 12

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    818 F.3d 98 (2d Cir. 2016) ................................................ 7

*In re Worldcom, Inc.*,
    343 B.R. 412 (Bankr. S.D.N.Y. 2006) ................................................ 24

*Ironforge.com v. Paychex, Inc.*,
    747 F. Supp. 2d 384 (W.D.N.Y. 2010) ................................................ 24

*Jaser v. New York Property Ins. Underwriting Assoc.*,
    815 F.2d 240 (2d Cir. 1987) ................................................ 22

*Kapsis v. Am. Home Mortg. Servicing Inc.*,
    923 F. Supp. 2d 430 (E.D.N.Y. 2013) ................................................ 16

*Keiler v. Harlequin Enterprises, Ltd.*,
    751 F.3d 64 (2d Cir. 2014) ................................................ 6

*Kottler v. Deutsche Bank AG*,
    No. 5-CV-7773, 2010 WIL 1221809 (S.D.N.Y) ................................................ 24

*MacKenzie v. Flagstar Bank FSB*,
    738 F.3d 486 (1st Cir. 2013) ................................................ 21

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ................................................ 15

*Mayfield v. Asta Funding*,
    95 F. Supp. 3d 685 (S.D.N.Y. 2015) ................................................ 24

*Mazzola v. Roomsters Corp.*,
    849 F. Supp. 2d 395 (S.D.N.Y. 2012) ................................................ 23, 24

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ............................................................................ 25

*Montana v. United States*,
    124 F.3d 1269 (Fed. Cir. 1997) ...................................................................... 19

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,
    No. 14-cv-7539, 2016 WL 1274541 (E.D.N.Y. 2016) ............................ 23

*Nat'l Sur Corp. v. United States*,
    31 Fed. Cl. 565 (1994) ............................................................................. 18, 19

*New York Citizens Comm. on Cable TV v. Manhattan Cable TV, Inc.*,
    651 F. Supp. 802 (S.D.N.Y. 1986) ................................................................ 18

*New York v. Feldman*,
    210 F. Supp. 2d 294 (S.D.N.Y. 2002) ........................................................ 15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) .......................................................................................... 15

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005) ............................................................................ 10

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003) ........................................................ 10

*People ex rel. Cuomo v. Dell, Inc.*,
    873 N.Y.S.2d 236 (N.Y. Sup. Ct. 2008) .................................................... 16

*Prophet v Myers*,
    645 F. Supp. 2d 614 (S.D. Tex. 2008) ........................................................ 11

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015) ................................................. passim

*Rivera v. Bank of Am. Home Loans*,
    No. CV-09-2450, 2011 WL 1533474 (E.D.N.Y. Apr. 21, 2011) ............ 21

*Schuerman v. United States*,
    30 Fed. Cl. 420 (1994) ...................................................................................... 19

*Schwartz v. Lights of Am.*,
    No. CV-11-1712, 2012 WL 4497398 (C.D. Cal. Aug. 31, 2012) .......... 14, 15

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
   130 S. Ct. 1431 (2010) .................................................................................... 15

*Sykes v. Mel S. Harris & Associates LLC*,
   780 F.3d 70 (2d Cir. 2015) ............................................................................. 25

*Starr v. Sony BMG Music*,
   *Entert.*, 592 F.3d 314 (2d Cir. 2010) ............................................................. 6

*Sussman v I.C. System, Inc.*,
   928 F. Supp. 2d 784 (S.D.N.Y. 2013) ............................................................ 7

*Teller v. Bill Hayes, Ltd.*,
   213 A.D.2d 141 (2d Dep't 1995) ............................................................. 16, 17

*Ward v. TheLadders.com, Inc.*,
   3 F. Supp. 3d 151 (S.D.N.Y. 2014) ........................................................ 17, 24

*Washington v. William H. Porter, Inc.*, N17C–01–170 EMD,
   2017 WL 3098210 (Del. Sup. Ct. July 20, 2017) .............................. 11, 13, 24

*Wilson v. N.W. Mut. Ins. Co.*,
   625 F.3d 54 (2d Cir. 2010) ............................................................................. 15

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ......................................................................................... 7

*Yarber v. ING Bank*,
   285 F.R.D. 308 (D. Del. 2012) ...................................................................... 13

*Young v. Joyce*,
   351 A.2d 857 (Del. 1975) .............................................................................. 13

## Statutes

6 Del. C. § 2525(a) ............................................................................................ 14, 15
6 Del. C. § 2513 ...................................................................................................... 13
20 U.S.C. § 1098g .............................................................................................. 6, 7, 8
28 U.S.C. § 1332 ..................................................................................................... 15
28 U.S.C. § 2201 ..................................................................................................... 23
New York GBL § 349 ......................................................................................... passim

## Rules

Fed. R. Civ. P. 9(b) ........................................................................................... passim
Fed. R. Civ. P. 12(b)(6) ........................................................................................... 6

Fed. R. Civ. P. 19 ................................................................................................................. 22, 23
Fed. R. Civ. P. 23 ................................................................................................................. 24, 25

**Other Authorities**

Restatement (Second) Contracts § 302 (Am. Law Inst. 1981) ..................................................... 19
Restatement (Second) Contracts § 313 ......................................................................................... 18

Plaintiff Marie Travis ("Travis" or "Plaintiff") submits this opposition to Navient Corporation and Navient Solutions, Inc.'s (collectively, "Navient" or "Defendants") Motion to Dismiss and Motion to Strike Class Allegations.

## INTRODUCTION

Plaintiff has asserted four claims against Navient for the breach of its promises and contractual obligation to provide services to federal student loan borrowers. Travis alleges Navient breached its promise to "help … customers navigate the path to financial success through proactive outreach and emphasis on identifying the payment plan that best fits their individual budgets and financial goals." (Travis Compl. ¶ 71, ECF 1; *see also id.* at ¶¶ 11, 71a-d, 78a-g.) After a life-threatening medical condition prevented Travis from working, she contacted Navient for help managing her student loans. (*Id.* at ¶¶ 108-10.) Rather than provide the services it promised, and is contractually obligated to provide, Navient instructed Travis she could either enter forbearance or make her full loan payments. (*Id.* at ¶ 110.) Unable to afford her monthly payments, Travis followed Navient's advice and entered forbearance, where her debt grew rapidly. (*Id.* at ¶¶ 110-11.)

Travis had no knowledge of any other repayment options available to her. (*Id.*) Under the direct federal student loan program, the federal government allows borrowers to tie their monthly payments to their income, sometimes paying as little as $0 per month and offering loan forgiveness within 20-25 years. (*Id.* at ¶¶ 58-60.) These benefits are specifically designed to help borrowers, like Plaintiff, who are facing financial hardship. (*Id.* at ¶¶ 58-59.)

In January 2017, actions by the Consumer Financial Protection Bureau ("CFPB") and the Washington and Illinois Attorneys General revealed Navient's scheme to neglect its duty to assist borrowers with repayment options and instead push them into forbearance to increase

Navient's profits. (*See id.* at ¶¶ 85-101.) Plaintiff asserts four claims: (1) violation of the Delaware Consumer Fraud Act ("DCFA"), (2) violation of New York General Business Law ("GBL") § 394, (3) breach of Navient's Servicing Contract with the Department of Education ("DOE"), and, (4) declaratory relief. (*Id.* at ¶¶ 125-161.) Travis brings her claims on behalf of a nationwide class and a New York subclass. (*Id.* at ¶¶ 118-24.)

Navient now seeks to dismiss Travis's Complaint. Navient first unsuccessfully argues that Travis's claims are expressly and impliedly preempted by the Higher Education Act ("HEA"). However, courts do not expressly preempt claims related to the HEA unless they challenge federally-approved disclosures, which are not at issue here. Furthermore, although state law claims may be preempted when they conflict with federal law or congressional intent, Navient has not shown any such conflict here. If anything, Travis's claims align with the policies of the DOE. (*See id.* at ¶¶ 56, 63, 66.)

Navient's challenges to Travis's Delaware and New York consumer protection claims do not warrant dismissal either. The DCFA by its express language covers Navient's alleged misrepresentations, and Travis's Complaint meets each of the requirements to state a claim under New York GBL § 349. Navient also asserts Travis did not plead with sufficient particularity to meet the requirements of Fed. R. Civ. P. 9(b); however, Rule 9(b) does not apply to GBL § 349 and should not apply to the DCFA. Even so, Travis's Complaint sufficiently puts Navient on notice to defend itself. Because Plaintiff sufficiently states claims for breach of contract and for violations of the DCFA and GBL § 349, Travis's request for declaratory judgment also stands.

Finally, Navient's attempt to strike Travis's class allegations is premature and inappropriate at the pleading stage. Travis should be permitted to take discovery related to class certification. Navient fails to demonstrate that any claim should be dismissed, or that class

action allegations should be stricken at this stage. Therefore, the Court should deny the motions in their entirety.

# BACKGROUND

**Federal Direct Student Loans and Navient, a Federal Student Loan Servicer**

The federal direct student loan program is intended to help students finance their higher education through loans offered by the government rather than private lenders. (Compl. ¶¶ 53, 57-59.) To achieve its objectives, the DOE contracts with private loan servicers, who are the points of contact for borrowers seeking loan-related assistance. Navient is one such loan servicer. (*Id.* at ¶ 26, 31a, 70.) Under its Servicing Contract, Navient must provide "any potential services to manage all types of Title IV student aid obligations." (*Id.* at ¶ 80.) Navient is directed not to consider its own revenue growth, but to instead help borrowers reduce loan delinquency and provide flexible services that adapt to new law and policy. (*Id.* at ¶¶ 138-39.)

The DOE has consistently directed borrowers to their servicers for loan-related assistance, including for assistance in identifying appropriate repayment options. (*Id.* at ¶¶ 56, 63, 66a-c.) This service is vital for borrowers because of the complexity of the available repayment options. (*See id.* at ¶¶ 53.) These repayment options are intended to ensure borrowers enduring financial hardship do not become bogged down in unpayable monthly loan payments and skyrocketing debt. (*Id.* at ¶¶ 58-59.) For example, federal direct loan programs offer income-driven repayment ("IDR") plans that tie a borrower's monthly payment to his or her income. (*Id.* at ¶¶ 57-60.) Under IDR plans, some borrowers are eligible for $0 monthly payments and loan forgiveness after 20-25 years. (*Id.* at ¶¶ 58, 60.) To navigate these options, the DOE directs borrowers to their loan servicers, like Navient. (*Id.* at ¶ 66.)

Navient publically represented that it would assist borrowers in assessing appropriate repayment options. (*See id.* at ¶ 71 (Navient will "help . . . customers navigate the path to financial success through proactive outreach and emphasis on identifying the payment plan that best fits their individual budgets and financial goals."); *see also id.* at ¶¶ 11, 71c-d, 73, 78a-g.) Navient, through its own internal investigations, fully understood the need to educate borrowers about IDR. (*Id.* at ¶¶ 72-77.)

Despite its public representations, Navient failed to provide the services it promised. (*Id.* at ¶¶ 85-101.) Investigations by the CFPB, the Illinois Attorney General, and the Washington Attorney General revealed that Navient deliberately steered borrowers into forbearance rather than providing guidance on repayment options, and often never mentioned IDR plans to borrowers in need of help. (*Id.*) This is because, as Navient's CEO stated, "it's very expensive work, for example, to enroll a borrower into something like an income-based repayment program." (*Id.* at ¶ 86; *see also id.* at ¶ 87.) To avoid that expense, Navient implemented a program, including through customer service compensation incentives, to push forbearance and avoid discussing IDR, which takes more time and effort to navigate and requires approval of an application by the DOE. (*Id.* at ¶¶ 92-95.) One former Navient employee revealed that compensation was based on having calls last less than just six minutes. (*Id.* at ¶ 92.) When employees attempted to take the time needed to properly counsel callers, they were "pulled aside and talked to because of [their] higher call times." (*Id.*) As a result of Navient's scheme, its employees discussed forbearance and deferment at around four times more often than other IDR plans within the first 3-6 minutes of conversing with a borrower. (*Id.* at ¶¶ 93-94.) In nearly half of calls, Navient failed to mention IDR options at all. (*Id.* at ¶ 91.)

While borrowers sunk further into debt, Navient benefited handsomely from its scheme. (*Id.* at ¶ 103.) Its large profit came from avoiding the time and effort of presenting IDR options to borrowers, including potentially lengthy and frequent telephone conversations and help with IDR applications. (*Id.* at ¶¶ 88-90.) Under Navient's scheme, less than 1% of borrowers with a loan through the Federal Family Education Loan Program ("FFELP") serviced by Navient were enrolled in an IDR plan, while 9% were placed in forbearance. (*Id.*) Borrowers grew increasingly frustrated with Navient and made a flood of complaints to the CFPB. (*Id.* at ¶ 96.) Navient's scheme added an estimated $4 billion to the national student loan debt. (*Id.* at ¶ 101.)

**Marie Travis's Complaint Against Navient**

Travis attended and graduated from Briarcliffe College in Patchogue, New York, with the help of two federal student loans obtained in 2005-2006. (*Id.* at ¶ 107.) Both loans were serviced by SLM Corp., and later, its successor, Navient. (*Id.*)

In 2016, Travis was diagnosed with an incurable, life-threatening autoimmune syndrome, demanding significant medical attention. (*Id.* at ¶ 108.) Travis spent a month in the hospital, and, although she survived, she was disabled and unable to work. (*Id.* at ¶ 108.) Travis received disability benefits from the State of New York, her only source of income at that time. (*Id.*)

Travis's monthly loan payments of $200 accounted for more than half of her monthly disability benefit. (*Id.* at ¶ 109.) Travis could not afford her loan payments, and contacted Navient to discuss her repayment options. Navient provided her two choices: make her regular payment or enter forbearance. (*Id.* at ¶ 115.) Travis entered forbearance, which she believed to be her best option. (*Id.*) Navient provided no information about any other options. (*Id.* at ¶ 111) Travis spent the next eight months in forbearance. (*Id.* at ¶ 112.)

In January 2017, Travis recovered enough from her condition to return to work. (*Id.*) After making her January payment, her medical condition worsened and she was unable to work. (*Id.* at ¶ 113.) Navient again directed her into forbearance without explaining any other options. (*Id.* at ¶ 114.) Months of forbearance increased Travis's overall debt and almost doubled her already unaffordable loan payments.

Plaintiff brings this action to recover for the economic injuries she suffered because of Navient's misconduct, discussed herein. Plaintiff asserts claims on behalf of a nationwide class for breach of contract as a third party beneficiary to the Servicing Contract, under Delaware's DCFA, and for declaratory relief. (*Id.* at ¶¶ 125-44, 157-61.) She brings claims for violation of New York GBL §349 on behalf of a New York subclass. (*Id.* at ¶¶ 145-56.)

## ARGUMENT

Motions to dismiss "are viewed with disfavor." *Freudenberg v. E*Trade Financial Corp.*, 712 F. Supp. 2d 171, 178 (S.D.N.Y. 2010). A complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it alleges sufficient facts which, when taken as true, state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Keiler v. Harlequin Enterprises, Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014). Rule 12(b)(6) remains a notice pleading standard and *Twombly* requires "only enough facts to state a claim of relief that is plausible on its face." 550 U.S. at 547. Dismissal is reserved for instances in which the alleged facts do not permit the court to infer more than the mere possibility of misconduct. *Starr v. Sony BMG Music Entert.*, 592 F.3d 314, 321 (2d Cir. 2010).

## I.    Plaintiff's Claims Are Not Preempted Because the HEA's Only Express Preemption Provision Does Not Apply and Her Claims Do Not Conflict With Federal Law.

Navient argues Travis's claims are preempted. First, Navient contends 20 U.S.C. § 1098g, which only preempts state disclosure laws, expressly preempts Travis's state law claims.

This argument has already been rejected in the Washington Attorney General's action against Navient and does not succeed here. Second, Navient claims Travis's state law claims conflict with Congress's intent to implement uniform federal law; however the claims actually align with Congress's goals and therefore, are not preempted.

To begin, principles of federalism create a presumption against preemption under which the "legislative exercise of the historic police powers of the State is not to be superseded by a federal statute unless it was the clear and manifest purpose of Congress to do so." *Sussman v I.C. System, Inc.*, 928 F. Supp. 2d 784, 789 (S.D.N.Y. 2013) (internal quotations omitted); *see also Wyeth v. Levine*, 555 U.S. 555, n.3 (2009). This presumption is particularly forceful where, as here, the state law causes of action fall into traditional police powers. *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 110 (2d Cir. 2016); *Genna v. Sallie Mae, Inc.* No. 11-CV-7371, 2012 WL 1339482, at *9 (S.D.N.Y. Apr. 17, 2012). Both consumer protection and contract claims are traditional state powers protected by the presumption. *Genna*, 2012 WL 1339482, at *9; *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 KMK, 2015 WL 7018369, at *25 (S.D.N.Y. Nov. 12, 2015).

### A. Plaintiff's Claims Are Not Expressly Preempted Because They Do Not Challenge a Federally-Approved Disclosure.

Navient first asserts Travis's claims are expressly preempted by 20 U.S.C. § 1098g. Defs. Mem. at 8-10. By its terms, however, § 1098g applies only to state disclosure laws. *See* 20 U.S.C. § 1098g ("Loans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 … shall not be subject to disclosure requirements of any State law."). Section 1098g has had effect where, for example, "plaintiffs challenged written statements that [are] explicitly regulated and sanctioned by federal law." *Genna*, 2012 WL 1339482, at *8. Here, Travis is not challenging a mandated disclosure, but rather, Navient's

practice of steering borrowers toward forbearance in violation of its promises and servicing obligations. Even if § 1098g intended to preempt a loan servicer's voluntary advertisements and promises, which it does not, Navient does not show its practice of steering borrowers into forbearance is "explicitly regulated and sanctioned" by the HEA. *Id.* Indeed, "there is nothing in the HEA that standardizes or coordinates how a customer service representative of a third-party loan servicer … shall interact with a customer." *Id.*

*Chae*, the case Navient relies on, confirms *Genna*'s reading of § 1098g. In *Chae v. SLM Corp.*, plaintiffs sued their student loan servicer, Sallie Mae, claiming its method of documenting its interest calculations was misleading. 593 F.3d 936, 940-42 (9th Cir. 2010). The Court held such claims, although characterized as misrepresentations, were preempted because plaintiffs were taking issue with Sallie Mae's uniform interest calculation disclosures already sanctioned by the DOE. *Id.* at 942. The defendant's disclosures, however, complied with HEA's requirements, and a "properly-disclosed FFELP practice cannot simultaneously be misleading under state law, for state disclosure law is preempted" by § 1098g. *Id.* at 943. The court recognized plaintiffs' other fraudulent and deceptive practices claims were not preempted by § 1098g because they did not challenge a federally-approved disclosure. *Id.*

Navient implies Travis's claims relate to disclosures because, in its view, she is alleging Navient failed to disclose the full scope of its services. Defs. Mem. at 10. Navient's position would essentially require preempting *all* misrepresentation claims under § 1098g because every misrepresentation claim can be characterized as a failure to disclose. Even *Chae* recognized misrepresentation claims unrelated to federally-approved disclosures are not expressly preempted by § 1098g. As such, Navient's express preemption argument fails.

**B.** **Plaintiff's Claims Are Not Impliedly Preempted Because They Do Not Conflict With Any Provision of the HEA and Are Consistent With Congressional Intent.**

Navient wrongly asserts Congress impliedly preempted Travis's state law claims because it indeed to create a uniform structure for loan servicing that is inconsistent with her state law causes of action. Defs. Mem. at 10-11. However, "comprehensive federal regulations that fail to occupy the regulatory field do not, by their mere existence, preempt non-conflicting state law." *College Loan Corp. v. SLM Corp. LP*, 396 F.3d 588, 598 (4th Cir. 2005). The fact that entertaining plaintiff's claims may "require many state and federal courts to interpret HEA regulations in potentially inconsistent ways" is not a "conflict" requiring preemption. *Bible v. United Student Aid Funds*, 799 F.3d 633, 652 (7th Cir. 2015). Instead, conflict preemption occurs where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Genna,* 2012 WL 1339482, at *8-9. Differing standards between state law and federal requirements are not enough to cause preemption. *See id.* ("[S]tate causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law."). Instead, preemption requires showing those different state law standards upset Congressional intent. *See College Loan*, 396 F.3d at 597 (preemption was improper because "neither the district court nor the parties have explained how these statutory purposes would be compromised by" plaintiff's claims).

In this case, Navient first fails to show how Travis's claims would directly conflict with or impose a higher burden than federal law. As *Genna* found, the HEA does not standardize how Navient's customer service representatives must interact with a customer. 2012 WL 1339482, at *8. And, Navient does not point to any federal law that would conflict with Travis's state law claims. Nor does Navient explain how Travis's claims conflict with Congressional intent. If

anything, Travis's claims *align* with Congress's goals to implement borrower-friendly loan terms and to help borrowers avoid default and reduce student debt. Compl. at ¶¶ 57-58, 66. State claims that are consistent with federal law are not impliedly preempted.

## II. Plaintiff Adequately Plead Navient Violated Delaware's Consumer Fraud Act and New York's General Business Law § 349.

Navient seeks dismissal of Travis's claims under Delaware's DCFA and New York's GBL § 349. First, applying the incorrect standard, Navient asserts Travis has not met the pleading requirements for either claim. Second, Navient wrongly asserts Travis is unable to bring a claim under the DCFA. Third, Navient contends Travis did not allege the elements necessary to bring a claim under GBL § 349. Navient's arguments fail on all three counts.

### A. Fed. R. Civ. P. 9(b) Does Not Apply to Plaintiff's Consumer Protection Claims and Those Claims Survive Regardless of the Standard Applied.

Navient argues for dismissal of Plaintiff's GBL § 349 and DCFA claims for failure to meet Rule 9(b)'s heightened pleading standard. Defs. Mem. at 7, 12. However, Rule 9(b) does not apply to these consumer protection statutes and, regardless, the Complaint meets any applicable standard.

#### 1. *Rule 9(b) does not apply to Plaintiff's GBL § 349 or DCFA claims.*

The Second Circuit has expressly held that GBL § 349 is not subject to Rule 9(b)'s heightened pleading standard. *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Navient errs by citing the same case at the district court level to claim Rule 9(b) applies to § 349. Def's. Mem. at 16 (citing *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 526 (S.D.N.Y. 2003)).

The Court should also find that Rule 9(b) does apply to Plaintiff's DCFA claim because courts routinely hold that Rule 9(b) does not apply to consumer protection claims. *See CFPB v. Frederick Hanna*, 114 F. Supp. 3d 1342, 1372-73 (N.D. Ga. 2015) (recognizing that "no circuit

court has extended Rule 9(b) to consumer protection claims" because it is "inconsistent with some of the policy reasons for applying Rule 9(b)" and "with the remedial nature of consumer protection statutes."); *see also FTC v Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005) (Rule 9(b) does not apply to claims under Section 5 of the Federal Trade Commission Act); *Prophet v Myers*, 645 F. Supp. 2d 614, 617-18 (S.D. Tex. 2008) (Rule 9(b) does not apply to claims under the Fair Debt Collection Practices Act). Where there is no clear authority to apply Rule 9(b) to consumer protection claims, courts are reluctant to do so. *Hanna*, 114 F. Supp. 3d at 1373. Here, the DCFA covers "any deception, … or the concealment, suppression, or omission of any material fact[.]" Compl. ¶ 126. Like other consumer protection statutes, the DCFA "protect[s] consumers … from misleading and deceptive merchandising practices" and, to achieve its goals, eases the burdens of pleading common law fraud. *Washington v. William H. Porter, Inc.*, N17C–01–170 EMD, 2017 WL 3098210, at *5 (Del. Sup. Ct. July 20, 2017). Rule 9(b) is therefore inconsistent with the DCFA's consumer-oriented objectives and should not apply.

### 2. *Plaintiff's Plain Allegations Satisfy Any Pleading Standard.*

According to Navient, Plaintiff's allegations do not meet Rule 9(b) for failure to identify the date, place, or content of any misrepresentation or the identity and position of any person who allegedly engaged in deceptive conduct. Defs. Mem. at 12. Rule 9(b) exists to ensure "[d]efendants have sufficient 'notice' of [p]laintiff's claims such that they can respond and prepare an adequate defense." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). While allegations of the date, place and time of a misrepresentation put defendant on notice, they are not required under the rule; plaintiffs may plead other facts sufficient to meet Rule 9(b). *See id.* at 523 (Rule 9(b) satisfied where plaintiff described defendant's deceptive

marketing scheme, its contents, and its relation to plaintiff; plaintiff did not need to identify the person who made the misrepresentations or the specific time they were made). For example, plaintiffs need not identify the name of the speaker or a specific telephone number to satisfy Rule 9(b), but instead, need only indicate the individual they spoke to represented the defendants. *Id.* at 522-23. Similarly, the "lack of specific dates and content of phone calls will not necessarily cause a pleading to fall short of Rule 9(b) requirements." *In re Ramos*, No. 11-BR-2642, 2012 WL 2974900, at *4 (Bankr. N.D. Iowa July 20, 2012) (quoting *Reynolds*, 136 F. Supp. 3d at 523). Rather, plaintiffs need only indicate the months in which the misrepresentations were made. *See Reynolds*, 136 F. Supp. 3d at 523.

Plaintiff Travis's Complaint, which is factually similar to the actions brought by the CFPB and state attorneys general, more than sufficiently puts Defendants' on notice of the claims against them. Travis adequately alleges Navient's scheme to deceive her and other borrowers, including its allegedly deceptive representations that it would counsel borrowers regarding appropriate repayment options when it never planned to do so. Compl. ¶¶ 77, 85-101. Travis provides the specific timeframes in which she contacted Navient, including that she called in early 2016 and February 2017. *Id.* at ¶¶ 110-11, 113-15. Travis also describes the contents of the conversations, including that she conveyed she could not make her monthly payments due to disability, and that in both calls, she was told she must either make her full monthly payment or enter forbearance. *Id.* at ¶ 115. She further alleges Navient neglected to counsel her about IDR and other repayment options. *Id.* at ¶¶ 108-113. Based on these allegations, Navient identified the date of at least one such conversation. *See* Defs. Resp. in Opp. to Proposed Intervenor's Mot. to Intervene at 7, Oct. 25, 2017, ECF 33. Thus, Plaintiff's Complaint satisfies Rule 9(b) and sufficiently places Navient on notice of the factual and legal claims against it.

### B.  Plaintiff States a Claim for Violation of the DCFA.

The DCFA is intended to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce." *Washington v. William H. Porter, Inc.*, N17C–01–170 EMD, 2017 WL 3098210, at *5 (Del. Sup. Ct. July 20, 2017). For that reason, the DCFA "is to be liberally construed." *Ayers v. Quillen*, No. A03C-02-004, 2004 WL 1965866, at *4 (Del. Sup. Ct. Mar. 26, 2004) (quoting *Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975)).

Here, Defendants contend Plaintiff's DCFA claim must be dismissed for two reasons: (1) she purportedly did not allege Navient "sold, leased, or advertised anything" to her, and the deceptive conduct she did allege was supposedly not "made in connection with" obtaining a student loan; and (2) the DCFA supposedly divests non-Delaware courts of jurisdiction over claims made under the statute. Defs. Mem. at 11-12. Both contentions fail.

A claim is actionable under the DCFA when a defendant misrepresents "any material fact … in connection with the sale, lease, or advertisement of any merchandise." *See* 6 Del. C. § 2513. The Act explicitly includes "services" in the definition of merchandise, *id.* at § 2511, and courts routinely apply the DCFA to misleading advertisements regarding services. *Ayers*, 2004 WL 1965866, at *9; *Yarber v. ING Bank,* 285 F.R.D. 308, 326-27 (D. Del. 2012); *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 653-54 (D.N.J. 2013).

Contrary to Navient's contention, Travis's Complaint is entirely premised on Navient's misleading advertisements made "in connection with" obtaining and repaying her loan. *See* Compl. ¶ 129 ("Navient consistently informed its customers, including federal student loan borrowers, … they could rely on Navient to examine borrowers' financial situations and determine the best repayment plan."). Travis's Master Promissory Note ("MPN"), the initiator

of her federal student loans, expressly directed her to the servicer of her loan (*i.e.*, Navient) for "deferment and forbearance requests, and other transactions, and to answer questions about Direct Loans." *Id.* at ¶ 82. The MPN further stated, "[y]ou may change repayment plans at any time after you have begun repaying your loan" and directed her to work with her servicer once billing began. *Id.* Additionally, loan repayment is a continuation of the original transaction that created the loan, since borrowers maintain the option to move their loans to other lenders offering better or different terms. Throughout repayment, Navient promised to properly service Plaintiff's loans, and those misrepresentations are "available on Navient's website and … blog." *Id.* at ¶ 148; *see Ayers*, 2004 WL 1965866, at *6 ("The website is an advertisement for [defendants'] business [and] [a]ny statements made on it are representations 'in connection with the sale or advertisement' of the [defendants'] services."). Travis acted upon on these promises and contacted Navient when she needed help with repayment options. Travis called Navient, not the DOE or any other entity, on two separate occasions to receive help with managing her monthly payments. *Id.* at ¶¶ 110, 113. On both occasions, she followed Navient's direction to enter forbearance. *Id.* Navient's misrepresentations were all made "in connection with" its "advertisements" about the services it would provide Travis throughout the life of her federal student loan.

Finally, Navient asserts DCFA claims must be brought only in Delaware. This contention is based on a misreading of 6 Del. C. § 2525(a), which merely states that a DCFA claim "*may* be brought in any court of competent jurisdiction in this State" not that it *must* be. (emphasis added). Navient's citation to *Schwartz v. Lights of Am.*, No. CV-11-1712, 2012 WL 4497398, at *5 (C.D. Cal. Aug. 31, 2012) is unavailing. Defs. Mem. at 12. There, a California court reviewed the differences between all fifty states' consumer protection statutes and noted in

passing its reading of the statute as requiring "suit be brought in a court within the state." *Schwartz*, 2012 WL 4497398 at \*5. Neither *Schwartz* nor Navient cites any Delaware or other court for this proposition and, indeed, DCFA claims regularly proceed in courts outside of Delaware. *See, e.g., Harnish*, 931 F. Supp. 2d 641.[1]

## C. Plaintiff States a Claim for a Violation of GBL § 349.

New York GBL § 349 "is a broad, remedial statute…directed toward giving consumers a powerful remedy." *Brown v. Hambric*, 168 Misc. 2d 502, 509 (N.Y. City Ct. 1995). Under § 349, plaintiffs must demonstrate that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

### 1. Navient's Deceptive Acts Were Directed at Consumers.

"The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." *Wilson v. N.W. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (internal quotations omitted). This requirement is "construed liberally." *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002). "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *Id.*

Here, Plaintiff alleges "Navient consistently informed its customers, including federal student loan borrowers with loans serviced by Navient, they could rely on Navient to engage in a

---

[1] Navient's reading of 6 Del. C. § 2525(a) would also conflict with federal law, which under CAFA, affords federal courts jurisdiction over this action. 28 U.S.C. § 1332. Navient cites no authority that a state law can so limit the jurisdiction of a federal court, which would appear to upend the Supremacy Clause and the Erie Doctrine. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (requiring federal courts sitting in diversity to apply federal, not state, procedural rules).

proper analysis and determine the appropriate repayment plan." Compl. ¶ 148. Plaintiff asserts that "[s]tatements inducing customers to rely on Navient were, and still are, available on Navient's website and Navient's blog, and [Navient's President and CEO] made numerous such statements." *Id*. Plaintiff alleges "there are tens of thousands, if not more," customers who Navient forced into forbearance despite its promises to "help find an option that fits [their] budget, simplifies payment, and minimizes [their] total interest cost." *Id*. at ¶¶ 120, 148a. Plaintiff adequately alleges a consumer-oriented practice required under § 349. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 449-50 (E.D.N.Y. 2013) (denying loan servicer's attempt to dismiss GBL § 349 claim brought on behalf of thousands of borrowers).

### 2. *Navient's Deceptive Acts Were Misleading In a Material Way.*

"Section 349…requires a defendant to mislead the plaintiff in some material way." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). Here, Plaintiff asserts that "Navient's promises were material to the borrowers whose loans Navient serviced. As Navient advertised, Plaintiff and the Class sought Navient's help and advice in pursuing their repayment options . . . [Navient] failed to deliver." Compl. ¶ 151. Navient's broken promises are similar to the long line of "bait and switch" advertising cases where § 349 undoubtedly applies. *See, e.g., Goldberg v. Manhattan Ford Lincoln-Mercury, Inc.*, 492 N.Y.S.2d 318, 322 (N.Y. Sup. Ct. 1985); *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 146 (2d Dep't 1995); *People ex rel. Cuomo v. Dell, Inc.*, 873 N.Y.S.2d 236 at *3 (N.Y. Sup. Ct. 2008). Like these "bait and switch" cases, the Complaint asserts that Navient lured borrowers with "promise[s] to analyze and inform [them] regarding appropriate repayment options, but failed to do so pursuant to a uniform business model that guided customers away from IDR plans and into forbearance, regardless of their circumstances."

Compl. ¶ 150.  Navient's uniform business model is exactly the type of deceptive conduct for which § 349 provides relief.

        *3.*      *Plaintiff and the Class Suffered Injury as a Result of Navient's Deceptive Acts.*

Causation is an "essential" element of a § 349 claim. *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013).  To show causation, a plaintiff must allege "she was injured as a result of the" deceptive practices. *Id.*  On its face, Plaintiff's Complaint plausibly alleges causation.  Plaintiff asserts that Navient's deceptive acts caused her and the putative class economic injury, and set back their progress toward repayment on an IDR plan and possibly loan forgiveness or discharge. Compl. ¶¶ 133, 154.  Plaintiff's assertions are sufficient to support the element of causation at this stage. *See e.g.*, *Ward v. Theladders.com, Inc.*, 3 F. Supp. 3d 151, 170 (S.D.N.Y. 2014).

Finally, Navient's argument that § 349 requires a fiduciary relationship is entirely unavailing.  Plaintiff is unaware of any case brought under § 349 requiring a fiduciary relationship between the parties and, notably, Navient neglects to cite such authority.  Indeed, such a harsh reading would eviscerate § 349's protections against all types of unsavory business practices, including: (1) false advertising; (2) pyramid schemes; (3) deceptive preticketing; (4) misrepresentation of the origin, nature or quality of a product; (4) false testimonials; (5) deceptive collection efforts against debtors; (6) deceptive practices of insurance companies; and (7) "bait and switch" sales tactics, among others. *See Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 146 (2d Dep't 1995) (collecting cases).

**III.    Plaintiff Adequately Pleads Navient's Breach of Contract.**

According to Navient, Plaintiff cannot maintain a claim for breach of the Servicing Contract between it and the DOE because: (1) she is not an intended third-party beneficiary, and (2) the DOE is an indispensable party.  Defs. Mem. at 12-16.  Both assertions fail.

*1.    Plaintiff Is an Intended Third Party Beneficiary of the Servicing Contract.*

Navient broadly, and incorrectly, asserts that no individual member of the public has a right to sue for breach of a government contract unless the contract expressly provides that right. Defs. Mem. at 12-13.  Navient points to § 313 of the Restatement (Second) of Contracts for the non-controversial position that individual citizens are not third party beneficiaries to government contracts that intend to benefit the general public at large.  *Id.*  However, a plaintiff who "can show a special benefit to himself in contrast to any benefit he enjoys as a member of the public generally may be an intended [third-party] beneficiary of a government contract" with the right to sue to enforce it.  *New York Citizens Comm. on Cable TV v. Manhattan Cable TV, Inc.*, 651 F. Supp. 802, 817 (S.D.N.Y. 1986); *see also DFP Mfg. Corp. v. Northrop Grumman Corp.*, No. 97-CV-4494, 1999 WL 33458384, at *8 (E.D.N.Y. Mar. 23, 1999) ("This is not an instance in which the beneficiary is one of many members of the general public, or third parties, who would reap the benefit of a government contract.").  Here, Travis does not allege Navient was obligated to provide a service to the public generally.   Rather, the loan services required under the Servicing Contract included specific services to a limited number of individuals, namely, direct federal student loan borrowers whose loans Navient serviced and, as such, § 313 is inapplicable. *See e.g.*, *Nat'l Sur Corp. v. United States*, 31 Fed. Cl. 565, 575 (1994) ("§ 313 only applies to suits by members of the public for consequential damages against promisors who contract to

render a public service."); *Schuerman v. United States*, 30 Fed. Cl. 420, 432 (1994) (§ 313 is not "a per se rule to be employed in all third-party beneficiary cases.").

Instead, this Court should be guided by § 302 of the Restatement (Second) of Contracts and federal common law, which permit intended third-party beneficiaries to sue under a government contract. *DFP Mfg.*, 1999 WL 33458384, at *7. A third party is "an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and … the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) Contracts § 302 (Am. Law Inst. 1981). The intended beneficiary "need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefited thereby." *Flexfab, LLC v. United States*, 424 F.3d 1254, 1260 (Fed. Cir. 2005) (internal quotations omitted); *Chen v. Street Beat Sportswear, Inc.*, 226 F. Supp. 2d 355, 362 (E.D.N.Y. 2002). The "intent to permit enforcement by the third party is satisfied by demonstrating an intent to benefit that party." *DFP Mfg.*, 1999 WL 33458384, at *7. "[I]t is sufficient to ask … whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him." *Flexfab*, 424 F.3d at 1260 (quoting *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997)); *see also* Restatement (Second) of Contracts, *comment d*.

Plaintiff sufficiently alleges the DOE and Navient intended to give borrowers the benefit of Navient's performance under the Serving Contract. To start, Travis alleges the Servicing Contract required Navient to provide specific services directly to borrowers, including educational services and assistance in choosing appropriate repayment options. Compl. ¶¶ 8, 26, 27, 31a, 55, 70, 71, 82, 106, 136-44. In fact, the Servicing Contract expressly required Navient to enact measures to make sure that it put its obligations to help borrowers ahead of its own

bottom line.  *Id.* at ¶ 139.  Navient was also required to prioritize "default aversion activity on loans service."  *Id.* at ¶ 138.  Such provisions state an express intent to benefit borrowers like Plaintiff and the Class.

Additionally, the Servicing Contract required Navient to know and enact the DOE's borrower-friendly policies.  *Id.* at ¶ 139.  Plaintiff alleges the DOE used contracted servicers as the points of contact to provide assistance to borrowers struggling to make their monthly payments and looking for information about repayment options.  *Id.* at ¶¶ 63, 66, 68.  Similarly, the DOE sought to protect borrowers from unapproved servicers who may subjugate the benefits attendant to federal loans.  *Id.*  at ¶¶ 68-69.  Such provisions are for the clear benefit of borrowers.[2]

Furthermore, the DOE *directed* Plaintiff to work with and depend on Navient for such services.  *Id.* at ¶ 81.  Publically, both the DOE and Navient instructed borrowers to contact their servicers for assistance.  *Id.* at ¶¶ 66, 71, 78.  This further demonstrates the Servicing Contract was intended to benefit Plaintiff and members of the Class.

---

[2] Numerous other provisions not quoted in Travis's complaint highlight a similar policy.  *Loan Servicing Contract Between U.S. DOE and Sallie Mae* at NAVMTDOPPEX1022, Jun 17, 2009 (Attached as Ex. 1 to Decl. of Brian C. Gudmundson) (the purpose of the contract is to "ensure that all eligible individuals benefit from federal financing assistance—grants, loans, and work-study programs—for education beyond high school."), *id.* at NAVMTDOPPEX1015 ("The Title IV Servicing contracts are for *any potential services* to manage all types of Title IV student aid obligations." (emphasis added)), *id* at NAVMTDOPPEX1026 ("the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction."), *id.* at NAVMTDOPPEX1052 ("The service shall respond and resolve customer complaints; and create and execute a plan to escalate complaints to FSA and the Ombudsman.").  Documents outside of the pleadings may be considered in a motion to dismiss where the document is "attached to the complaint … or incorporated by reference … [or] plaintiffs had knowledge and relied on [the document] in bringing the suit."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002).  Plaintiff incorporated the Servicing Contract into her Complaint by repeated references to it, and in fact, her breach of contract claim is entirely based on the Servicing Contract.  Compl. ¶¶ 26, 31a, 55, 69-70, 82, 106, 137-140, n.39.

Navient cites two cases to argue third party beneficiaries cannot sue for breach of a servicing contract. First, *MacKenzie v. Flagstar Bank FSB* involved a third party breach of contract claim against a government-contracted loan servicer under the Home Affordable Modification Program ("HAMP"). 738 F.3d 486 (1st Cir. 2013). However, servicing agreements under HAMP *expressly deny* borrowers the right to sue as third parties. *See Rivera v. Bank of Am. Home Loans*, No. CV-09-2450, 2011 WL 1533474, at *5-6 (E.D.N.Y. Apr. 21, 2011) (finding plaintiffs were intended beneficiaries of the HAMP Servicing contract, but that the express terms of the contract denied plaintiff a right to sue). No such disclaimer exists in the Servicing Contract between Navient and the DOE. Navient's second case, *Fed. Nat'l Mortg. Ass'n v. LeCrone*, is inapposite because it did not consider a third party beneficiary's right to sue a loan servicer, but whether a state court could hear claims against the federal government at all. 868 F.3d 190 (6th Cir. 1989).

Finally, Navient is wrong in asserting Plaintiff's contract claim is prohibited because the HEA contains no private right of action. Defs. Mem. at 13-14. Navient cites *Astra USA, Inc. v. Santa Clara County, California*, but that case is far narrower. In *Astra USA*, plaintiffs sued drug manufacturers for breach of contract, claiming they violated federal statutory price ceilings incorporated in the manufacturers' contracts with the government. 563 U.S. 110, 113 (2011). The Supreme Court held the plaintiffs' contract claims were "in essence a suit to enforce the statute itself," which was disallowed because the statute had no private right of action. *Id.* at 118. Here, by contrast, Travis's contract claim does not challenge an incorporated federal statute. Navient has not shown its contractual obligations are otherwise rooted in a statute lacking a private right of action that Plaintiff is attempting to collaterally enforce through the

Servicing Contract, which was the case in *Astra USA*. As such, Travis properly pleads a breach of contract claim.

2.     *The DOE is Not an Indispensable Party to Plaintiff's Contract Claim.*

Navient invokes Fed. R. Civ. P. 19 to assert Plaintiff's contract claim should be dismissed for failure to join the DOE as an indispensable party.[3] This assertion falls flat. To begin, the Second Circuit has rejected Navient's assertion that any party to a contract is per-se indispensable under Rule 19 in a breach of contract case. *CP Sols. PTE, Ltd. V. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009); Defs. Mem. at 15. Rather, the proper test lies in Rule 19(a) itself, and asks whether "the court cannot accord complete relief among existing parties" in the absence of the allegedly indispensable party. Fed. R. Civ. P. 19(a)(1)(A); *SafeNet*, 758 F. Supp. 2d at 257. This test "focuses on the existing parties to the lawsuit only." *SafeNet*, 758 F. Supp. 2d at 257. Navient suggests the Servicing Contract cannot be interpreted or enforced without the DOE as a party to the case. However, Plaintiff does not seek any relief that cannot be completely granted in the absence of the federal government. Indeed, the government, through the CFPB, has filed its own action and has made no effort to join or interfere with this case or any other brought by borrowers.

Furthermore, the Second Circuit has held that dismissal based upon Rule 19 is inappropriate "unless there has been a reasoned determination that [the indispensable party's] nonjoinder makes just resolution of the action impossible." *SafeNet*, 758 F. Supp. 2d at 259 (quoting *Jaser v. New York Prop. Ins. Underwriting Assoc.*, 815 F.2d 240, 242 (2d Cir. 1987)). Rule 19(b) grants courts the discretion to continue or dismiss the case. Because any prejudice to

---

[3] Notably, it is the purportedly indispensable party who must seek to join the action to assert its rights, which is the DOE and not Navient. *See Fed. Ins. Co. v. Safenet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010) ("the plain language of Rule 19(a)(1)(B) requires the absentee to claim an interest in the litigation."); Fed. R. Civ. P. 19(a)(1)(B).

the DOE is outweighed by prejudice to Plaintiff, who cannot obtain relief outside of this action, this case should continue. *See id.* at 19(b)(1) (requiring consideration of "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.").

## IV.    Plaintiff Properly Pleads a Claim for Declaratory Judgment.

The Declaratory Judgment Act allows plaintiffs to petition a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.  The Second Circuit instructs a declaratory judgment request should be heard if "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (quoting *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).  A declaration regarding Navient's obligations under the Servicing Contract would provide clarity and settle the legal relations at issue.  As such, Travis's declaratory judgment claim should proceed.

## V.    Navient's Motion to Strike Class Allegations Is Inappropriate at this Stage.

Navient seeks to strike Plaintiff's class allegations, despite the fact courts within the Second Circuit have repeatedly declined to do so at the pleading stage. *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) ("Courts rarely grant motions to strike" and "a motion to strike class allegations … is even more disfavored"); *see also Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-cv-7539, 2016 WL 1274541, at * 18 (E.D.N.Y. 2016); *Reynold*, 136 F. Supp. 3d at 514; *DeJesus v. BAC Home Loans Servicing, LP*, No. 13-CV-2864, 2014 WL 4804999, at *5 (E.D.N.Y. Sept. 26, 2014); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012);  *Mazzola v. Roomsters Corp.*, 849 F. Supp. 2d 395, 410

(S.D.N.Y. 2012); *Chenensky v. N.Y. Life Ins. Co.*, No. 07-cv-11504, 2011 WL 1795305, at *4 (S.D.N.Y. Apr. 27, 2011); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404-05 (W.D.N.Y. 2010).

Nevertheless, Navient argues the Court should strike the class allegations because they purportedly could not meet the requirements of commonality, predominance, and superiority under Fed. R. Civ. P. 23. Defs. Mem. at 18-22. However, a motion to strike must be based on grounds that are "separate and apart from the issues that will be decided on a class certification motion." *Chen–Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotations omitted). A motion to strike at the pleading stage is only appropriate "if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *Bank v. Am. Home Shield Corp.*, No. 10-cv-4014, 2013 WL 789203, at *3 (E.D.N.Y. 2013) (citations omitted). That is not the case here. Indeed, Navient's entire rationale—a supposed lack of commonality, predominance, or superiority—are all Rule 23 class certification requirements, which by definition are "not independent of the class certification inquiry." *Id.*; *see also Greene v. Gerber Prods. Co.*, No.16-cv-1153, 2017 WL 3327583, at *28 (E.D.N.Y. 2017).

Navient also argues that "fraud-based allegations are not suitable for class treatment." Defs. Br. at 22. However, courts in this Circuit have repeatedly denied motions to strike these types of class claims. *See, e.g., id.,* at *28; *Brady v. Basic Research, L.L.C.,* 101 F. Supp. 2d 217, 226 (E.D.N.Y 2015); *Reynolds,* 136 F. Supp. 3d at 520; *Mayfield v. Asta Funding,* 95 F. Supp. 3d 685, 697 (S.D.N.Y. 2015); *Belfiore,* 94 F. Supp. 3d at 447.[4] Notably, neither the DCFA nor GBL § 349 require reliance to bring a claim. *Ward*, 3 F. Supp. 3d at 168; *Washington,* 2017 WL 3098210, at *5. But even if they did, the Second Circuit has refused to adopt a "blanket rule"

---

[4] All of these cases were decided after *In re Worldcom, Inc.*, 343 B.R. 412, 426 (Bankr. S.D.N.Y. 2006) and *Kottler v. Deutsche Bank AG*, No 5-CV-7773, 2010 WL 1221809, at * *8 (S.D.N.Y. Mar. 29, 2010), the only two in-Circuit motion to strike cases Navient cites. *See* Defs. Br. at 22.

barring reliance-based class actions, noting that some actions involving individual reliance "do appear within the contemplation of Rule 23's drafters"—for example, actions predicated on similar misrepresentations across class members. *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 224–25 (2d Cir. 2008) *abrogated on other grounds, Bridge v. Phx. Bond & Indem. Co.,* 553 U.S. 639 (2008); *see also Sykes v. Mel S. Harris & Assoc. LLC,* 780 F.3d 70, 83–87 (2d Cir. 2015). Here, Plaintiff alleges Navient's common violations through breaches of its promises and obligations. *See, e.g.*, Compl. ¶¶ 11, 129, 148.

"A motion to strike class allegations … requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled." *Belfiore*, 94 F. Supp. 3d at 447 (citations omitted). To succeed on a motion to strike class allegations, a defendant must "demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery." *Reynolds*, 136 F. Supp. 3d at 511. That is simply not the case here, where discovery will be geared toward demonstrating Navient's liability to the Class through common proof. Navient's motion to strike should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Navient's motions in their entirety.

Respectfully submitted,

Dated: December 22, 2017

s/ Brian C. Gudmundson
Brian C. Gudmundson
Michael J. Laird
Bryce D. Riddle
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Telephone:  (612) 341-0400
Facsimile:  (612) 341-0844
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com
bryce.riddle@zimmreed.com

Michael R. Reese
George V. Granade
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, NY  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com
ggranade@reesellp.com

Arthur M. Murray
Stephen B. Murray
Robin M. Myers
**MURRAY LAW FIRM**
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone:  (504) 525-8100
Facsimile:  (504) 584-5249
amurray@murray-lawfirm.com
smurray@murray-lawfirm.com
rmyers@murray-lawfirm.com

Gary F. Lynch
**CARLSON LYNCH SWEET KILPELA &
    CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
glynch@carlsonlynch.com
Bryan L. Bleichner
**CHESTNUT CAMBRONNE**
17 Washington Avenue North
Suite 300
Minneapolis, MN 55401
Telephone: (612) 339-7300
Facsimile: (612) 336-2940
bbleichner@chestnutcambronne.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. S.
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612-339-0981)
khriebel@locklaw.com