# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

№ 17-CV-4885 (JFB) (GRB)

————————————

MARIE TRAVIS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

VERSUS

NAVIENT CORP. AND NAVIENT SOLUTIONS, INC.,

Defendants.

————————————

**MEMORANDUM AND ORDER**
February 16, 2018

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Marie Travis ("Travis" or "plaintiff") brings this putative class action against defendants Navient Corporation and Navient Solutions, Inc. (together, "Navient" or "defendants"), alleging that Navient improperly steered plaintiff and other student loan borrowers into forbearance to maximize their profits.

On October 4, 2017, non-parties Olga Demyanenko-Todd ("Demyanenko-Todd"), Kimberly Force ("Force"), and Melissa Miller ("Miller," and collectively, "proposed intervenors") filed a motion to intervene and to dismiss, or, in the alternative, to stay or transfer this action pursuant to the first-to-file rule. For the reasons set forth below, the Court denies proposed intervenors' motion in its entirety.

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint (ECF No. 1); the declaration of Geoffrey C. Jarvis (Jarvis Decl., ECF No. 13-2) and the supplemental declaration of Geoffrey C. Jarvis (Suppl. Jarvis Decl., ECF No. 38-1) filed in support of proposed intervenors' motion and the exhibits attached thereto; and the declarations of Andrew Wachtel (Wachtel Decl., Defs. Opp. Ex. A, ECF No. 33-1) and Jill Leonard (Leonard Decl., Defs. Opp. Ex. B, ECF No. 33-2) filed in support of defendants' opposition to proposed intervenors' motion.

#### 1. Student Loan Industry

In 2010, with the enactment of the Health Care and Education Reconciliation Act, the

federal government shifted from backing private student loans to offering student loans directly to borrowers. (Compl. ¶¶ 5, 52.) Federal student loans, as compared to private student loans, have several benefits, including flexible repayment options. (*Id.* ¶¶ 6, 53.) Today, the majority of student loans are provided directly by the federal government. (*Id.* ¶ 52.)

Although the federal government funds the student loans, it contracts with financial companies, such as Navient, to service them. (*Id.* ¶ 55.) Loan servicers advise borrowers about their repayment options and, at times, assess borrowers' financial situations to determine the best repayment plan. (*Id.* ¶ 56.)

Two such repayment plans include income-driven repayment ("IDR") plans and forbearance. (*Id.* ¶¶ 57, 61.) IDR plans are designed for borrowers experiencing long-term financial distress. (*Id.* ¶ 59.) Under IDR plans, borrowers pay a percentage of their discretionary income instead of a high, fixed, monthly payment. (*Id.* ¶ 58.) In addition, IDR plans provide loan forgiveness after 20 to 25 years of monthly payments. (*Id.* ¶ 60.) Forbearance, on the other hand, is designed for student loan borrowers that are experiencing temporary financial hardship. (*Id.* ¶ 61.) Although forbearance allows borrowers to temporarily stop making student loan payments (and thereby avoid default), if continued over the long term, it can significantly increase the principal balance of student loans because loans in forbearance continue to accumulate unpaid interest,

which is then added to the principal balance of the loan. (*Id.* ¶¶ 61, 62.)

2. Lawsuits Against Navient

Navient, incorporated in Delaware and with principal places of business in Delaware and Virginia, is the largest student loan servicer in the United States.[1] (Compl. ¶¶ 24, 25, 70; Wachtel Decl. ¶¶ 3-5.) Navient services nearly $300 billion in student loans for more than 12 million borrowers. (Compl. ¶¶ 70, 159.)

Over the past year, there have been numerous lawsuits filed against Navient for, among other things, allegedly improperly steering borrowers towards forbearance instead of IDR plans for financial gain. The Court discusses the actions relevant to this motion below.

a. Consumer Financial Protection Bureau Action

On January 18, 2017, the Consumer Financial Protection Bureau ("CFPB") filed a regulatory action against Navient and Pioneer Credit Recovery, Inc. in U.S. District Court for the Middle District of Pennsylvania (the "CFPB action"), alleging that Navient improperly steered borrowers into forbearance; failed to properly service loans in IDR plans; misrepresented borrowers about co-signer release requirements; and misreported information to consumer reporting agencies for certain loans. (CFPB Compl., Suppl. Jarvis Decl. Ex. D, ECF No. 38-2.) The CFPB action asserts claims under the Consumer Financial Protection Act, the

---

[1] Navient Solutions, Inc. is the former name for Navient Solutions, LLC ("Navient Solutions"). (Wachtel Decl. ¶ 1.) Navient Corporation ("Navient Corp."), Navient Solutions' parent company, is a holding company and does not engage in loan servicing activities. (*Id.* ¶¶ 2, 5.) Navient Solutions and Navient Corp. are both Delaware entities. (*Id.* ¶¶ 3, 5.) Navient Solutions' principal place of business is in Reston, Virginia, and Navient Corp.'s principal

place of business is in Wilmington, Delaware. (*Id.*) In addition to its Reston, Virginia headquarters, Navient Solutions also has two offices in Delaware, two offices in Indiana, and one office in each of Washington, D.C., Massachusetts, and Pennsylvania, and employs more than 3,000 individuals in total. (Leonard Decl. ¶¶ 2, 3.)

Fair Credit Reporting Act, and the Fair Debt Collection Practices Act. (*Id.*)

The CFPB action is currently pending before Judge Robert D. Mariani. On August 4, 2018, Judge Mariani denied Navient's motion to dismiss, or in the alternative, for a more definite statement. (Jarvis Decl. Ex. C, ECF No. 13-5.) There are no class allegations in the CFPB action.[2] (*See generally* CFPB Compl.)

b. Demyanenko-Todd Action

On May 1, 2017, proposed intervenor Demyanenko-Todd brought a putative class action against Navient Corp., Navient Solutions, Inc., and Navient Solutions (collectively, the "Navient entities") in U.S. District Court for the Middle District of Pennsylvania (the "Demyanenko-Todd action"), alleging that the Navient entities improperly steered borrowers into expensive forbearances. (Demyanenko-Todd Compl., Jarvis Decl. Ex. A, ECF No. 13-3.) The Demyanenko-Todd action initially asserted causes of action against the Navient entities for: (1) breach of the Master Promissory Note (the "loan agreement"), on behalf of a nationwide class; (2) breach of the Servicing Contract (the "servicing agreement"), on behalf of a nationwide class; (3) violations of the Delaware Consumer Fraud Act ("DCFA"), on behalf of a nationwide class; and (4) violations of New York General

Business Law ("NY GBL"), on behalf of a New York subclass. *Id.* Demyanenko-Todd, a New York resident, filed her action in U.S. District Court for the Middle District of Pennsylvania because Navient has a major call center in Wilkes-Barre, Pennsylvania[3] and the CFPB action was already pending in that district. (Jarvis Decl. ¶ 6.)

On August 21, 2017, Demyanenko-Todd filed her first amended complaint ("FAC"), adding Force, a California resident, and Miller, a Florida resident, as plaintiffs. (Demyanenko-Todd FAC, Jarvis Decl. Ex. B, ECF No. 13-4.) The FAC also added respective California and Florida state consumer protection claims, dropped the breach of the servicing agreement claim, and limited the scope of the class seeking damages under the DCFA.[4] (Jarvis Decl. ¶ 8; *see generally* Demyanenko-Todd FAC.) The FAC asserts causes of action against the same Navient entities for: (1) breach of the loan agreement, on behalf of a nationwide class; (2) violations of the DCFA, on behalf of a Delaware subclass (consisting of residents of ten states); (3) violations of NY GBL, on behalf of a New York subclass (consisting of New York residents); (4) violations of California's consumer protection statutes, on behalf of a California subclass (consisting of California residents); and (5) violations of Florida's consumer protection statute, on behalf of a Florida subclass (consisting of

---

[2] On January 18, 2017, the Washington Attorney General and the Illinois Attorney General filed similar lawsuits against Navient and Pioneer Credit Recovery, Inc. in Washington and Illinois state court, respectively. (*See* Compl. ¶ 33.) In addition, on October 5, 2017, the day after proposed intervenors filed their motion, the Pennsylvania Attorney General filed a lawsuit against Navient Corp. and Navient Solutions in U.S. District Court for the Middle District of Pennsylvania (the "Pennsylvania Attorney General action"), seeking a permanent injunction and other relief for, among other things, Navient's alleged deceptive loan servicing practices. (Pennsylvania Attorney General Compl., Suppl. Jarvis Decl. Ex. H,

ECF No. 38-6.) The Pennsylvania Attorney General action is currently pending before Judge Mariani.

[3] Navient Solutions also has a loan servicing center in Fishers, Indiana, which employs 1,290 individuals. The Wilkes-Barre, Pennsylvania servicing center employs 942 individuals. (Leonard Decl. ¶ 4.)

[4] In addition, the FAC dropped parallel breach of contract claims alleging that the Navient entities failed to adequately notify borrowers of deadlines to recertify their enrollment in IDR plans. (*See generally id.*)

Florida residents). (*See generally* Demyanenko-Todd FAC.)

The Demyanenko-Todd action seeks certification of these classes and subclasses on behalf of borrowers whose federal student loans were "serviced by Navient and/or its predecessors between January 1, 2010 and the present, and who (i) were enrolled in forbearance for a period exceeding 3 months immediately prior to their enrollment in an [IDR] plan and/or (ii) were enrolled or are currently enrolled in consecutive forbearances that, in total, exceeded or exceed 12 months." (*Id.* ¶ 121.)

The Navient entities' motion to dismiss is currently pending before Judge Mariani in U.S. District Court for the Middle District of Pennsylvania.

### c. Travis Action

On August 18, 2017, plaintiff, a New York resident, brought her putative class action against Navient in this Court (the "Travis action" or "instant action"), alleging that Navient improperly steered her and other loan borrowers into forbearance to maximize their profits. Plaintiff asserts the following causes of action against Navient: (1) violations of the DCFA, on behalf of a nationwide class; (2) breach of the servicing agreement, on behalf of a nationwide class and New York subclass; (3) violations of NY GBL, on behalf of a New York subclass; and (4) declaratory judgment, on behalf of a nationwide class and New York subclass. Travis seeks certification of these classes on behalf of "direct student loan borrowers from the federal government . . . who had at least one federal loan serviced by Navient and/or any of its predecessors between January 1, 2010 and the present who were placed in forbearance." (Compl. ¶¶ 118, 119.)

Although both the instant action and the Demyanenko-Todd action are premised on the same factual allegations initially asserted in the CFPB complaint—namely, that Navient improperly steered student loan borrowers into forbearance—they differ in two main respects. First, the actions assert different breach of contract theories. The Travis action alleges that Navient breached the servicing agreement, whereas the Demyanenko-Todd action alleges that the Navient entities breached the loan agreement. Second, the Travis action seeks to represent a broader putative class. Travis would not be a member of proposed intervenors' putative class in the Demyanenko-Todd action.

### B. Procedural History

Plaintiff commenced this lawsuit on August 18, 2017. (ECF No. 1.) On October 4, 2017, proposed intervenors moved to intervene and to dismiss, or, in the alternative, to stay or transfer this action pursuant to the first-to-file rule. (ECF No. 13.) Plaintiff and defendants separately opposed the motion on October 25, 2017 (ECF Nos. 33, 34), and proposed intervenors submitted their reply brief on November 3, 2017 (ECF No. 38). The Court held oral argument on November 16, 2017. (*See* ECF No. 42.) The Court has fully considered the parties' arguments and submissions.

## II. DISCUSSION

Proposed intervenors' motion is twofold. First, they move to intervene in this action as of right under Federal Rule of Civil Procedure 24(a) ("Rule 24(a)"), or, alternatively, they argue that permissive intervention is warranted under Federal Rule of Civil Procedure 24(b) ("Rule 24(b)"). In the event the Court grants their motion to intervene, proposed intervenors move to dismiss, stay, or transfer this action under the first-to-file rule, or, alternatively, they argue that the Court should transfer this action to U.S. District Court in the Middle of the Pennsylvania under 28 U.S.C. § 1404(a).

Plaintiff and defendants separately oppose proposed intervenors' motion in all respects. The Court addresses each argument in turn.

A. Intervention as of Right

In order to intervene as of right under Rule 24(a), the proposed intervenor must show that "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party." *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Sec. Pac. Mortg. and Real Estate Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir. 1992) (quoting *Farmland Dairies v. Comm'r of N.Y. Dep't of Agric. and Mkts.*, 847 F.2d 1038, 1043 (2d Cir. 1988)).

For the reasons that follow, the Court concludes that proposed intervenors do not meet the requirements for intervention as of right because they have failed to establish that they have a legally protectable interest that may be impaired by the disposition of this action, or that any purported interest is not adequately protected by plaintiff.[5]

1. Interest

The movant's interest must be "direct, substantial, and legally protectable" in order to warrant intervention as of right. *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96-97 (2d Cir. 1990). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events

before it becomes colorable, will not satisfy the rule." *Id.* at 97.

Proposed intervenors assert that, because Travis purports to represent a class that includes proposed intervenors and their putative class in the Demyanenko-Todd action, they have a strong interest in ensuring that the "overall litigation" is conducted efficiently and that their rights and the rights of their proposed class are fully protected. In response, plaintiff argues that proposed intervenors' purported interests are too hypothetical to satisfy the requirements of mandatory intervention. Defendants argue that proposed intervenors do not have a sufficient interest because (1) their breach of contract claim is not implicated in this action, and (2) even though both actions assert Delaware and New York state law claims, proposed intervenors do not share an interest with plaintiff because, before class certification, each action only involves individual claims asserted by individual plaintiffs. The Court agrees with plaintiff and defendants that proposed intervenors' stated interests are insufficient to meet the requirements of Rule 24(a).

First, as defendants argue, this action does not implicate proposed intervenors' breach of contract claim. Whereas proposed intervenors claim in the Demyanenko-Todd action that the Navient entities breached the loan agreement, here, Travis claims that defendants breached the servicing agreement. Thus, proposed intervenors do not have an interest in protecting their rights or the rights of their putative class as to this claim, regardless of whether a class is ultimately certified.

Although both actions assert the same Delaware and New York state law claims, the

---

[5] Because the Court concludes that intervention as of right is not warranted based on the second, third, and fourth Rule 24(a) requirements, the Court need not,

and does not, address the first requirement—whether proposed intervenors' motion is timely.

Court concludes that any interest in protecting the rights of proposed intervenors and their putative class is too speculative to warrant intervention as of right. At this point, no class has been certified in the instant action or in the Demyanenko-Todd action. Accordingly, this action currently involves claims by Travis alone against the Navient defendants, and the Demyanenko-Todd action currently involves claims by proposed intervenors alone against the Navient entities. Thus, the rights of proposed intervenors and their putative class are simply not implicated at this time, and proposed intervenors' argument that they could be implicated if and when a class is certified is too hypothetical to meet the requirements of Rule 24(a). *See Mejia v. Time Warner Cable Inc.*, 15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 WL 3278926, at *1 (S.D.N.Y. Aug. 1, 2017) (finding proposed intervenors' interest in similar class action "too remote to justify intervention" prior to class certification); *Viet Bui v. Spring Corp.*, No. 2:14–cv–02461–TLN–AC, 2015 WL 3828424, at *2 (E.D. Cal. June 19, 2015) (dismissing as speculative proposed intervenors' claim that they had a significant interest in action that asserted the same violations, sought the same relief, and asserted a putative class subsumed within their putative class when no classes had been certified).

The Court rejects proposed intervenors' argument that they have a legally protectable interest in ensuring that the "overall litigation" is conducted efficiently for substantially the same reasons. Assuming proposed intervenors' interest is premised on class certification, it is too speculative to

warrant intervention as of right. Otherwise, as non-parties, proposed intervenors' stated interest in litigation efficiency is not affected by this action. In any event, the Court also does not find that this is the type of interest that warrants intervention under Rule 24(a). *See Worthington v. Bayer Healthcare LLC*, Civil Action Nos. 11–2793 (ES)(CLW), 11–3017 (ES)(CLW), 11–3299 (ES)(CLW), 2011 WL 6303999, at *8 (D.N.J. Dec. 15, 2011) (finding movant's "general and attenuated interest in . . . 'minimizing waste[]' d[id] not rise to the standard of Rule 24(a)(2)"). Instead, as plaintiff asserts, in the event the parties identify litigation inefficiencies later on, they can coordinate to mitigate any such issues.[6]

In their reply brief and at oral argument, proposed intervenors also claim that, putting aside class certification, they have an interest in this action because it asserts the same Delaware and New York state law claims as the Demyanenko-Todd action. According to proposed intervenors, both this Court and the U.S. District Court for the Middle District of Pennsylvania will have to decide essentially identical arguments as to what conduct violates these statutes, and, therefore, proposed intervenors have an interest in how these issues are resolved in this case. Although this is a closer question, the Court concludes that the fact that this Court could decide similar legal issues as the Demyanenko-Todd action does not create a "legally protectable" interest under Rule 24(a).

As an initial matter, this Court's decisions are not binding on the Demyanenko-Todd

---

[6] As stated *supra*, in addition to the CFBP, Demyanenko-Todd, and Travis actions, there are also pending state court actions against defendants. Because the state court actions cannot be consolidated with the federal actions, plaintiff noted in her opposition brief that "voluntary coordination is both possible and more reasonably calculated to reduce any

inefficiencies that Proposed Intervenors purportedly seek to address." (ECF No. 34 at 18.) Counsel for plaintiff reiterated this point at oral argument, stating that, to the extent defendants or someone else identifies a gross inefficiency, the parties could voluntarily coordinate.

court, and the mere fact that they could be found persuasive is insufficient to warrant intervention as of right. *See In re Penn Cent. Commercial Paper Litig.*, 62 F.R.D. 341, 347 (S.D.N.Y. 1974) ("While it is true that a decision of one district court may be of some persuasive value in another, a holding that this constitutes an interest sufficient to justify intervention would expand the scope of Rule 24(a)(2) to such an extent that the interest requirement would essentially be read out of the rule."). Moreover, the factual differences between the Travis action, on the one hand, and the Demyanenko-Todd action, on the other, reduces any risk that a potential adverse decision as to Travis with respect to the state law claims in this action could be persuasive against proposed intervenors in the Demyanenko-Todd action. Indeed, proposed intervenors state in their reply brief that there are "significant factual differences between [plaintiff's] position and that of the *Demyanenko-Todd* Plaintiffs" and assert that "it is unclear that [plaintiff] was harmed by Navient's conduct." (ECF No. 38 at 10-11.) In addition, as noted *supra*, it is undisputed that Travis does not meet the factual requirements for proposed intervenors' putative class.[7]    Finally, proposed intervenors' assertion is also undermined by counsel for proposed intervenors' statement at oral argument that, had plaintiff not brought her suit as a putative class action, proposed intervenors would not be seeking to intervene.    Accordingly, proposed intervenors' interests are again contingent on

class certification and do not merit mandatory intervention.

2. Interest Impaired

Assuming *arguendo* that the Court determined that proposed intervenors have a sufficient interest in this action, the Court concludes that they have failed to establish that their interests would be impaired by its disposition. Proposed intervenors claim that, without intervention, their interests might be impaired by conflicting rulings in this action or a potential "reverse auction" settlement.[8] Plaintiff and defendants assert that proposed intervenors' rights would not be impaired because they are still able to litigate their claims in the Demyanenko-Todd action and, in the event the Court certifies a class that includes proposed intervenors and their putative class, the Federal Rules of Civil Procedure provide sufficient protections absent intervention. The Court agrees.

As discussed *supra*, the Court concludes that the risk of conflicting rulings at this stage in the litigation—prior to class certification—is insufficient to merit intervention under Rule 24(a). Were the Court to decide class certification, the Court likewise determines that proposed intervenors' interests would not be impaired by such a decision.

On the one hand, if the Court were to certify a class in this action that includes proposed intervenors and their putative class, their rights would be deemed protected, and

---

[7] Although proposed intervenors claim that these factual differences "further demonstrate[] the potential issues with having the overall litigation in multiple fora, since Travis' [purported] weak factual position could lead to rulings that negatively impact the individuals in the putative *Demyanenko-Todd* class who[, according to proposed intervenors,] have – on their face – much stronger claims that they were harmed by Navient's misconduct" (ECF No. 38 at 11 n.7), the Court disagrees. Instead, as set forth above, the Court determines that the differences between the

two actions undercut proposed intervenors' interest in this action.

[8] Specifically, proposed intervenors' stated concern is that "Navient will seek to use the existence of two largely identical class actions to try and settle the overall litigation by bidding the two groups of plaintiffs and lawyers against one another in order to achieve a minimal settlement." (ECF No. 38 at 9.)

not impaired. *See Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175 (D.N.J. 2008) ("Movant has not shown that his interest would be impaired by the case moving forward without him intervening. . . . because if the class is certified, the Court would deem that Movant's interests are adequately protected."). More specifically, their rights would be protected because Federal Rule of Civil Procedure 23(a)(4) requires that the Court conclude, among other things, that plaintiff "will fairly and adequately protect the interests of the class" before granting class certification. *See Mejia*, 2017 WL 3278926, at *18 ("[T]o the extent that the [proposed intervenors] *do* have an interest in the action as members of the putative class, class certification would necessarily imply adequate representation."). Proposed intervenors and members of their putative class could also choose to opt out of any class that may be certified, *see* Fed. R. Civ. P. 23 (c)(2)(B)(v), or, alternatively, enter an appearance through counsel, *see* Fed. R. Civ. P. 23(c)(2)(B)(iv). Moreover, proposed intervenors could continue to pursue their claims in the Demyanenko-Todd action.

On the other hand, if the Court were to decline to certify a class in this action, proposed intervenors' rights would not be impaired because, again, they would still be able to litigate their claims in the Demyanenko-Todd action. *See Waudby*, 248 F.R.D. at 175 ("If . . . the class is not certified than [sic] movant remains free to file an independent action to pursue his claims."). In addition, to the extent proposed intervenors argue that the Court's potential denial of class certification could impair their ability to pursue class certification in the Demyanenko-Todd action, the Court disagrees. In light of the fact that plaintiff seeks certification of a broader class than proposed intervenors, the Court finds any risk of prejudice to proposed intervenors with respect to any denial of class certification to

be insignificant.

Proposed intervenors' concern about a potential "reverse auction" settlement, while even more attenuated, likewise does not rise to the level of mandatory intervention in light of the protections under the Federal Rules of Civil Procedure. As an initial matter, any settlement would not be approved unless the Court held a hearing and found that it was "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the event of settlement, proposed intervenors could also object to the settlement, *see* Fed. R. Civ. P. 23(e)(5), or opt out, *see* Fed. R. Civ. P. 23(e)(4). Courts have repeatedly found no impairment of interest for these reasons, and the Court does not find any reason to depart from such decisions. *See, e.g.*, *Izzio v. Century Partners Golf Mgmt., L.P.*, Nos. 3:14–CV–03194–P, 3:15–CV–0861–P, 2015 WL 5472845, at *5 (N.D. Tex. Sept. 15, 2015) (finding movant's interests would not be impaired if he could not intervene to dismiss or transfer a portion of proposed global settlement because movant could object to the settlement, appear through an attorney, or opt out); *Calibuso v. Bank of Am. Corp.*, No. 10–CV–1413 (PKC), 2013 WL 5532631, at *2 (E.D.N.Y. Oct. 4, 2013) (dismissing class member's claim that her interest in opposing settlement would impaired absent intervention when she would "have an opportunity, vis-à-vis the settlement process," to object to the settlement or opt out).

3. Protection of Interest

Under the final Rule 24(a) requirement, proposed intervenors must show that their interests are not adequately protected by the parties in this action. Although "the burden of showing such inadequacy may be minimal," *Wash. Elec.*, 922 F.2d at 98, "when there is an identi[t]y of interest between a putative intervenor and an existing party to the action, a presumption of adequate

representation attaches in the absence of evidence of collusion, adversity of interest, nonfeasance, or incompetence," *St. John's Univ., N.Y. v. Bolton*, 450 Fed. App'x 81, 84 (2d Cir. 2011) (citation omitted).

Here, plaintiff and proposed intervenors share an identity of interest in that both seek to hold Navient accountable for allegedly steering borrowers towards forbearance. Thus, there is a presumption that Travis will adequately protect proposed intervenors' interests.

Proposed intervenors attempt to rebut this presumption by arguing that alleged "legal[] flaw[s]" in Travis's complaint—specifically, the fact that Travis (i) brought a breach of contract claim based on the servicing agreement, and not the loan agreement, and (ii) alleges a DCFA claim that seeks to certify a nationwide class, rather than a more tailored class—"call into question whether [plaintiff's counsel] is capable of adequately representing the *Demyanenko-Todd* Plaintiffs' interests." (ECF No. 38 at 11.) However, "[e]vidence that the putative intervenor 'and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy' is insufficient to rebut the presumption of adequate representation." *St. John's Univ., N.Y. v. Bolton*, No. 08–CV–5039 (NGG)(JMA), 2010 WL 5186823, at * 3 (E.D.N.Y. Dec. 10, 2010), *aff'd*, 450 Fed. App'x 81 (2d Cir. 2011) (citing *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999)). Accordingly, the Court concludes that proposed intervenors have failed to rebut the presumption that their interests are adequately protected by Travis in this action.

B. Permissive Intervention

Even if a party is not entitled to intervene as of right, Rule 24(b) allows a court to permit anyone to intervene who, on a timely

motion, "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b) further provides that, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." This is the "principal consideration" when deciding whether to grant permissive intervention. *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). In addition, when determining whether to permit intervention under Rule 24(b), courts also consider "the nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* at 191-92 (citation omitted). The Second Circuit has recognized "the broad discretion of the district court when considering permissive intervention," and "[a] denial of permissive intervention has virtually never been reversed." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005) (citation omitted).

The Court, in its discretion, concludes that permissive intervention is not warranted. As discussed *supra*, the Court neither finds that the proposed intervenors have a significant interest in this action nor that their rights are not adequately represented by Travis.

More importantly, intervention by proposed intervenors would, as a practical matter, delay or prejudice the adjudication of the rights of plaintiff and defendants. Proposed intervenors do not seek to intervene to participate in this case—instead, they seek to intervene for the purpose of moving to dismiss, stay, or transfer this action under the first-to-file rule. Travis and Navient both oppose dismissing, staying, or transferring

this action under the first-to-file rule. Thus, permitting proposed intervenors to intervene for this purpose would prejudice the rights of Travis and Navient given that they wish to proceed before this Court. *See Glover v. Ferrero USA, Inc.*, Civil Action No. 11–1086(FLW), 2011 WL 5007805, at *7 (D.N.J. Oct. 20, 2011) (denying permissive intervention because, among other reasons, "the Proposed Intervenors' stated interest in only having th[e] action dismissed or transferred . . . w[ould] clearly prejudice the rights of the existing parties in th[e] action").

Moreover, were the Court to allow proposed intervenors to intervene so that they could move to dismiss, stay, or transfer this action under the first-to-file rule, plaintiff would be further prejudiced because it is unclear whether plaintiff or her claims could proceed before Judge Mariani in U.S. District Court for the Middle District of Pennsylvania. Proposed intervenors concede that plaintiff would not be included in their putative class and that they have no intention of bringing her individual claims. Thus, plaintiff's claims would not be part of the Demyanenko-Todd action. Although proposed intervenors argue that the Court

could simply transfer this case to the Middle District of Pennsylvania, plaintiff and defendants assert that Travis could not maintain her action there because the Middle District of Pennsylvania does not have personal jurisdiction over defendants with respect to plaintiff's claims.[9] The Court is unaware of any case where a court has allowed a party to intervene in order to move to dismiss, stay, or transfer a case under the first-to-file rule when the plaintiff's claims would not be included in the first-filed action—let alone when the plaintiff's claims could not proceed in the first-filed court—and the Court declines to permit intervention for that purpose here.[10]

C. First-Filed Rule

Even if the Court granted proposed intervenors' motion to intervene, it would decline to apply the first-filed (or first-to-file) rule to dismiss, stay, or transfer this action.

Under the first-filed rule, "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second."

---

[9] Specifically, plaintiff and defendants argue that (i) Pennsylvania does not have general jurisdiction over plaintiff's claims because Navient is neither incorporated nor headquartered in Pennsylvania and no exceptional circumstances warrant a finding of general jurisdiction over Navient in Pennsylvania, and (ii) the Middle District of Pennsylvania does not have specific jurisdiction over plaintiff's claims because plaintiff does not allege interaction with Navient's Wilkes-Barre, Pennsylvania call center in connection with her claims. Although proposed intervenors dispute these arguments, the Court determines that the uncertainty alone weighs against granting permissive intervention for this purpose.

[10] Proposed intervenors cite three cases for the proposition that "plaintiffs in a first-filed action may intervene in a subsequently-filed case to seek to enforce the first-to-file rule": *Hubbard v. Elec. Arts, Inc.*, No. 09–CV–233, 2011 WL 3469118 (E.D. Tenn. Aug. 5, 2011), *Askin v. Quaker Oats Co.*, No. 11 CV

111, 2011 WL 5008524 (N.D. Ill. Oct. 20, 2011), and *Manier v. L'Oreal USA, Inc.*, Case No. 2:16-cv-06886-ODW-KS, 2017 WL 59066 (C.D. Cal. Jan. 4, 2017). (ECF No. 38 at 8.) The Court does not find these cases persuasive in the instant action because, in each case, the court noted that the plaintiff in the later-filed suit would be a member of the certified class or putative class in the first-filed suit. *See Hubbard*, 2011 WL 3469118, at *4 ("[T]he . . . court [in the first-filed suit] certified a nationwide class of plaintiffs, which would include [plaintiffs in the later-filed suit]."); *Askin*, 2011 WL 5008524, at *6 ("[A]s the [plaintiffs in the first-filed suit] point out, if they succeed in having this case dismissed under the first-to-file rule[,] [plaintiff in the later-filed action] will become part of the putative nationwide class in the [first-filed] litigation."); *Manier*, 2017 WL 59066, at *2 ("[T]he [first-filed] action asserts th[e] [same] allegations on behalf of the same putative nationwide class as the [subsequently-filed] action.").

*Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 551 (S.D.N.Y. 2016) (quoting *First City Nat'l Bank and Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)); *see, e.g.*, *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008). The first-filed rule "'embodies considerations of judicial administration and conservation of resources' by avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Emp'rs Ins.*, 522 F.3d at 274-75 (quoting *First City Nat'l Bank*, 878 F.2d at 80). It "applies when identical or substantially similar parties and claims are present in both courts." *Pippins v. KPMG LLP*, No. 11 Civ. 0377(CM), 2011 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116-17 (2d Cir. 1992)).

The first-filed rule, however, is "is not to be applied in a 'rigid' or 'mechanical' way." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 392 (S.D.N.Y. 2014) (citation omitted). Instead, "the district court is . . . required to 'consider the equities of the situation when exercising its discretion.'" *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) (quoting *Naula v. Rite Aid of N.Y.*, No. 08 Civ. 11364(PGG), 2010 WL 2399364, at *3 (S.D.N.Y. Mar. 23, 2010)).

Here, the actions are not sufficiently similar to warrant invocation of the first-filed rule. In short, although both actions include similar factual allegations, the same state law claims, and overlapping putative classes, neither plaintiff nor her claims would be included in the Demyanenko-Todd action and the parties dispute whether plaintiff could maintain her action against defendants in the Middle District of Pennsylvania. Thus, in considering the equities, plaintiff would clearly be prejudiced were this Court to apply the first-filed rule in favor of the Demyanenko-Todd action. Indeed, were the

Court to apply the first-filed rule and (i) dismiss this action, plaintiff's claims would be extinguished, without a forum in which they could be heard; (ii) stay this action, plaintiff's rights would be delayed until some future, unknown time; or (iii) transfer this action to Middle District of Pennsylvania, it is possible that this case would be returned here for lack of personal jurisdiction after inevitable delay.

Although proposed intervenors assert that that "similarity of parties has been found where the actions share at least one common defendant and the putative class of the second action is similar to or at least partially subsumed within the putative class of the first-filed action" (ECF No. 13-1 at 20-21), they fail to cite a case where the court applied the first-filed rule when the plaintiff in the second-filed action would not be included in the putative class of the first-filed action. For example, proposed intervenors rely on *Koehler v. Pepperidge Farm, Inc.*, No. 13–cv–02644–YGR, 2013 WL 4806895 (N.D. Cal. Sept. 9, 2013) for the proposition that the Court can dismiss or transfer "a copycat class action even if . . . the copycat action alleges a broader class than that of the first-filed action," (ECF No. 13-1 at 21 n.6). However, in *Koehler*, the court found both that the plaintiff in the later-filed action would be included in the nationwide putative class in the first-filed action, and that the plaintiff's separate state law claims could be transferred to the first-filed court. *Id.* at *4-6. In contrast, where, as here, the plaintiff in the later-filed action would not be included in the first-filed action, courts have correctly declined to apply the first-filed rule. *See, e.g.*, *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 CIV 9305(LTS), 2012 WL 3339045, at *2 (S.D.N.Y. Aug. 14, 2012) (finding transfer under the first-filed rule unwarranted "because the state-law based claims and class definition in the [first-filed] action d[id] not subsume, and their resolution would not be

conclusive of, those asserted in the instant action"); *Burns v. Gerber Prods. Co.*, No. CV–12–5027-EFS, 2012 WL 8251405, at *2-3 (E.D. Wash. Sept. 4, 2012) (denying motion to dismiss under first-filed rule when it was "not apparent from the face of the complaints whether even the named Plaintiff in [the later-filed case] would fall within [the first-filed case's] proposed class definition").

D. Transfer

Proposed intervenors also seek to have this action transferred to U.S. District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Although the Court denies proposed intervenors' motion to intervene, the Court may *sua sponte* transfer a case under § 1404(a). *Armstrong v. Costco Wholesale Corp. & Nice-Pak Prods., Inc.*, 234 F. Supp. 3d 367, 369-70 (E.D.N.Y. 2017).

Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *accord In re Cuyahoga Equip. Corp.*, 980 F.2d at 117. In determining whether to transfer venue, courts consider (1) whether the action could have been brought in the proposed forum, and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 347 (E.D.N.Y. 2012) (quoting *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840 (JGK)(AJP),

2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000)). When deciding whether transfer would promote convenience and be in the interests of justice, district courts consider:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair*, 462 F.3d at 106-07 (alteration in original) (quoting *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). There is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g.*, *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005); *Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04CV629 (ARR)(ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004). Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case.

As discussed *supra*, the parties dispute whether this action could have brought in the Middle District of Pennsylvania. In any event, the Court need not, and does not, reach that issue, because the Court concludes, in its discretion, that transfer is not warranted at this time.

1. Plaintiff's Choice of Forum

It is well settled that the first factor— plaintiff's choice of forum—is "given great weight." *D.H. Blair*, 462 F.3d at 107. Here, plaintiff chose to file her action in U.S. District Court for the Eastern District of New York. Plaintiff also resides in this district,

brought claims under New York state law, and seeks to represent a New York subclass.[11]  *C.f. EasyWeb Innovations*, 888 F. Supp. 2d at 348-89 (noting courts accord less weight to plaintiff's choice of forum when it is not her residence or has little connection to the operative facts of the case).  This factor thus weighs in favor of maintaining this action in this district.

2. Convenience of the Parties

The convenience of the parties also weighs in favor of maintaining this action before this Court given that that plaintiff and defendants oppose transfer (and proposed intervenors remain non-parties).

3. Location of Documents,[12] Witnesses, and Operative Facts

The second, third, and fifth factors likewise do not favor transfer.  Proposed intervenors assert that key documents and witnesses will be located at Navient's Wilkes-Barre, Pennsylvania call center, and that the pending Demyanenko-Todd and CFPB actions further support that Pennsylvania is the locus of the operative facts.  However, proposed intervenors did not submit an affidavit to this effect, *see EasyWeb Innovations*, 888 F. Supp. 2d at 350 ("Generally, the moving party submits an affidavit explaining why the transferee forum is more convenient, which includes 'the potential principal witnesses expected to be called and the substance of their testimony.'"

(citations omitted)), and plaintiff and defendants assert that plaintiff has not alleged that she had contact with Navient's Wilkes-Barre, Pennsylvania call center.

Plaintiff, on the other hand, argues that New York and Delaware (plaintiff's residence and Navient Corp.'s headquarters, respectively) are likely to be the location of the operative facts, relevant documents, and witnesses, whereas defendants assert that Navient's activities in Delaware and Virginia (Navient Corp.'s and Navient Solutions' headquarters, respectively) are more relevant to plaintiff's steering allegations than Navient's activities at its Wilkes-Barre, Pennsylvania call center.[13]  Based on the limited, conflicting information before the Court, the Court concludes that these factors are, at best, neutral.

4. Availability of Process to Compel the Attendance of Unwilling Witnesses and the Relative Means of the Parties

As for the sixth and seventh factors, none of the parties argue that these factors support their position, and the Court also determines that they are neutral.

5. Other Factors

Finally, proposed intervenors also claim that judicial economy and the interests of justice favor transfer because Judge Mariani is already presiding over the Demyanenko-Todd and CFPB actions.[14]  In response,

---

[11] The Court notes that none of the proposed intervenors reside in Pennsylvania, and neither action has alleged a Pennsylvania subclass or claims under Pennsylvania state law.

[12] As defendants assert, courts in this circuit have correctly found that the location of relevant documents factor is accorded less weight.  *See EasyWeb Innovations*, 888 F. Supp. 2d at 352 ("[T]he Court does not view this factor as particularly significant given the technological age in which we live, with the widespread use of, among other things, electronic

document production.").

[13] In support of their opposition to proposed intervenors' motion, defendants also submitted a declaration asserting that plaintiff had a conversation about IDR plans with a Navient Solutions loan servicing agent located in the Philippines.  (Decl. of Patty Peterson ¶ 3, Defs. Opp. Ex. C, ECF No. 33-3.)

[14] In their reply brief, proposed intervenors also assert that the pending Pennsylvania Attorney General action further supports that proceeding before Judge Mariani in the Middle District of Pennsylvania is the more

defendants assert that the CFPB action is fundamentally different from this action, and that the Demyanenko-Todd action is not so far along to warrant transfer. Although the Court recognizes these considerations, they do not outweigh plaintiff's choice of forum and the convenience of the parties at this time, especially given the uncertainty regarding whether plaintiff can maintain her action in the Middle District of Pennsylvania.

III. CONCLUSION

For the foregoing reasons, the Court denies proposed intervenors' motion in its entirety.

SO ORDERED.

█████████████████████████

Joseph F. Bianco
United States District Judge

Date:     February 16, 2018
          Central Islip, NY

*     *     *

Plaintiff is represented by Brian C. Gudmundson, Michael J. Laird, and Bryce D. Riddle of Zimmerman Reed LLP, 1100 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402; Michael R. Reese and George V. Granade of Reese LLP, 100 West 93rd Street, 16th Floor, New York, New York 10025; Arthur M. Murray, Stephen B. Murray, and Robin M. Myers of Murray Law Firm, 650 Poydras Street, Suite 2150, New Orleans, Louisiana 70130; Gary F. Lynch of Carson Lynch Sweet Kilpela & Carpenter, LLP, 1133 Penn Avenue, 5th Floor, Pittsburgh, Pennsylvania 15222; Bryan L. Bleichner of Chestnut Cambrone, 17 Washington Avenue North, Suite 300,

Minneapolis, Minnesota 55401; and Karen Hanson Riebel of Lockridge Grindal Nauen P.L.L.P., 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401. Defendants are represented by Lisa M. Simonetti of Vedder Price (CA), LLP, 1925 Century Park East, Suite 1900, Los Angeles, California 90067, and Ashley B. Huddleston of Vedder Price P.C., 1633 Broadway, 31st Floor, New York, New York 10019. Proposed intervenors are represented by Joseph H. Meltzer, Geoffrey C. Jarvis, and Zachary Arbitman of Kessler Topaz Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, Pennsylvania 19087.

_____
convenient forum.

14