UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIE TRAVIS, *on behalf of*    \*    Case No. 17-CV-04885(JFB)
 *herself and all others*    \*
 *similarly situated,*    \*
                        \*
            Plaintiff,    \*    Central Islip, New York
                        \*    January 24, 2019
    v.                    \*
                        \*
NAVIENT CORPORATION, et al.,  \*
                        \*
           Defendants.    \*
                        \*
 \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF CIVIL CAUSE FOR
INITIAL CONFERENCE AND MOTION HEARING
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        BRIAN C. GUDMUNDSON, ESQ.
                        Zimmerman Reed, P.L.L.P.
                        1100 IDS Center
                        80 South Eighth Street
                        Minneapolis, MN  55402

                        GEORGE V. GRANADE, II, ESQ.
                        Reese, LLP
                        100 West 93rd Street, 16th Floor
                        New York, NY  10025

For the Defendants:       LISA M. SIMONETTI, ESQ.
                        Vedder Price, LLP
                        1925 Century Park East, Suite 1900
                        Los Angeles, CA  90067

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 2:11 p.m.)

2               THE CLERK:  Calling case civil 2017-4885, Travis vs.

3      Navient Corporation.  Counsel, please state your appearance

4      for the record.

5               MR. GUDMUNDSON:  Good afternoon, Your Honor.  Brian

6      Gudmunson on behalf of the plaintiff.

7               MR. GRANADE:  Good afternoon, Your Honor.  George

8      Granade on behalf of the plaintiff.

9               THE COURT:  Excellent.  And?

10              MS. SIMONETTI:  Good afternoon, Your Honor.  Lisa

11      Simonetti for defendants.

12              THE COURT:  Okay.  And when you say that, who are

13      the defendants?

14              MS. SIMONETTI:  Navient Corporation and Navient

15      Solutions, LLC.

16              THE COURT:  Got it.  Okay.  I know it's a student

17      loan case.  I was concerned the shutdown would have affected

18      you in some way, but I guess not.  Okay.

19              MS. SIMONETTI:  Not yet.

20              THE COURT:  Not yet.  Not us yet either, but we're

21      getting close.

22              MS. SIMONETTI:  Right.

23              THE COURT:  All right.  What's the -- tell me what

24      the problem is with the loans?

25              MR. GUDMUNDSON:  We're here, Your Honor, I believe

3

1    because the plaintiff submitted a letter to Judge Bianco

2    simply asking that discovery go forward.

3              THE COURT:  I know.  What's the problem with the

4    loans?  Tell me.

5              MR. GUDMUNDSON:  I'm sorry.

6              THE COURT:  What is the problem with the student

7    loans?

8              MR. GUDMUNDSON:  With the student loans?

9              THE COURT:  Yeah.

10             MR. GUDMUNDSON:  I misunderstood your question, Your

11   Honor.

12             THE COURT:  Okay.

13             MR. GUDMUNDSON:  I apologize.

14             THE COURT:  Okay.

15             MR. GUDMUNDSON:  The problem with the student loans

16   is how they were serviced.  The defendant is a combination of

17   companies that contract with the federal government to carry

18   out the actual day-to-day servicing of the loans.

19             THE COURT:  Okay.

20             MR. GUDMUNDSON:  The Government may do the lending,

21   but collecting the bills, sending the bills, negotiating how

22   those are going to be paid is left up to Navient.

23             THE COURT:  I'm familiar with the concept.

24             MR. GUDMUNDSON:  Many, many, many millions of

25   Americans are.

4

1              THE COURT:  Okay.

2              MR. GUDMUNDSON:  And the problem here is that it was

3     uncovered, we believe and we've alleged, as the CFPB and a

4     number of states' attorney generals, that Navient, in the

5     course of carrying out its servicing activities, determined at

6     a certain point that taking borrowers who are financially

7     strapped through the options that were available to them was

8     too costly.

9              And so to do a workaround that was much less costly,

10    they would be simply put into forbearance, whether that was

11    the right thing to do or not.

12             THE COURT:  And now forbearance means what?

13             MR. GUDMUNDSON:  Forbearance means that you stop

14    paying your student loan.

15             But while you're not paying the interest continues

16    to accrue, so that when you come out of forbearance you have a

17    higher monthly payment.

18             THE COURT:  What are the other options?  In other

19    words, I can't pay, what else can we do?

20             MR. GUDMUNDSON:  Well, there's a number of options

21    that are available by regulation and that we believe Navient

22    was obligated to at least discuss or walk or enroll them in.

23             And it includes basically looking at a person's --

24    I'm sorry -- a borrower's income and determining whether it

25    should be lowered, whether it should be lowered to zero,

5

1    whether, you know, there's other arrangements that could be

2    made other than forbearance.

3                THE COURT:  Okay.

4                MR. GUDMUNDSON:  Forbearance would generally

5    considered a last step.

6                THE COURT:  Okay.  You have how many plaintiffs?

7                MR. GUDMUNDSON:  There is one named plaintiff.

8                THE COURT:  Okay.  And you would guess that the

9    class size is what, if you can.

10               MR. GUDMUNDSON:  Well, if it was based on how many

11   people have contacted our office to inquire about becoming a

12   plaintiff, it would be in the many, many, many, many large

13   number of people.  We do not have a number yet.  Certainly in

14   the many, many thousands.

15               THE COURT:  Okay.

16               MR. GUDMUNDSON:  We do not yet know if it's in the

17   many millions.

18               THE COURT:  And the class would encompass what

19   geographic area, what time frame?  What's your -- how are you

20   defining a class?

21               MR. GUDMUNDSON:  All borrowers of Navient who had --

22   I'm sorry.  All borrowers who had loans serviced by Navient.

23               THE COURT:  Nationwide?

24               MR. GUDMUNDSON:  Nationwide.  And, of course --

25               THE COURT:  That's interesting.  And I say

6

1    interesting because I've had -- I haven't had this exact

2    formulation, but I've had a lot of similar issues in the

3    mortgage lending business, right.

4            So what I generally find there -- maybe it's

5    different because it's a federal program, but that the banking

6    laws are such that it's usually state by state, because

7    usually you're only licensed to do mortgages in your own

8    state.  So there would be a different class action in New

9    Jersey.  That's not the case here?

10           MR. GUDMUNDSON:  It is not the case here.  Although

11   the business that Navient has somewhat self-limits the reach,

12   the geographic reach, because --

13           THE COURT:  Okay.

14           MR. GUDMUNDSON:  -- there's other servicers.

15           THE COURT:  All right.

16           MR. GUDMUNDSON:  And so, you know, if I -- I'm from

17   Minnesota.  And so if I borrowed money in the State of

18   Minnesota and decided to move to New York, I haven't lost my

19   claim.  It emanates from the federal regulatory scheme.

20           THE COURT:  Got it.

21           MR. GUDMUNDSON:  So it sort of transports with you.

22   Although if Navient doesn't do business in Hawaii, we'll have

23   no class members in Hawaii.

24           THE COURT:  Okay.  And what was the actual impact on

25   your named plaintiff of the scheme that you allege?  Your

1    claim is what, that a person paid or accrued interest that

2    they wouldn't have accrued if some of the other options were

3    presented?

4              MR. GUDMUNDSON:  Devastating financial impact.  Our

5    client is a woman who lives I think maybe five miles from the

6    front door of this courthouse.  She's a very-hard working

7    person.  She had severe health issues that stopped her from

8    working.  She went back to work.

9              It came back.  She had to stop.  Each time she --

10   I'm paraphrasing of course, Your Honor, because the complaint,

11   it speaks for itself.

12             THE COURT:  Got it.  Got it.  Got it.  We're just

13   talking.  Go ahead.

14             MR. GUDMUNDSON:  Yeah.  When she couldn't work, she

15   needed help and was told go into forbearance.

16             Her now bills are now such that they're too much for

17   her to pay.  And every day that goes by pushes her further and

18   further, sort of to in a financial distress.  It's a familiar

19   theme across the class.

20             THE COURT:  No.  No.  I hear you.  I was just trying

21   to kind of scope the problem.

22             MR. GUDMUNDSON:  Sure.

23             THE COURT:  In other words, did the interest get

24   bigger than the principal?

25             MR. GUDMUNDSON:  It certainly did.

8

1          THE COURT:  It did.

2          MR. GUDMUNDSON:  Oh, I don't have the figures

3     sitting in front of me, but the interest is much more now than

4     it was when she originally started.

5          THE COURT:  No.  Did it get more than -- did it get

6     larger than the principal?  I'm trying to kind of --

7          MR. GUDMUNDSON:  Oh.

8          THE COURT:  Are we talking thousands and tens of --

9     what's the numbers like?  That's what I'm trying to get a feel

10    for.

11         MR. GUDMUNDSON:  I don't have that information in

12    front of me, but I can certainly get it.

13         THE COURT:  Okay.  It matters to your client.

14         MR. GUDMUNDSON:  Oh.  It --

15         THE COURT:  I try to understand cases from, you

16    know, from the each point of view.

17         MR. GUDMUNDSON:  You're absolutely right, Your

18    Honor, and I appreciate that perspective very much.

19              From my client's perspective, who we've spoken to

20    even very recently, is getting notices after notices about

21    being delinquent and potentially going into default.

22              She looks at what she's able to take in each month

23    in income and what she's has to pay.  And it's that number

24    that comes on that check that just doesn't seem to make any

25    sense.

1           THE COURT:  All right.  So I try to challenge you

2    all as much as possible.  And I recognize we're not here --

3           MR. GUDMUNDSON:  Certainly.

4           THE COURT:  -- for a class action motion.  You're

5    not even there yet.

6           But in formulating a discovery plan or obligations

7    and so forth, I have to think of things, right?  I don't know

8    what the basis of the motion to dismiss is.  I'm going to

9    admit to all of you I haven't looked at it.  That's Judge

10   Bianco's motion.  It hasn't been referred to me.

11          If it is, I'll dig into it.  If you want to consent

12   to me for all purposes, you can.  And there's no -- there's

13   no prejudice for not consenting to a magistrate judge.  I have

14   to say that.  It's in the law.  A double negative, you know

15   what that means.

16          But what I mean by that though is if you want to do

17   that, at some point it's more convenient, talk to each other

18   first and make sure you both agree.

19          MS. SIMONETTI:  Right.

20          THE COURT:  I don't want hear, oh, we'll agree and

21   they won't.  I don't care.  It's up to you.  All right.

22          MR. GUDMUNDSON:  Certainly.

23          THE COURT:  But I have to go a little bit more into

24   it to sort of see what we're talking about.  I have a weird

25   question.  I'm going to ask it in a rude manner.

1          How could this possibly become a class action in

2     terms of the commonality aspect, meaning that your client was

3     sick, didn't work for a while, then did work for a while, and

4     was put into forbearance.

5          Although you think that maybe she could have taken

6     option B, which was something else, to lower her income and

7     lower the payments and roll it differently.

8          Isn't everyone's story going to be different in that

9     regard?

10         MR. GUDMUNDSON:  I think that in every single class

11    action that's ever been brought that would be true.  In this

12    case --

13         THE COURT:  Oh, not really.

14         MR. GUDMUNDSON:  Well --

15         THE COURT:  I have class actions involving thousand

16    dollar fines.  Everybody's owed a thousand dollars.  We're

17    done.  It's very easy.

18         MR. GUDMUNDSON:  Okay.

19         THE COURT:  Right?  That's beautiful.  You know.

20    That's what the class action stuff is best at.  This is hard

21    though, right?

22         MR. GUDMUNDSON:  Certainly.  And you're asking a

23    legitimate question.  It's a question that Judge Bianco asked

24    since there's a motion to strike the class allegations pending

25    before him.

1          THE COURT:  Right.

2          MR. GUDMUNDSON:  And we talked about it at the

3     hearing.

4          THE COURT:  And he's a great jurist.  So if I got

5     one that he got, I'm feeling good today.  So go ahead.

6          MR. GUDMUNDSON:  Sure.  And listen, we believe that

7     in discovery it is going to be borne out that everybody's a

8     victim of a common scheme.

9          And so what we need to find out is, number one, was

10    there a common scheme and was everybody injured?  Whether they

11    were damaged in a different way, we feel it's pretty black

12    letter law they can't defeat a class.

13         But what Your Honor's wondering, I believe --

14         THE COURT:  Right.

15         THE COURT:  -- in order for me to get --

16         THE COURT:  How am I going to manage this at the end

17    of the day?  That's what I'm asking.

18         MR. GUDMUNDSON:  How am I -- how am I going to

19    manage this?

20         THE COURT:  Yeah.

21         MR. GUDMUNDSON:  Well, I think it helps to look at

22    it from a damages perspective.  Like how could each of these

23    persons have been damaged without looking at -- well, one of

24    the core things, and this isn't class cert, but one of the

25    core things we believe we'll be allegedly is that every single

1    person, whether they go into forbearance or not, pays a

2    certain amount for servicing.

3            And you know this because if you agree to certain

4    paperless billing and things like that they'll reduce your

5    interest rate.  So a component of what everybody's paying is

6    for servicing.

7            THE COURT:  Oh, that's interesting.

8            MR. GUDMUNDSON:  And they did not receive the value

9    of what they paid for no matter whether they --

10           THE COURT:  Oh, that's interesting.

11           So you're saying to me that one potential sort of

12   easy damage fix is to say everyone gets the value of the

13   servicing returned to them?

14           MR. GUDMUNDSON:  Under a breach of contract theory

15   or other theories, yes.

16           THE COURT:  That's interesting.  That's interesting.

17           MR. GUDMUNDSON:  Right.  And then we've got -- and

18   then we've got other, you know, of course consequential

19   damages and things like that that could be handled through

20   individual examinations, like we do in many cases that are

21   certified but damages issues are left for later.

22           THE COURT:  Okay.  So you're the one asking for

23   discovery.

24           Counsel, I'm going to let you speak.  Don't worry.

25   I'm not --

1          MS. SIMONETTI:  I'm not anxious.

2          THE COURT:  I'm just exploring everything I can.

3          And your adversary is going to say to me but we got

4     this motion to dismiss that's going to kill this class action.

5     Forget it.  And they want all of this.  What's all of this?

6     What do you really want at this stage?

7          MR. GUDMUNDSON:  Well, it's again our complaint.  I

8     don't want to -- I don't have it sitting in front of me and I

9     don't want to say something that's askance, but it sort of

10    speak for itself, but I do want to tell Your Honor exactly

11    what we're after here.

12         THE COURT:  Let me refine the question.  Let me

13    refine the question by saying while her motion to dismiss is

14    still pending, what are you looking for?

15         MR. GUDMUNDSON:  Oh, I'm sorry.

16         THE COURT:  Right.

17         MR. GUDMUNDSON:  I misunderstood Your Honor.

18         We are simply asking that discovery go forward.

19         THE COURT:  On what?

20         MR. GUDMUNDSON:  On everything.

21         THE COURT:  That makes it harder, right?

22         MR. GUDMUNDSON:  Well, I want to sort of apprise

23    Your Honor, on the way to the courthouse here through the gale

24    winds, Ms. Simonetti and I had a --

25         THE COURT:  I made it tough today.  So go ahead.

1    Yeah.

2              MR. GUDMUNDSON:  No.  It's well worth it.

3              We had a chance to talk and Ms. Simonetti raised

4    some of these concerns with me and we did have a chance to

5    sort of examine it.  And I'll tell you what I told defense

6    counsel.

7              You know, up until today on the drive through the

8    gale force winds, we have tried to negotiate a protective

9    order, an ESI order, ESI protocol, discovery order.

10             We've got requests for production served.  We've

11   received objections and responses.  We've received some

12   documents.

13             We've also received a number of objections that we

14   just look at and say, you know, from our perspective are

15   ridiculous, from their perspective are very meritorious.

16   We're probably going to be before Your Honor for a resolution

17   of those at some point.

18             Let's move forward with meeting and conferring on

19   those and getting them out of the way and moving forward with

20   discovery.  Okay.

21             So Ms. Simonetti says to me -- what's in her papers

22   and what she'll tell you, all well and good, but then you're

23   going to say, okay, now start running the searches and start

24   producing things without us really knowing what the scope of

25   the case is.  You could get dismissed.  You may not get

1      anything.  Very costly.

2              And I gave it some thought and I responded as

3      follows.  There's nothing wrong at all with going forward with

4      meeting and conferring on these objections, some of which are

5      just -- I'm not even going to -- I could read them if Your

6      Honor wants to hear them, but --

7              THE COURT:  No.  I really don't.

8              MR. GUDMUNDSON:  No.  No.

9              THE COURT:  I so don't.

10             MR. GUDMUNDSON:  We think that it's going to -- it's

11     going to take some time to get through these things and

12     understand exactly where we're going on this thing.

13             If such a point comes that we have resolved all

14     these before Your Honor, we're received the orders which are

15     very likely going to be needed, and we've resolved our ESI

16     issues, and we still have not gotten an order, I think it's

17     perfectly reasonable for us to say -- to put into any order

18     that comes from Your Honor today the parties shall meet and

19     confer at that point should an order not be pending whether or

20     not you should go forward.

21             THE COURT:  Okay.  Let me add and let me stir it up

22     by saying that to the extent that we're going forward with

23     discovery -- and I'm not prejudging anything, I'm going to

24     hear everybody first -- meeting and conferring is the golden

25     rule, right, because you meet, you work it out.

1          Because if you ask me for a decision, I'm happy to

2     do it.  It's my job.  It's why they're -- well, not paying me

3     now, but it's why they usually pay me, right, until the

4     shutdown's over.

5          But that said, you know, the point is if you put it

6     to me for a decision, I will make a decision that by

7     definition will make everyone unhappy, right?  You won't get

8     what you want.  You'll have to turn over too much.

9          You know, you know what you can do.  You know what

10     you need.  And when you sit down and talk and figure it out,

11     you're going to get a much better resolution than I'm going to

12     be able to give you.  That said, sometimes you can't and

13     that's why we're here.  That's why they give me this thing,

14     right.  So we'll take care of it.

15          I see a range in my head already without even

16     letting your adversary say word one to me today that could

17     range from absolutely everything. 745,000 plaintiffs turn over

18     every file, or I could say not at all.  Nothing.  Zero.

19     Because the motion to dismiss is so wide ranging that I --

20          There are steps in between those two extremes,

21     right?  One might be, Judge, what if we did discovery only on

22     the named plaintiff in terms of her file?  Maybe you already

23     have that stuff.  I don't know.

24          But as well as sort of the what I'm going to call

25     the higher level stuff, you know.  Policies and procedures

1    manuals, you know, things that -- decisions that were made --

2    you know, something that would be not overly burdensome.

3         Excuse me one second.

4    (Pause.)

5         THE COURT:  All right.  I'm going to leave you with

6    this thought.  I'll be right back.  All right?

7         MR. GUDMUNDSON:  Yes, Your Honor.

8         THE COURT:  You know, is there -- is there sort of

9    some sort of core stuff that you'll get to even if it's in an

10   individual case, right, that you could work out?  And I'm

11   going to leave you to talk about that for a few seconds with

12   your adversary and I'll be back.  Okay?

13        MS. SIMONETTI:  Thank you, Your Honor.

14        MR. GUDMUNDSON:  Thank you.

15   (Court recessed at 2:26 p.m. and resumed at 2:33 p.m.)

16        THE COURT:  And?

17        MR. GUDMUNDSON:  Well, I think we agree on some

18   things and I think we certainly disagree on some things that

19   are pretty important to the plaintiffs.

20        THE COURT:  All right.  Well, hold onto the

21   disagreement part and I'll come back.

22        Let me let you speak.

23        MS. SIMONETTI:  Thank you.  And just to clear up

24   some of the context of the case, there are two defendants

25   here.  The first is Navient Corporation, which is a holding

1    company and does not in fact engage in any loan servicing

2    activity.  So that presents a set of issues for us in that

3    they're not actually engaged in any of these servicing

4    programs.

5              THE COURT:  What do you say about that?

6              MR. GUDMUNDSON:  I say we need some jurisdictional

7    discovery because our allegations, I think, are pretty clear

8    in the complaint.

9              THE COURT:  Wait.  It's not jurisdictional.  She's

10   saying we don't do that.  Right?  Unless you're alleging some

11   kind of piercing of the corporate veil.  Right?

12             MR. GUDMUNDSON:  Well, these issues have been

13   briefed.  We even briefed that issue in the motion to dismiss.

14   But we --

15             THE COURT:  Wait.  You briefed the motion?  You

16   briefed the issue on the parent company?

17             MR. GUDMUNDSON:  We did not.

18             THE COURT:  Okay.  So why don't you let the parent

19   company out with the right to reinstate the complaint if

20   discovery shows otherwise?

21             MR. GUDMUNDSON:  Well, we believe that the claims

22   we've asserted against the parent company are meritorious.

23             THE COURT:  How can you believe that if they don't

24   do loan servicing?

25             MR. GUDMUNDSON:  Well --

1          THE COURT:  If she's right --

2          MR. GUDMUNDSON:  -- if they were --

3          THE COURT:  -- doesn't it end there?

4          MR. GUDMUNDSON:  No.  Because if they're responsible

5     for the representations that were made, they would need to be

6     doing the loan servicing themselves.

7          THE COURT:  I mean, it's an entity.  When you say

8     they're responsible, what do you mean?

9          MR. GUDMUNDSON:  I'm actually actively litigating

10    this in another case, so this is sort of at the forefront of

11    my mind.  And I don't have this complaint sitting in front of

12    me.  It's --

13         THE COURT:  That's okay.

14         MR. GUDMUNDSON:  But, you know, we've alleged the

15    liability that they both have.  And they --

16         THE COURT:  Okay.  So, counsel, what I'm going to

17    say to you is -- I don't know you.  You've never appeared

18    before me before.  I think this is your first time.

19         MR. GUDMUNDSON:  Correct.

20         THE COURT:  Yeah.  Okay.  You seem a reasonable

21    fellow, right?

22         And I'm just going to say to you, you know, when you

23    have big complicated cases, sometimes there are relatively

24    easy gives, right?

25         And you've got to remember although she's

1    representing a gigantic banking corporation, you probably see

2    them as being like, you know, some huge corporate monolith,

3    she's got a client to deal with, right?

4            If she can go home to her client and say you know

5    what, we're working with these folks, they helped us with this

6    piece, right, it engenders a little good will I think.  That's

7    just something to think about.

8            MR. GUDMUNDSON:  Your Honor, we've seen nothing in

9    the record today and certainly have not seen any arguments

10   that indicate that that is warranted to dismiss this case.  So

11   if Judge Bianco sees it differently, it's fine.

12           THE COURT:  But you hear my point?  I'm not saying

13   that you're wrong on the merits.  I'm saying on the -- if she

14   has a corporate entity that's been roped in erroneously, right

15   --

16           MR. GUDMUNDSON:  We have no interest in reviewing

17   documents or pursuing a defendant who has no liability.

18           THE COURT:  That's what I'm saying.  Wow.  We're in

19   violent agreement you and I.  Okay.

20           Sorry.  Keep going.  So that's one, but go ahead.

21           MS. SIMONETTI:  All right.  So Navient Solutions,

22   LLC is the servicing entity.  And these claims have to do with

23   the two primary federal loan programs.  The Direct Loan

24   Program and the Federal Family Education Loan Program or FFEL

25   Program.

1          THE COURT:  Okay.

2          MS. SIMONETTI:  Under the Direct Loan Program, the

3     Government is the direct lender on the loans.  And under the

4     FFEL Program there is an original creditor, then there are

5     some guarantee agencies, and then the federal government is

6     the ultimate guarantor.

7          THE COURT:  Right.  Okay.

8          MS. SIMONETTI:  But at the end of the day they --

9          THE COURT:  So it's either it's coming from a bank

10    but it's guaranteed by the Government or it's coming directly

11    from the Government.

12         MS. SIMONETTI:  Right.  At the end --

13         THE COURT:  And you're servicing both types?

14         MS. SIMONETTI:  We service both types.  That is

15    correct.

16         THE COURT:  Excellent.  Okay.

17         MS. SIMONETTI:  And I think as all plaintiffs

18    allege, we are probably the largest loan servicer in the

19    country.

20         THE COURT:  Okay.

21         MS. SIMONETTI:  And it is a very large portfolio.

22    And the claims in the complaint are based on state law, all of

23    them.  And the central allegation is what the plaintiffs call

24    steering.

25         THE COURT:  Hold on.  All of the claims are based on

22

1    state law?

2            MS. SIMONETTI:  Yes, they are.  So we have a

3    preemption defense.  We say you can't do this because there's

4    a higher education hat.

5            THE COURT:  Okay.  But there's something else, which

6    is, when I asked you about the class before, you were saying

7    nationwide, but what you really mean is people who started in

8    New York, yes?

9            MR. GUDMUNDSON:  I'm sorry?

10           THE COURT:  It's people who -- when I asked you

11   about the class, you said it would be a nationwide class.  But

12   it can't be, right?

13           MR. GUDMUNDSON:  Well, we --

14           THE COURT:  The people had to have been in New York

15   at some point.  Somebody from Minnesota who got a loan in

16   Minnesota can't possibly claim the benefit of New York law.

17           MR. GUDMUNDSON:  But we've had -- we've had a choice

18   of law analysis that's forthcoming with the class

19   certification motion certainly, but we think that it

20   conceivably could be certified nationwide.

21           THE COURT:  Where is the corporation domiciled?

22           MS. SIMONETTI:  Navient Corporation is domiciled in

23   Delaware.  And Navient Solutions is either Delaware or

24   Virginia, depending on how you look at it.

25           THE COURT:  Okay.  So we've got Delaware/Virginia

1      companies --

2                MS. SIMONETTI:  Right.

3                THE COURT:  -- and a borrow in Minnesota who's never

4      seen the great state of New York -- and I'm sorry for that

5      person -- but that can't be part of your class, right?

6                MR. GUDMUNDSON:  We believe it -- well, I'm not here

7      to give a treatise on the law -- of choice of law, but

8      certainly we've been able to certify classes nationwide under

9      state law.  For example, in the *Target* data breach case.

10               THE COURT:  But there has to be some link, right?

11     In other words, the person had -- the class member has to have

12     been in New York at some point, when the loan was made or when

13     it was serviced or when it was paid or something.  No?  If you

14     were somebody who never left the great state of Minnesota, and

15     borrowed money from them --

16               MR. GUDMUNDSON:  Well, certainly it may not be New

17     York law applies except for those who live or reside in the --

18               THE COURT:  She just said to me all your clients are

19     New York claims, yeah?

20               MR. GUDMUNDSON:  Okay.

21               MS. SIMONETTI:  They're all state law claims.  They

22     are --

23               THE COURT:  Oh, not New York State law claims.

24               MS. SIMONETTI:  I'm sorry.

25               THE COURT:  They're just state, various states.  Got

1    it.  Sorry.  Sorry.  My bad.

2               MS. SIMONETTI:  Sorry, Your Honor.

3               THE COURT:  No.  No.

4               MS. SIMONETTI:  Sorry, Your Honor.  I didn't -- I

5    didn't mean -- yes.

6               THE COURT:  I jumped to a -- I jumped to a

7    conclusion there.  Okay.

8               MS. SIMONETTI:  I liked that conclusion though.  We

9    just can't go there right now.

10              THE COURT:  So they're all state -- different

11   states' laws, yes?

12              MS. SIMONETTI:  At the end of the day, I think that

13   would be part of their analysis.  They have to show that

14   they're common at that point in time.

15              THE COURT:  Understood.  Wow.  That's interesting

16   too.  Interesting is bad for everybody.  I should say that out

17   loud.  When I say interesting, that means a lot of arguments.

18   I got it.

19              MS. SIMONETTI:  But the simple theory is steering.

20   And the idea of steering is that in conversations with NSL's

21   -- we call it NSL, customer service agents --

22              THE COURT:  Right.

23              MS. SIMONETTI:  -- that the agents steer them into

24   forbearance rather than going through the income driven

25   repayment analysis that Mr. Gudmundson mentioned.  You know,

25

1    what's your income?  How many kids do you have?

2          That they steer them into forbearance programs.  I

3    don't agree that forbearance is bad for everyone by any

4    stretch.  It actually is meant to be a temporary --

5          THE COURT:  Okay.

6          MS. SIMONETTI:  -- form of relief.

7          But setting all of that aside, the case at the end

8    of the day has to do with these conversations with

9    theoretically millions of people, which is why we made the

10   motion to strike the class allegations.

11         And, you know, fundamentally the claims are either

12   non-disclosure claims or misrepresentation claims.  Again,

13   it's part of the theme behind the motion to strike.

14   And there is a very similar case that's pending in the Eastern

15   District of Pennsylvania.

16         THE COURT:  I was going to ask about that.

17         MS. SIMONETTI:  This is the subject of the motion to

18   transfer and consolidate and all of these things brought --

19         THE COURT:  Which one's first filed?

20         MS. SIMONETTI:  It's the one in Pennsylvania.  And

21   those plaintiffs came here before Judge Bianco and made this

22   motion to transfer and consolidate and all of these other

23   forms of relief.  That was denied and that case is still

24   ongoing there.

25         But discovery is not stayed in that case.  And so

1   what we have been doing is -- back up one more second --

2   that's also where the CFPB action is pending.

3          And that's, you know, sort of the main action that

4   originally was brought with respect to these steering

5   allegations.

6          THE COURT:  Okay.

7          MS. SIMONETTI:  So in connection with discovery

8   here, we have produced to plaintiffs all of the information

9   that we have produced to the plaintiffs in Pennsylvania.

10         THE COURT:  Okay.

11         MS. SIMONETTI:  So as we make document productions

12  in that case, we take those documents and we send them over to

13  the Travis case.  And --

14         THE COURT:  That was wise.

15         MS. SIMONETTI:  I think it's very reasonable and

16  sort of a middle ground between everything and nothing.

17         THE COURT:  Yes.

18         MS. SIMONETTI:  And --

19         THE COURT:  And to the extent that your client

20  accuses you of being soft, you could tell them I said I would

21  have ordered you to do that anyway.  So we're good.

22         MS. SIMONETTI:  They're actually pretty reasonable.

23         THE COURT:  Okay.

24         MS. SIMONETTI:  They like to save money and they

25  like to avoid, you know --

1          THE COURT:  No.  No.  But it's smart because you're

2    doing it anyway so why not.  You know.

3          MS. SIMONETTI:  Exactly.  And we have produced Ms.

4    Travis' own file, that's, you know, call logs, correspondence

5    history, recordings of conversations.

6          THE COURT:  Okay.  So what are you asking me to stay

7    or put off for the time being?

8          MS. SIMONETTI:  It's a couple of things.  Anything

9    that has to do with ESI is always a great matter of great

10   controversy.  Who do you serve?  How many custodians?  What

11   are the search terms?  What will it cost to pull back?  What

12   do we review?  What's privileged?  All of those types of

13   things.

14          And because there is this -- the Government actions

15   pending -- so there are a few Government actions, a few states

16   in the CFPB --

17          THE COURT:  Right.

18          MS. SIMONETTI:  -- there are undoubtedly documents,

19   you know, that relate to the investigations that we would then

20   have to go look for.

21          I'm aware, as of the past few days, that there are

22   privileged -- bank examination, privileged documents related

23   to the CFPB.  That is what counsel and I just talked about

24   when you left the room.

25          THE COURT:  Okay.

1            MS. SIMONETTI:  That's a privilege that belongs to

2      CFPB. It appears under the regulations, not us.  So then there

3      has to be notice.  And these are issues that --

4            THE COURT:  Yeah.  I handled this in an attorney

5      general investigation of dental monopoly.  Look it, I got

6      that.  Wow.  Five hundred cases.  I remember some of them.

7            MS. SIMONETTI:  Yeah.

8            THE COURT:  But I looked at that issue.  That's a

9      little complicated, investigative stuff and other

10     jurisdictions.

11            MS. SIMONETTI:  Exactly.

12            THE COURT:  Okay.

13            MS. SIMONETTI:  Exactly.  And when the privilege

14     does not belong to the company.

15            So my understanding -- and trust me, I am no expert

16     -- we would have to give notice to CFPB, deal with them in

17     terms of whatever their response would be --

18            THE COURT:  Yeah.  That gets a little funny because

19     -- I don't mean funny ha, ha, I mean funny odd, because the

20     question is if it's your document, but the -- I'm going to

21     make it up -- the Arizona Attorney General asked you for it,

22     right --

23            MS. SIMONETTI:  Right.

24            THE COURT:  -- and they said give us all the

25     documents you gave the attorney general.  But it's your

1   documents, it's not really privileged --

2          MS. SIMONETTI:  Right.

3          THE COURT:  -- they're just getting at it sort of

4   through a privileged -- what you might -- because it would be

5   a privilege mechanism it gets odd, right?

6          MS. SIMONETTI:  As I said --

7          THE COURT:  That's hard.

8          MS. SIMONETTI:  -- I'm no expert.  As I sit here

9   right now, if any of this were to come to pass, I would

10  certainly get up to speed.

11         THE COURT:  Right.

12         MS. SIMONETTI:  But for the moment, I guess how I

13  look at it is we have provided the claims file.  We've

14  provided these kind of core documents about the program, the

15  IDR Program, that's the, you know, the basis of the case.

16         We will continue to provide these core documents to

17  the extent that they are pulled and produced in the other

18  case.  They stand then on the same footing.

19         THE COURT:  When was your motion fully briefed?

20         MS. SIMONETTI:  In this matter?

21         THE COURT:  Mm-hmm.

22         MS. SIMONETTI:  It was fully briefed -- it was heard

23  on February 6th, 2018.

24         THE COURT:  Oh.  Okay.

25         MS. SIMONETTI:  But there was further briefing

30

1    requested that was completed in December.

2              I want to say you filed your last brief in December?

3              MR. GUDMUNDSON:  November/December.  It was a

4    discrete issue requested by Judge Bianco.

5              MS. SIMONETTI:  Right.  Having to do with the Higher

6    Education Act preemption.  And there were supplemental

7    memoranda put in.  And that's where we stand vis-a-vis Judge

8    Bianco.

9              THE COURT:  So I'm going to say no matter what

10   you're going to get a 2019 decision.

11             MS. SIMONETTI:  That seems very likely, yes.

12             THE COURT:  I think that's a pretty good, reasonable

13   estimate.

14             So the question is if I'm right, what do you need

15   between now and sometime in 2019 when the motion to dismiss is

16   decided?  What do we need to work on between then and now?

17             MR. GUDMUNDSON:  I think that first and foremost

18   really the reason we're here -- and I don't want to be

19   unreasonable --

20             THE COURT:  You're not.

21             MR. GUDMUNDSON:  -- and for your --

22             THE COURT:  And if I've accused you of the same, I

23   did not mean to.

24             MR. GUDMUNDSON:  No.  No.  No.  Of course not.  And

25   just for your court's information, there's a great deal of

1    collegiality between defense counsel and I.

2            THE COURT:  Good.

3            MR. GUDMUNDSON:  We've worked together quite well.

4            THE COURT:  Good.  That helps actually.

5            MR. GUDMUNDSON:  Yeah.  And I think that first and

6    foremost we've got to get some of these objections squared

7    away.

8            They're not ones that -- you know, if we've got a

9    request give us the name or search the files for every person

10   who's put in forbearance, and Your Honor's saying, you know,

11   maybe we want to wait on that one because we want to see if

12   there's class allegations or something like that, sure,

13   absolutely.

14           But there's other things that are quite sort of ripe

15   for resolving.  There's six or seven -- maybe a few more --

16   requests that have been objected to outright that we -- no

17   shock -- really want to resolve and obtain.

18           THE COURT:  Okay.

19           MR. GUDMUNDSON:  Not the least of which is

20   information passed between the CFPB and the defendant,

21   information related to investigations by the CFPB and the

22   number of states' attorneys general.

23           Today we've heard about an objection that's not in

24   their stated objections but which has been asserted that the

25   CFPB may have.  I'd like to get to the nub of that.  I'd like

32

1   to litigate it and have it decided if that's going to --

2           THE COURT:  Forgive me.  This acronym you just used,

3   CFPB --

4           MR. GUDMUNDSON:  Yes.

5           THE COURT:  -- stands for what?

6           MR. GUDMUNDSON:  Consumer Financial Protection

7   Bureau.

8           THE COURT:  And what is that?

9           MR. GUDMUNDSON:  That is a --

10          THE COURT:  Which government does that belong to?

11  Who is that?

12          MR. GUDMUNDSON:  That would be the executive branch.

13          THE COURT:  Okay.  Of the federal government?

14          MR. GUDMUNDSON:  I'm sorry?

15          THE COURT:  Of the federal government?

16          MR. GUDMUNDSON:  Of the federal government.

17          THE COURT:  I have to ask because there's state --

18  there's all kinds of things, right?

19          Did they -- have they been brought into this?  In

20  other words, are they telling you don't turn those over

21  because it's ours?

22          MS. SIMONETTI:  So here's -- I'm sorry.  So there's

23  so much going on here.  The CFPB filed an action in the

24  Eastern District of Pennsylvania against these companies, so

25  it's ongoing litigation.

1           THE COURT:  Right.

2           MS. SIMONETTI:  And there are a couple of other

3    state AGs that have brought similar claims, you know, sort of

4    jumped on the --

5           THE COURT:  Against your client?

6           MS. SIMONETTI:  Correct.  That's correct.  And those

7    -- some of them are in the Eastern District of Pennsylvania.

8    And then there's Washington and California.  But there are a

9    few different state -- and there's the one federal action.

10          So when I mentioned this examination privilege a

11   little while ago, that's what I meant.  It's an examination

12   privilege that belongs to the CFPB.

13          THE COURT:  What exactly is an -- because I've dealt

14   with every kind of privilege there is I thought -- but what

15   exactly is an examination privilege?

16          MS. SIMONETTI:  So I'm going to explain it based on,

17   as I said, my non-expert understanding, but it is a privilege

18   that goes to information and documents that would reveal

19   something about the subject matter of the examination or the

20   direction of the examination that the CFPB would object to

21   being in the hands of other people.

22          THE COURT:  So it's sort of the little brother as

23   such, or the little sister, of the law enforcement privilege,

24   yeah?

25          MS. SIMONETTI:  Being a civil lawyer, I probably

1    shouldn't even say anything about that, but it sounds like it

2    resonates with you.

3             But it is a privilege that is a product of the Code

4    of Federal Regulations.  And that would have to be dealt with

5    if we started to look for --

6             THE COURT:  But who does it require -- who is it

7    intended to protect?

8             MS. SIMONETTI:  It's intended to protect the

9    integrity of the CFPB's investigation.  I'm not -- I'm not

10   stating that it can never be overcome.  That's not my

11   understanding.

12            THE COURT:  No.  No.

13            MS. SIMONETTI:  But it's not for us to waive.  It's

14   not for us to assert.

15            THE COURT:  What I'll say about that is this.  It's

16   interesting and it will take a while to resolve if you all

17   don't agree.

18            MS. SIMONETTI:  Right.

19            THE COURT:  You sort of feel, and I understand why,

20   that you're not in a position to agree because it's not your

21   thing.

22            MS. SIMONETTI:  Correct.

23            THE COURT:  I don't know if formally speaking the

24   CFPB is within my jurisdiction in this particular matter.

25   Obviously, it's a federal agency.  I'm the federal court.  I

1    get that.  But, you know, they're not here.  They're not

2    before the Court.  They're not part of this case.

3              MS. SIMONETTI:  Right.

4              THE COURT:  But I'm not above inviting them to

5    submit something.  In fact, that might be a way to start this.

6    In other words, to say --

7              MS. SIMONETTI:  Well --

8              THE COURT:  -- I'd like you to inquire on behalf of

9    the Court as to whether or not they're going to insist on

10   this.

11             MS. SIMONETTI:  But you --

12             THE COURT:  And if they want to be heard and if they

13   want to intervene.  And then we'll -- let's get it out.

14             MS. SIMONETTI:  Right.

15             THE COURT:  But that's one of the things that takes

16   a long time.  So --

17             MS. SIMONETTI:  I agree it takes a long time.  And

18   also what that means is that we would have to undertake the

19   search now and the burden of finding all of those things.

20             THE COURT:  Well, I wouldn't put you to that search

21   or burden until we get the issue out of the way, right?  In

22   other words, are they going to -- let me make it clear.

23             Your request is turn over to me everything you've

24   turned over to them.  Is that --

25             MR. GUDMUNDSON:  Among others, yes.

1          THE COURT:  Okay.  But that would be the primary one

2    where this investigative examination privilege might come up,

3    fair?

4          MR. GUDMUNDSON:  One of them, yes.  Correct.

5          THE COURT:  Yeah.  You know, I would just say you

6    could just take his request and say to CFPB this is the

7    request the Court would like.  And they're free to file

8    something with me.  I'll hear from them, right?

9          MS. SIMONETTI:  Well --

10         THE COURT:  And you'll get copies.  It will be on

11   notice to everybody.

12         MS. SIMONETTI:  Right.  But here's --

13         THE COURT:  If they want to invoke a certain

14   privilege here --

15         MS. SIMONETTI:  But here's the actual --

16         THE COURT:  -- come on in and invoke it.

17         MS. SIMONETTI:  -- here's the request.

18         Documents concerning any inquiry or investigation by

19   any government entity, either state or federal, including, but

20   not limited to, the CFPB, the United States Senate, DOJ, SEC

21   or FTC related to any income driven repayment plan or

22   forbearance.

23         THE COURT:  Right.

24         MS. SIMONETTI:  That is extremely broad.

25         THE COURT:  That's a different question, right?

1          MS. SIMONETTI:  Okay.  But --

2          THE COURT:  Because we all can sit here and we

3     recognize that what we really mean -- what that really means

4     in terms of a problem is the CFPB.  Because --

5          MS. SIMONETTI:  I don't -- I don't know that.

6          THE COURT:  Well, hold on.  To your knowledge as you

7     sit here and to their knowledge, the Montana State Troopers

8     haven't investigated you for this, right?

9          MS. SIMONETTI:  Not them for sure.

10          THE COURT:  Right.  Right.

11          MS. SIMONETTI:  They have not.

12          THE COURT:  So you're kind of -- we know -- we're

13     able to identify one problem.  We can talk about the breadth

14     and the scope and the so forth --

15          MS. SIMONETTI:  Right.

16          THE COURT:  -- but let's get to what it really is

17     about.  That's what it's really about, right?

18          MS. SIMONETTI:  It's about the CFPB and the handful

19     of states that I mentioned.

20          THE COURT:  Right.  Right.

21          MS. SIMONETTI:  And so I guess what I'm trying to

22     say is to me it's a little big backwards.  Because you would

23     say go look for all of these documents, figure out what they

24     are.  Could they possibly be subject to these privileges?  You

25     know.  I don't know what the states' rights would be frankly.

1    This is just something that came up in the past few days with

2    CFPB.

3            What all is out there?  What is it?  Is it subject

4    to privilege?  At that point, you are so deep in the weeds I

5    suspect that you deal with that first and then you deal with

6    the issue of what are the legal rights.

7            Because they can't -- you can't evaluate -- you

8    can't evaluate privilege on anything until you see it.

9            THE COURT:  But you know that there has been an

10   inquiry by this group.

11           MS. SIMONETTI:  There's litigation, there's no

12   doubt.

13           THE COURT:  Right.  So you obviously can identify

14   their counsel because you know where they are.

15           MS. SIMONETTI:  I know their counsel.

16           THE COURT:  And you could, you know, inform them we

17   have this request. We haven't done the full search, but we

18   recognize it would bear on the documents we turned over to

19   you.  Right?  You know, your request for documents and the

20   documents we've turned over to you.  Meaning the CFPB, yes?

21           MS. SIMONETTI:  So if you're talking about the

22   company having turned over documents to the CFPB, I'm quite

23   sure they have.

24           THE COURT:  Right.

25           MS. SIMONETTI:  Right.

1          THE COURT:  But I'm saying you could contact the

2     CFPB and say this is a request.  Obviously, it reads on the

3     stuff you've asked us for, the requests you've made of us and

4     the stuff we've given you back.

5          Judge Brown, sitting in Central Islip, who has a

6     gavel and is going to bang it soon, would like to know if you

7     want to be heard on this or if you have any plan on invoking

8     this quasi privilege.

9          MS. SIMONETTI:  Right.

10          THE COURT:  I'm calling it a quasi privilege for the

11     reason I'm not sure it's as clearly defined having --

12          MS. SIMONETTI:  I think that the requirement is

13     actually giving them notice.  So let's say you gave them

14     notice with --

15          THE COURT:  Right.  So give them the notice, but

16     tell them that, you know -- and keep it short, you know.

17          MS. SIMONETTI:  Right.  Right.

18          THE COURT:  That I would like to hear from you.  You

19     need to hear back from them in two weeks because you're going

20     to have to figure out if they're going to approach me, right?

21          So maybe three weeks from now, you know, guess what,

22     they don't care.  And if they don't care, then we -- what's

23     the --

24          MS. SIMONETTI:  I think the -- to me there's still

25     burden in there because you're then asking them or someone to

1          look still at everything.

2                    THE COURT:  No.  No.

3                    MS. SIMONETTI:  Yes?

4                    THE COURT:  No.  No.

5                    MS. SIMONETTI:  There might be some things --

6                    THE COURT:  I would like them to know if they --

7                    MS. SIMONETTI:  -- that are privileged.

8                    THE COURT:  -- intend in this matter at all --

9                    MS. SIMONETTI:  At all?

10                    THE COURT:  -- to invoke their examination

11          privilege.

12                    MS. SIMONETTI:  Oh.

13                    THE COURT:  Because it's a weird thing.  I'm not

14          sure you have standing to raise it.

15                    MS. SIMONETTI:  I don't think we do.

16                    THE COURT:  Right?

17                    MS. SIMONETTI:  And I think we can't run afoul of it

18          either.  Right.

19                    THE COURT:  And certainly you don't know if they

20          care.  Or if they do, what they care about, right?  Maybe the

21          format of their subpoena is proprietary.  And they say don't

22          turn over the subpoenas, but you could turn over the documents

23          that -- and then we're done.  Then we know.  It's easy.

24          Right?

25                    Because he's not going to be able to convince me

1    that the subpoena is that relevant if that's really the thing

2    that's -- I'm making this up, but you know -- you know what

3    I'm saying?  We can cut through a lot of this.

4              So I'm going to direct you to reach out to their

5    counsel at my request and say -- and give them the discovery

6    request that you think may read on their stuff and tell them

7    that they must as quickly as possible please -- and let's set

8    -- seriously a short-time frame, the next couple of weeks --

9    let you know if they want to be heard or if they have a

10   position or if they don't care.  If they don't care, we're

11   done.

12             MS. SIMONETTI:  I have not worked with them

13   directly.  I do not know what their --

14             THE COURT:  Okay.  I can't --

15             MS. SIMONETTI:  -- response would be.

16             THE COURT:  I have these invitations I issue --

17   they're called orders -- so I can issue one if you want.  If

18   you need me to --

19             MS. SIMONETTI:  No.  No.

20             THE COURT:  If they won't get back to you, I'll give

21   you something.

22             MS. SIMONETTI:  No.

23             THE COURT:  You know what I mean?  And I'll say if I

24   don't hear back from you in two weeks, I'm going to assume

25   that you have no privilege that you are invoking.  And we can

42

1      take it from there.

2              But that's a good issue and I'm glad you brought

3      that up.  So we got one little piece -- see, we got a little

4      piece of progress, right?  So that's one issue.

5              What else are the big issues we should work on now?

6              MR. GUDMUNDSON:  Are you still speaking to --

7              THE COURT:  I'm opening the floor for discussion.

8              MR. GUDMUNDSON:  Okay.  I think that -- I don't

9      think I've been unclear in my negotiations and discussions

10     with defense counsel.  But I think Your Honor is right.  I

11     think that for a lot of these issues there doesn't need to be

12     a collection of documents to resolve them.

13             For example, we've got a request out there for

14     communications between Navient and the Department of Education

15     about who may be liable under the contracts.  And it's a big

16     issue in the case because it's a big issue in the case.

17             We're claiming third-party beneficiary status

18     essentially and so it's a big issue.  They've objected on

19     relevance grounds and we think that's pretty not there.  And

20     so, you know, is it relevant or not?

21             I don't think you need to go through and run

22     searches to the tune of millions of dollars to determine -- to

23     negotiate that.  That's all we're asking to do, to negotiate

24     these objections.

25             THE COURT:  Okay.  Okay.  So why don't I do this?

1    I'm not going to stay discovery at this point.

2              I do have one other question actually for defense

3    counsel before I close this out.

4              MS. SIMONETTI:  Okay.

5              THE COURT:  If all of your legal dreams come true in

6    Judge Bianco's decision, are the motions you made completely

7    dispositive of the case or are there still things left?

8              MS. SIMONETTI:  Nothing left.

9              THE COURT:  Okay.  Even the individual claim?

10             MS. SIMONETTI:  Correct.

11             THE COURT:  And the strongest, shortest argument on

12   that is what?  What's the -- what's your defense that could

13   knock out the individual claim?

14             MS. SIMONETTI:  Preemption under the HEA.  And we

15   also have substantive arguments on the merits of each of the

16   claims.

17             THE COURT:  Okay.

18             MS. SIMONETTI:  The motion to strike obviously would

19   not impact Ms. Travis.

20             THE COURT:  Interestingly, you told me there's sort

21   of a parallel litigation in Pennsylvania.  Were those

22   arguments raised there?

23             MS. SIMONETTI:  They were raised there.  And that

24   motion to dismiss and strike also has not been ruled upon.

25             THE COURT:  Oh.  Interesting.  Okay.  That wasn't

1    what I thought you were going to say.

2              MS. SIMONETTI:  But I would --

3              MR. GUDMUNDSON:  But, Your Honor, I believe --

4    sorry.

5              MS. SIMONETTI:  The one motion to strike that has

6    been heard and ruled upon was granted.

7              THE COURT:  Okay.

8              MR. GUDMUNDSON:  And I believe the preemption

9    argument has been ruled upon in both the CFPB and Pennsylvania

10   actions.

11             THE COURT:  So what I'm going to say is this.  I

12   think that my re-emphasis of the meet and confer rule really

13   takes the day today because the truth of the matter is I'm not

14   going to stay all discovery as a blanket matter.

15             I think the Second Circuit and Supreme Court have

16   been very clear in their statements.  I have them up here and

17   I read them once in a while.  Although attorneys don't believe

18   me.

19             The Chief Justice of the United States Supreme Court

20   said we have to move these cases faster.  We just can't always

21   stay everything with every motion.  And I agree with that.

22             On the other hand, particularly because there is an

23   outcome where plaintiff's counsel's nightmare may come to pass

24   where they lose everything in a motion to dismiss, I'm not

25   going to do something that's going to be an extraordinary

1    expense.

2              So what that all says to me is that nothing is on

3    the table here today that's really ripe yet in the sense that

4    you need to talk to each other and figure where you're going.

5    Try to work it out.  If you can't work it out, you're going to

6    come to me, but I need specifics from you on this.

7              It's going to cost 850,000 man hours to do this,

8    person hours to do this, or it requires attorneys to review

9    300,000 documents and we think this category should be out.

10   But I recommend being judicious with your selection, right.

11             And meanwhile if you ask for the world, you won't

12   get that either, right, because you're going to wind up

13   treading on this.

14             She'll -- there's so many.  There's 800,000 requests

15   and I can't even --

16             Okay?  So you both have to sort of work together and

17   figure it out.

18             I think providing the discovery from the other case

19   was a really smart move and that kind of gives everybody

20   something to work on and what not.

21             I think you should meet on the objections just like

22   we worked -- at least talked through the high level objection

23   on the examination privilege, right?

24             I think you all an sit down and do that, right, if

25   you want.  It's still business hours.  I have two witness

1    rooms behind you.  You might be my guests.  You know, you can

2    -- because like my family only gets together at weddings and

3    funerals, I find that lawyers talk more when you're in the

4    same room.  So while you're here today, if you want to try to

5    work through something, it's a good idea.

6              If you want to set up confers for coming weeks, we

7    can do that.  But I think you should just work on the stuff

8    that you can get rid of without going to the expense of doing

9    the search of a billion records and so forth.  Yeah?

10             MS. SIMONETTI:  Right.  And just for the record, on

11   the issue of the investigation materials, I think -- I mean,

12   it's conceivable that the company will have to go to each of

13   the states as well.  I do not know what the rights of the

14   various states might be, so --

15             THE COURT:  How many state investigations have there

16   been?  Do you know?

17             MS. SIMONETTI:  There are a handful I want to say.

18             THE COURT:  Okay.  And I'm not talking about a

19   statement as to the issue of Mary Jones in Nebraska

20   complaining generally.

21             MS. SIMONETTI:  No.

22             THE COURT:  It's got to be the same sort of kind of

23   conduct or same scope, right?

24             MS. SIMONETTI:  Right.  I understand.  So that's --

25   for example, with the CFPB action, it involves the steering

1    allegations --

2                 THE COURT:  Right.

3                 MS. SIMONETTI:  -- and, you know, a handful of other

4    things.  And then there are these I want to say four or five

5    pending state cases --

6                 THE COURT:  Okay.  Perfect.

7                 MS. SIMONETTI:  -- that includes that.  I have no

8    idea what the rights of those state AG's might --

9                 THE COURT:  Right.  So let's start off with the one

10   that we know about, right, and see if we can get that resolved

11   in the next couple of weeks.

12                Thereafter, why don't you then solicit input from

13   those states.  And if there's a problem, you can all, on

14   consent, anytime, set up a briefing schedule for me where

15   they're free to file something.

16                Because I think, you know, even though they're not

17   parties here, I would let them intervene for that purpose.  I

18   mean, it doesn't even have to be that formal.  I'll just take

19   a letter.

20                Because you're in a very odd position.  I understand

21   you can't waive something that might be protected by law,

22   right?  But you're also -- you don't have the information you

23   need to know whether they care, right?

24                Maybe it's one of those eh, whatever, suing anyway.

25   Who cares.  Or it's an uh-uh, this stuff, this reveals our

1     informant or whatever.  I don't even know.

2              But it's a very interesting issue.  Interesting

3     issues are expensive and take time.  And I don't encourage

4     them for that reason.  It's what we live for as lawyers and

5     judges.  We get excited.  But the clients, it's the worst

6     thing for them.

7              So see if you can work around the issues as much as

8     you can.  And if not, set up briefing schedules and I'll deal

9     with -- and letter motions will be sufficient.

10             I have written a few things in the area if you want

11    to look around.  I remember specifically the dental monopoly

12    case and whatever.  There might be some case law that will

13    help you.

14             I'm not saying my writings are at the end of the

15    law, but I can show you where I started.  Right?  So take a

16    look and see if that's helpful.  All right?

17             What else should we do today while we're together?

18             MR. GUDMUNDSON:  Nothing further from the

19    plaintiffs, Your Honor.

20             THE COURT:  Anything else for the defendant while

21    we're here?

22             MS. SIMONETTI:  I don't think so.

23             THE COURT:  Okay.  So again I think it was meeting

24    all of you.  I think.  Yeah?

25             MS. SIMONETTI:  I believe so.

49

1          THE COURT:  Yeah.  It was delightful meeting all of

2    you.  Keep working well together.  And you know how to find

3    me.

4          MR. GUDMUNDSON:  Thank you, Your Honor.

5          THE COURT:  All right.  Have a good day.  Take care.

6       (Proceedings concluded at 3:02 p.m.)

7    I, CHRISTINE FIORE, court-approved transcriber and certified

8    electronic reporter and transcriber, certify that the

9    foregoing is a correct transcript from the official electronic

10   sound recording of the proceedings in the above-entitled

11   matter.

12

13   *Christine Fiore*

14   _____          February 14, 2019

15       Christine Fiore, CERT

16          Transcriber

17

18

19

20

21

22

23

24

25