UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MARIE TRAVIS, on behalf of herself and all others
similarly situated,

                        Plaintiff,

                                                    **MEMORANDUM AND ORDER**

        - against -                                  17-CV-4885 (RRM) (ST)

NAVIENT CORPORATION and NAVIENT
SOLUTIONS, INC.,

                        Defendants.
----------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

        Plaintiff Marie Travis ("Travis" or "Plaintiff"), a New York resident who took out

student loans issued by the federal government, brings this putative class action against the

servicer of those loans, defendants Navient Corporation and Navient Solutions, Inc. (collectively,

"Navient" or "Defendants"), both of which are incorporated and headquartered in Delaware.

Travis alleges, among other things, that Navient falsely represented that it would help distressed

borrowers find repayment plans that fit their needs, then improperly steered them into

forbearance in order to maximize Navient's profits.  Navient now moves pursuant to Federal

Rule of Civil Procedure 12(b)(6) to dismiss Travis' complaint as preempted by the Higher

Education Act of 1965 and to dismiss each of Travis' four causes of action for failure to state a

claim.  Navient also moves, in the alternative, to strike the class allegations of the complaint

pursuant to Rule 12(f).  For the reasons set forth below, the motion to dismiss is granted in part

and denied in part and the motion to strike is denied as premature.

## BACKGROUND

The allegations in Travis' complaint were described to some degree in Judge Bianco's February 16, 2018, order, which denied a motion to intervene in this action. (Doc. No. 51.) Although familiarity Judge Bianco's order is assumed, the Court will repeat some portions of the judge's description here and detail other allegations which are relevant to the instant motion. The following facts are drawn from plaintiff's complaint and are assumed to be true for purposes of this memorandum and order.

In 2005–2006, Travis obtained two direct federal student loans and a private loan from Sallie Mae to cover the expenses of her college education. (Compl. (Doc. No. 1), ¶ 22.) Federal student loans, as compared to private student loans, have several benefits, including flexible repayment options. (*Id.* ¶¶ 6, 53.) Two of those repayment options are frequently mentioned in Travis' complaint: income-driven repayment ("IDR") plans and forbearance. (*Id.* ¶¶ 57–62.) Under IDR plans, which are designed for borrowers experiencing long-term financial distress, borrowers pay a percentage of their discretionary income instead of a fixed monthly payment. (*Id.* ¶¶ 58–59.) In addition, IDR plans provide loan forgiveness after 20 to 25 years of monthly payments. (*Id.* ¶ 60.) Forbearance is designed for student loan borrowers who are experiencing temporary financial hardship. (*Id.* ¶ 61.) While this option allows borrowers to temporarily stop making student loan payments, loans in forbearance continue to accumulate unpaid interest, which is then added to the principal balance of the loan. (*Id.* ¶¶ 61–62.) Accordingly, if continued over the long term, forbearance can significantly increase the principal balance of the student loans. (*Id.* ¶ 62.)

Although the financing for the direct federal student loans is supplied by the federal government pursuant to the Health Care and Education Reconciliation Act, (*id.* ¶¶ 5, 52), those

loans were initially serviced by Sallie Mae in accordance with its 2009 Servicing Contract with the United States Department of Education (the "DOE"), (*id.* ¶ 26).  Following a corporate reorganization in 2014, Navient became the successor to Sallie Mae.  (*Id.*)  Since then, Travis' direct federal student loans have been managed by Navient pursuant to the 2009 Servicing Contract.  (*Id.*)  According to that contract, "Navient is responsible for 'any potential services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt' and must provide 'default aversion activity on loans serviced . . . on the servicer's system.'"  (*Id.* ¶ 80.)

Following her graduation, Travis made continuous and timely monthly payments on the loans for nearly 10 years.  (*Id.* ¶ 22.)  In 2016, however, Travis was diagnosed with a "life-threatening syndrome" which rendered her disabled for a period of over six months.  (*Id.* ¶ 108.)  Since the $206 monthly payments on her two federal loans consumed more than half of her monthly disability benefit, she was unable to continue making those payments.  (*Id.* ¶ 109.)

Navient's website and blog contained statements encouraging distressed borrowers to contact the servicer for help finding suitable repayment options.  (*Id.* at ¶ 148.)  For example, Navient told borrowers:  "We can help you find an option that fits your budget, simplifies payment, and minimizes your total interest cost."  (*Id.* at ¶ 148a.)  Navient encouraged borrowers who were experiencing problems making loan payments to contact the servicer, offering help in making "the right decision for your situation."  (*Id.* at ¶¶ 148b–c.)

In or about April 2016, Travis contacted Navient to inquire about options for reducing her monthly payments in light of her disability.  (*Id.* ¶ 110.)  Initially, Navient told her that she needed to continue paying the entire monthly amount.  (*Id.*)  After Travis emphasized that she could not afford to do so, the customer service representatives placed her in forbearance.  (*Id.*)

Although Travis informed the representatives that she might have a long-term disability, the representatives did not inform Travis about IDR plans and other federal programs to forgive student loan debt for borrowers were totally or permanently disabled. (*Id.* ¶ 111.) Instead, they told Travis that she had only two choices: pay the full amount or enter forbearance. (*Id.*)

Travis remained in forbearance for the next eight months. (*Id.* ¶ 112.) In January 2017, she returned to work and was able to pay her monthly loan payment. (*Id.*) The following month, however, her condition returned, again rendering her unable to work. (*Id.* ¶ 113.) She called Navient to report this development and was again placed in forbearance. (*Id.*) Navient neither told her that she might qualify for IDR nor inquired as to whether her disability was total and permanent. (*Id.*) In addition, Navient did not respond at all to Travis' two subsequent requests for "disability forgiveness." (*Id.* ¶ 114.) As a result, Travis never knew about the IDR plan option or that she might be eligible for reduced monthly payments. (*Id.* ¶ 115.)

Although Travis was placed on forbearance, Navient repeatedly contacted her parents, who had cosigned the loans, seeking to obtain the full monthly loan payment. (*Id.* ¶ 116.) According to Travis, Navient contacted her parents "upwards of 8–10 times daily." (*Id.*) Travis alleges that she suffered both financial harm and emotional distress because of Navient's "utter lack of interest in providing her meaningful assistance with repaying her loans." (*Id.* ¶ 118.)

<u>This Action</u>

On August 18, 2017, Travis commenced this diversity action against Navient on behalf of herself and all others similarly situated. Her complaint seeks to certify a nationwide class consisting of "[a]ll individuals who are direct student loan borrowers from the federal government and who had at least one federal loan serviced by Navient and/or any of its predecessors between January 1, 2010 and the present who were placed in forbearance." (*Id.* ¶

118.)  The complaint also seeks to certify a New York subclass consisting of "[a]ll residents of New York" who fall within the nationwide class.  (*Id.* ¶ 119.)

The complaint alleges four causes of action.  The first, which is brought on behalf of the nationwide class, alleges that Navient violated the Delaware Consumer Fraud Act ("DCFA"), Del. Code Ann. tit. 6, § 2511 *et seq.*, by informing the federal student loan borrowers whose loans it serviced that they could rely on Navient to examine the borrowers' financial situations and determine the best repayment plan.  (*Id.* ¶ 129.)  Travis alleges that "[s]tatements inducing customers to rely on Navient were, and still are, available on Navient's website and Navient's blog," and that Navient's Chief Executive Officer, Jack Remondi, "made numerous such statements available in various mediums."  (*Id.*)

The second cause of action, which is brought on behalf of both the nationwide class and the New York subclass, alleges breach of the 2009 Servicing Contract between Navient and DOE.  Travis asserts that Navient breached this contract "by failing to properly service borrowers' federal student loans and instead, focusing on its own profits."  (*Id.* ¶ 139.)  Travis alleges that the DOE "clearly implemented a policy of encouraging servicers to educate borrowers about repayment options and to help borrowers assess their best repayment options" and claims that she and the putative class "are intended third-party beneficiaries under the Servicing Contract."  (*Id.* ¶¶ 139, 141.)

The third cause of action, which is brought solely on behalf of the New York subclass, alleges that Navient violated New York General Business Law ("GBL") § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce."  (*Id.* ¶ 146.) Travis alleges that Navient told its customers that they could rely on Navient "to engage in a proper analysis and determine the appropriate repayment plan."  (*Id.* ¶ 148.)  However, "[i]nstead

of honoring its promises, Navient implemented a forced-forbearance approach . . . that guided customers away from IDR plans and into forbearance, regardless of their circumstances." (*Id.* ¶ 149.)

The fourth cause of action seeks declaratory relief on behalf of both the Nationwide class and the New York subclass. It seeks "a declaration that Navient has a contractual responsibility to fulfill its role as a proper student loan servicer and provide borrowers with assistance in understanding and choosing repayment plans." (*Id.* ¶ 161.)

Navient's Motion to Dismiss

Navient now moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to strike the class allegations. Defendants' Combined Memorandum in Support of Motion to Dismiss ("Defendants' Memo") raises a total of six arguments. First, Navient argues that Travis' claims must be dismissed because they are preempted by the Higher Education Act of 1965 ("HEA"), 20 U.S.C. 1070 *et seq.* (Defendants' Memo (Doc. No. 43-1) at 8.) Navient principally argues that these claims are expressly preempted by 20 U.S.C. § 1098g, which provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] . . . shall not be subject to any disclosure requirements of any State law." Navient asserts that because "Travis' claims are, in essence, grounded in [Navient's] failure to disclose," this preemption provision "plainly applies." (Defendants' Memo at 1.) Navient also argues that Travis' claims are barred by conflict preemption, relying primarily on *Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010).

Navient next argues that all four of Travis' causes of action fail to state a claim on which relief may be granted. Navient first argues that Travis' claim under the DCFA fails for multiple reasons. Navient asserts that the "clear language of the statute . . . restricts its application to

deceptive practices in connection with the sale or advertisement of . . . merchandise" and that "post-sale representations which are not connected to the sale or advertisement" of merchandise do not violate the DCFA. (Defendants' Memo at 11.) Navient also argues that Travis "fails to plead her claim with the specificity required by [Federal Rules of Civil Procedure] 9(b)" and that DCFA claims can only be brought in a court of competent jurisdiction in Delaware. (Defendants' Memo at 12.)

With respect to Travis' second cause of action, Navient argues that Travis is not a third-party beneficiary of the Servicing Contract between Sallie Mae and the DOE. (Defendants' Memo at 12–14.) Navient principally argues that the language of the Servicing Contract does not evidence an intention to permit borrowers to bring private contract actions as third-party beneficiaries. (*Id.* at 13–14.) In addition, Navient notes that Travis does not allege a breach of any specific term in the Servicing Contract. (*Id.* at 15.)

With respect to Travis' third cause of action, Navient argues that Travis fails to allege a violation of GBL § 349(a) with the specificity required by Federal Rule of Civil Procedure 9(b). (Defendants' Memo at 16 (citing, *inter alia*, *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003)). Navient also argues that Travis has failed to allege "an act or practice that was misleading in any material way." (Defendants' Memo at 17.) With respect to Travis' fourth cause of action, Navient argues that the Declaratory Judgment Act is procedural and does not establish an independent basis for relief. (*Id.* at 18.) Navient argues that if all other causes of action are dismissed, there is no basis for declaratory relief. (*Id.*)

Finally, Navient argues that if Travis' complaint survives its Rule 12(b)(6) challenge, the class allegations of the pleading should be stricken pursuant to Federal Rule of Civil Procedure 12(f). Navient principally argues that Travis will be unable to "demonstrate commonality,

predominance, or superiority," and will therefore be unable to certify a class pursuant to Federal Rule of Civil Procedure 23(a). (Defendants' Memo at 19.)

Travis opposes Navient's motion in all respects. First, Travis argues that her claims are not barred by express or conflict preemption. Next, she argues that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) does not apply to claims under the DCFA or GBL § 349, and that she has stated a claim under those two statutes. In support of her argument that she and her fellow borrowers are third-party beneficiaries of the 2009 Servicing Contract between Sallie Mae and the DOE, Travis has submitted an affidavit from her attorney which attaches a copy of that contract. (*See* Ex. 1 to Declaration of Brian C. Gudmundsen (Doc. No. 47-2).) Travis also cites to provisions of the Declaratory Judgment Act in arguing that her declaratory judgment claim should be allowed to proceed. Finally, Travis argues that Navient's motion to strike the class allegations of the complaint is premature.

Supplemental Submissions

After this motion was fully briefed, both Travis and Navient submitted several Notices of Supplemental Authority to the Court. (Doc. Nos. 52–56, 63, 71.) The first of these notices – Defendants' Notice of Supplemental Authorities dated March 15, 2018 (Doc. No. 52) – attached a Federal Register notice from the DOE entitled "Federal Preemption and State Regulation of [DOE]'s Federal Student Loan Programs and Federal Student Loan Servicers," 83 Fed. Reg. 10619 (Mar. 12, 2018) (hereafter, "the Federal Register notice"). That notice interpreted the HEA as expressly preempting regulatory requirements imposed on federal student loan servicers by state law.

In an order dated September 26, 2018, Judge Bianco directed the parties to provide supplemental briefing on the question of what level of deference was owed to this notice.

Navient's supplemental brief argued that the notice was "at least . . . entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)," and that the DOE's reasoning, which mirrored that of *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, No. 17-CV-183 (NJR) (SCW), 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017), was persuasive. (Defendants' Brief on the Level of Deference to be Applied to the DOE's March 12, 2018 Notice (Doc. No. 58) at 1–6.) Travis agreed that *Skidmore* applied, but argued that the DOE's interpretation was not persuasive and was therefore not entitled to any deference. (Plaintiff's Brief on the Level of Deference to be Applied to the DOE's March 12, 2018 Notice (Doc. No. 62) at 5–9.)

The other notices of supplemental authority attached copies of various district court opinions relating to issues posed by Navient's motion. Most of these need not be discussed here, although some of those district court opinions are cited in the discussion that follows. However, in the last of these Notices of Supplemental Authority, Travis alerted the court that the Seventh Circuit Court of Appeals had reversed and vacated *Nelson*, 2019 WL 2636822, the district court opinion on which the Federal Register notice principally relied.

## STANDARD OF REVIEW

Navient's motion is principally brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which permits a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and

the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). In addition, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In all cases a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570).

## DISCUSSION

I.  HEA Preemption

The Supremacy Clause of the United States Constitution establishes that federal law "shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl.2. "A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Accordingly, "[t]he key to the preemption inquiry is the intent of Congress." *New York SMSA Ltd. Partnership v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citation omitted).

"[B]ecause the States are independent sovereigns in our federal system," the Supreme

Court has "long presumed that Congress does not cavalierly pre-empt state-law causes of

action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). This is particularly true in cases

where Congress has "legislated ... in a field which the States have traditionally occupied." *Id.*

"Because consumer protection law is a field traditionally regulated by the states, compelling

evidence of an intention to preempt is required in this area." *Gen. Motors Corp. v. Abrams*, 897

F.2d 34, 41–42 (2d Cir. 1990) (citing *Envtl. Encapsulating Corp. v. City of New York*, 855 F.2d

48, 58 (2d Cir. 1988)).

In general, three types of preemption exist: (1) express preemption, where Congress has

expressly preempted local law; (2) field preemption, where Congress has legislated so

comprehensively that federal law occupies an entire field of regulation and leaves no room for

state law; and (3) conflict preemption, where local law conflicts with federal law such that it is

impossible for a party to comply with both or the local law is an obstacle to the achievement of

federal objectives. *New York SMSA Ltd. P'ship*, 612 F.3d at 104. Courts have consistently held

that field preemption does not apply to the HEA. *See, e.g.*, *Hyland v. Navient Corp.*, No. 18-CV-

9031 (DLC), 2019 WL 2918238, at *8 (S.D.N.Y. July 8, 2019). Navient does not argue to

contrary but bases its argument on express and conflict preemption.

Express preemption "occurs when Congress withdraws specified powers from the States

by enacting a statute containing an express preemption provision." *Wurtz v. Rawlings Co., LLC*,

761 F.3d 232, 238 (2d Cir. 2014) (citation omitted). The HEA includes several express

preemption provisions, including one dealing with "disclosures" which provides: "Loans made,

insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act

of 1965 (20 U.S.C. 1070 *et seq.*) shall not be subject to any disclosure requirements of any State

law." 20 U.S.C. § 1098g. Relying on this provision, Navient argues that "Travis' claims are, in essence, grounded in [Navient's] alleged failure to disclose" and that HEA preemption "plainly applies." (Defendants' Memo at 1.) Defendants also cite to *Chae* and other authorities for the proposition that "courts have . . . found that conflict preemption can apply to the HEA." (*Id.* at 9.)

Navient's preemption argument has been rejected in at least three recent federal cases involving facts almost identical to those at bar: *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 643 (7th Cir. 2019); *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 533 (M.D. Pa. 2018); and *Hyland v. Navient Corp.*, No. 18-CV-9031 (DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019). In *Nelson*, the plaintiff borrowed money to pay for her education and had difficulty repaying the loans. The website of defendant Great Lakes Educational Loan Services, Inc. ("Great Lakes"), which serviced her loan, stated that Great Lakes would provide guidance to borrowers struggling to make their loan payments. The website represented, among other things: "Our trained experts work on your behalf," and "You don't have to pay for student loan services or advice," because "Our expert representatives have access to your latest student loan information and understand all of your options." *Nelson*, 928 F.3d at 641–42. However, according to Nelson, Great Lakes did not work on her behalf but steered her into repayment plans that were to Great Lakes' advantage and to her detriment.

Nelson brought a class-action lawsuit against Great Lakes, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and constructive fraud and negligent misrepresentation claims under Illinois common law. Great Lakes moved to dismiss these claims on the ground that they were expressly preempted by 20 U.S.C. § 1098g. Relying largely on *Chae*, the district court granted the motion, reasoning that Nelson's claims alleged in

substance only that Great Lakes failed to disclose certain information. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, No. 17-CV-183 (NJR) (SCW), 2017 WL 6501919 (S.D. Ill. Dec. 19, 2017).

On appeal, the Seventh Circuit reversed, holding Nelson's claims were "not expressly preempted to the extent she [was] alleging that Great Lakes made false or misleading affirmative representations to her in the counseling process," and that neither conflict preemption nor field preemption applied to her claims. *Nelson*, 928 F.3d at 642. The Seventh Circuit reasoned:

> When a loan servicer holds itself out to a borrower as having experts who work for her, tells her that she does not need to look elsewhere for advice, and tells her that its experts know what options are in her best interest, those statements, when untrue, cannot be treated by courts as mere failures to disclose information. Those are affirmative misrepresentations, not failures to disclose. … A borrower who reasonably relied on them to her detriment is not barred by § 1098g from bringing state-law consumer protection and tort claims against the loan servicer.

*Nelson*, 928 F.3d at 643.

In *Pennsylvania v. Navient Corp.*, *supra*, the Commonwealth of Pennsylvania sued Navient, alleging that it had committed a variety of unfair, deceptive, and abusive practices in connection with the origination and servicing of student loans in violation of the Consumer Financial Protection Act, 12 U.S.C. § 5536, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. and Cons. Stat. Ann. § 201-1, *et seq*. The Commonwealth alleged, among other things, that Navient "affirmatively steered borrowers facing long-term financial hardship into forbearance rather than exploring more appropriate IDR options … despite telling borrowers to contact it to obtain help in evaluating repayment options." 354 F. Supp. 3d at 537. As in this case, Navient moved to dismiss the state-law claims on the grounds of that they were preempted by the HEA.

In rejecting the express HEA preemption argument, Judge Robert D. Mariani was persuaded by the reasoning of an Illinois state court which had addressed a nearly identical issue in a parallel case brought by the State of Illinois under its consumer protection statute. In that case, as in *Pennsylvania*, "the core of the State's allegations [was] that Navient schemed to steer borrowers into forbearances, not just that Navient failed to disclose the availability of IDR plans." *Pennsylvania*, 354 F. Supp. 3d at 551 (quoting *People v. Navient Corp.*, No. 17 CH 761, at 12-13 (Ill. Cir. Ct. July 10, 2018)). Judge Mariani ruled that Pennsylvania's claims of unfair and deceptive conduct related to forbearance steering were not expressly preempted by 20 U.S.C. § 1098g, stating:

> The HEA and its associated regulations only require that particular disclosures are to be made in the delivery of federal student loans and generally prescribes how those disclosures should be made. It does not preempt the enforcement of a statute of general applicability under a state's traditional police power, here, the Commonwealth's state consumer protection law, … which proscribes unfair and deceptive acts or practices in commerce.

*Pennsylvania*, 354 F. Supp. 3d at 549–50 (internal citations omitted). Judge Mariani also held that these claims were not conflict preempted by the HEA, stating: "Navient's conflict preemption argument hinges on a rationale for the HEA, uniformity, that has not been universally recognized as a goal of the statute and is not clearly harmed by allowing the types of claims at issue in this case." *Id.* at 552.

In *Hyland*, borrowers alleged that Navient failed to properly advise them regarding their repayment options, recommending forbearance rather than options advantageous to the borrowers. At least one plaintiff, Eldon R. Gaede, made the exact same claim advanced by Travis: "that Navient informed him that there was no option for him to reduce his loans payments based on his income, and instead steered him into forbearance." *Hyland*, 2019 WL

2918238, at *4.  As in this case, Navient moved to dismiss, advancing express and conflict preemption claims.  Judge Denise Cote rejected these claims, citing to and relying upon both *Nelson* and *Pennsylvania*.

*Nelson*, *Pennsylvania*, and *Hyland* all distinguished *Chae* – the case on which Navient principally relies.  In that Ninth Circuit case, the plaintiffs argued that Sallie Mae employed "'unfair and 'fraudulent' business practices by using billing statements and coupon books that trick[ed them] … into thinking that interest [was] … calculated via the installment method …." *Chae*, 593 F.3d at 943.  The Ninth Circuit reasoned that "[a]t bottom, the plaintiffs' misrepresentations claims [were] improper-disclosure claims," and were therefore expressly preempted by 20 U.S.C. § 1098g.  *Chae*, 593 F.3d at 942.  In addition, conflict preemption barred the plaintiff's claims because the billing statements, coupon books, and standardized forms challenged by the plaintiffs complied with federal regulations governing such instruments and could not "simultaneously be misleading under state law."  *Id.* at 942.

As the Seventh Circuit correctly noted in *Nelson*, *Chae* "does not apply to claims of affirmative misrepresentations in counseling borrowers in distress."  *Nelson*, 928 F.3d at 642. *Chae* itself "limited the reach of some of its broader language by holding that other state-law claims, focusing on the 'use of fraudulent and deceptive practices *apart from the billing statements*,' are not preempted by § 1098g."  *Nelson*, 928 F.3d at 650 (quoting *Chae*, 593 F.3d at 943 (emphasis added in *Nelson*)).  In addition, "[t]here is nothing in the HEA that standardizes or coordinates how a customer service representative of a third-party loan servicer … shall interact with a customer … in the day-to-day servicing of his loan outside of the circumstance of pre-litigation informal collection activity."  *Hyland v. Navient Corp.*, 2019 WL 2918238, at *6 (quoting *Genna v. Sallie Mae, Inc.*, No. 11-CV-7371 (LBS), 2012 WL 1339482, at *8 (S.D.N.Y.

Apr. 17, 2012)).  Accordingly, the "holding in *Chae* has little application" to cases like this one. *Hyland*, 2019 WL 2918238, at *6 (S.D.N.Y. July 8, 2019).

Neither *Nelson* and *Highland* afforded deference to the DOE's 2018 Federal Register notice entitled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers."  83 Fed. Reg. 10619 (Mar. 12, 2018).  *Nelson*, which characterized this notice as "informal guidance," concluded that it was entitled only to *Skidmore* deference – *i.e.*, "respect according to its persuasiveness, as evidenced by the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'"  *Estate of Landers v. Leavitt*, 545 F.3d 98, 107 (2d Cir. 2008) (internal quotation marks, citations and alteration omitted).  *Nelson* found the Federal Register notice was "not persuasive" because it was "not particularly thorough and … 'represents a stark, unexplained change' in the Department's position."  *Nelson*, 928 F.3d at 651 n.2 (quoting *Student Loan Servicing Alliance v. District of Columbia*, 351 F. Supp. 3d 26, 50 (D.D.C. 2018)).

In *Hyland*, Judge Cote not only concurred with the Seventh Circuit's assessment but provided two additional reasons for concluding that the Federal Register notice was of "limited" persuasive value.  *Hyland*, 2019 WL 2918238, at *7.  First, Judge Cote found that the notice was "primarily directed to addressing cases in which States have 'enacted regulatory regimes or applied existing State consumer protection statutes that undermine [HEA's] goals by imposing new regulatory requirements on the Department's Direct Loan servicers, including State licensure to service Federal student loans.'"  *Id.* (quoting 83 Fed. Reg. at 10,619).  The judge noted:  "This is a private tort suit alleging misrepresentations regarding federal loan programs; it does not seek to impose new regulatory obligations on loan servicers."  *Id.*

Second, Judge Cote noted that the DOE's interpretation was inconsistent with that expressed by a Statement of Interest filed by the United States in another case. In *Sanchez v. ASA College, Inc.*, 14-CV-5006 (JMF), the United States declared:

> Nothing in the HEA or its legislative history even suggests that the HEA should be read to preempt or displace state or federal laws. Nor is there anything in the HEA or the regulations promulgated thereunder to evince any intent of Congress or [the DOE] that the HEA or its regulations establish an exclusive administrative review process of student claims brought under state or federal law, even if the conduct alleged may separately constitute an HEA violation.

*Sanchez*, No. 14-CV-5006 (JMF), ECF No. 64 (S.D.N.Y. Jan. 23, 2015). Judge Cote noted that "[t]he persuasive value of an agency's interpretation may be undermined when it is 'novel' or 'inconsistent with its positions in other cases.'" *Hyland*, 2019 WL 2918238, at *7 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 779 F.3d 74, 83 (2d Cir. 2015)).

The Court fully concurs with the reasoning in *Nelson*, *Pennsylvania*, and *Hyland* and holds that Travis' state-law claims are not preempted by the HEA. Accordingly, the Court will proceed to address Navient's arguments that Travis' four causes of action should be dismissed for failure to state a claim.

## II. Delaware Consumer Fraud Act

Travis' first cause of action alleges violations of the DCFA, a Delaware statute which prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale, lease or advertisement of any merchandise*, whether or not any person has in fact been misled, deceived or damaged thereby …." Del. Code Ann. tit. 6, § 2513 (emphasis added). The DCFA specifically defines the terms used in the italicized language above. "'Sale' means

any sale, offer for sale or attempt to sell any merchandise for any consideration." *Id.*, § 2511(8). "'Advertisement' means the attempt by publication, dissemination, solicitation or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in, any merchandise." *Id.*, § 2511(1). "'Merchandise' means any objects, wares, goods, commodities, intangibles, real estate or services." *Id.*, § 2511(6).

The stated purpose of the DCFA is "to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within [Delaware]." *Id.*, § 2512. The statute expressly states that the DCFA "shall be liberally construed and applied to promote its underlying purposes and policies." *Id.* However, liberal construction is not license to "ignore the clear language of the statute which restricts its application to deceptive practices 'in connection with the sale or advertisement' of the merchandise." *Olga J. Nowak Irrevocable Tr. v. Voya Fin., Inc.*, No. 17-CV-1404 (RGA), 2018 WL 3717015, at *3 (D. Del. Aug. 3, 2018) (quoting *Norman Gershman's Things to Wear, Inc. v. Mercedes–Benz of North America, Inc.*, 558 A.2d 1066, 1074 (Del. Super. Ct. 1989)). "[A]n after sale statement may be viewed as 'in connection with the sale of merchandise'" if a trier of fact could find that "a misrepresentation made after the sale [was] … 'in connection with the sale.'" *Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 962 (D. Del. 1993). Conversely, "post-sale representations which are not connected to the sale or advertisement of the [merchandise] do not constitute consumer fraud under the act." *Olga J. Nowak Irrevocable Tr.*, 2018 WL 3717015, at *3 (quoting *Norman Gershman's Things to Wear, Inc.*, 558 A.2d at 1074).

No reasonable trier of fact could find that Navient's misrepresentations in this case were connected to the sale or advertisement of the student loans. Travis took out the loans in 2005–

2006, years before Navient replaced Sallie Mae as servicer. Accordingly, at the time Travis decided to borrow, she could not have been aware of Navient's misrepresentations about assisting distressed borrowers. Travis does not allege that Navient's predecessor, Sallie Mae, made similar misrepresentations or that these misrepresentations appeared in any advertisement.

Indeed, the DCFA claim is completely at odds with Travis' theory of the case. Travis does not contend that the misrepresentations induced her to borrow. Rather, she claims that the misrepresentations caused her to rely on Navient to provide disinterested advice as to which repayment plan would best suit her needs. Since Travis' own allegations do not suggest that Navient's post-sale representations were in any way connected to the "sale" or "advertisement" of the loans, her allegations do not make out a violation of the DCFA. *See Olga J. Nowak Irrevocable Tr.*, 2018 WL 3717015, at *3; *Norman Gershman's Things to Wear, Inc.*, 558 A.2d at 1074.

Moreover, even if there were allegations suggesting that Navient's after-sale statements were in connection with the sale or advertisement of the loans, Travis does not allege that any unfair or deceptive merchandising practices occurred "in part or wholly within [Delaware]." Del. Code Ann. tit. 6, § 2512. The complaint alleges only that Navient is a Delaware corporation and has its headquarters in that state. (Compl. ¶ 19). "[I]ncorporation in Delaware is not sufficient to permit application of the DCFA to out-of-state conduct." *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 323 (D. Del. 2012).

III.  Breach of Contract

The breach of contract theory set forth in Travis' second cause of action is predicated on the assertion that she is a third-party beneficiary of the 2009 Servicing Contract between DOE and Sallie Mae, Navient's predecessor in interest. "Federal common law governs the

interpretation of federal government contracts, such as … Servicing Contracts." *Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1092 (C.D. Cal. 2019) (citing *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1160 (9th Cir. 2016)). To apply "federal common law of contract," courts look to "general principles of contract law." *Dobson v. Hartford Fin. Servs. Grp., Inc.*, 389 F.3d 386, 399 (2d Cir. 2004). These principles provide that "absent a contractual relationship there can be no contractual remedy." *Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984). "Such a relationship exists if the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of the contract." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014).

"Proving third-party beneficiary status requires that the contract terms 'clearly evidence[] an intent to permit enforcement by the third party' in question.'" *Id.* (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (alteration in *Premium Mortg.*)). "[I]ndividual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* (quoting Restatement (Second) of Contracts § 313 cmt. a (1981)).

Navient has provided the Court with copy of the Servicing Contract, which is incorporated by reference in the complaint. However, Navient has not cited to any portion of that agreement which clearly evidences an intent to permit enforcement by borrowers. The Court has read the contract itself and notes that it does, on one occasion, expressly provide that Sallie Mae will be a third-party beneficiary of a "Use and Non-disclosure Agreement" which is contemplated by the Contract. *See* Servicing Contract, Addendum 2, ¶ B.9(c)(6) (Doc. No. 47-2 at 12.) But the Servicing Agreement does not include any similar language with respect to borrowers. The absence of this language implies that the parties to the Servicing Contract did

not intend to make the borrowers third-party beneficiaries of their agreement. Accordingly, the Court concludes that the borrowers are incidental beneficiaries and are not entitled to sue under the contract.

Even if Travis were a third-party beneficiary of the Servicing Contract, the complaint does not identify a specific provision of that contract which was allegedly violated. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Memo") asserts that "the Servicing Contract required Navient to provide specific services directly to borrowers, including educational services and assistance in choosing appropriate repayment options." (Plaintiff's Memo (Doc. No. 47) at 19.) Plaintiff's Memo also claims that "the servicing contract expressly required Navient to enact measures to make sure that it put its obligations to help borrowers ahead of its own bottom line." (*Id.* at 19–20.) However, the 17 paragraphs of the complaint cited in support of these propositions do not substantiate Travis' claims. Only four of these paragraphs quote or describe provisions in the Servicing Contract, (*see* Compl. ¶¶ 55, 137–139), and none of those paragraphs allege specific provisions that could give rise to a breach of contract claim. Although Travis contends that the Servicing Contract "clearly implemented a policy of encouraging servicers to educate borrowers about repayment options and to help borrowers assess their best repayment options," (Compl. ¶ 139), the contractual language which Travis quotes in support of this proposition does not impose any such obligation on the servicer. Accordingly, the complaint fails to state a claim for the breach of the Servicing Contract.

IV.    New York General Business Law § 349

New York General Business Law § 349(a) ("GBL § 349") makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the

furnishing of any service in [New York] state …." To successfully assert a claim under this section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)).

In moving to dismiss Travis' third cause of action, Navient argues that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to GBL § 349 claims and that Travis has failed to allege "an act or practice that was misleading in any material way." (Defendants' Memo at 16–17.) Neither argument has merit. First, "because GBL § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, … and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) …." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (internal citations omitted). Travis "need only meet the bare-bones notice-pleading requirements of Rule 8(a) …." *Id.* Travis has done so. The complaint specifically alleges that Navient made statements on its website and blog that promised to help distressed borrowers "find an option that fits [their] budget, simplifies payments, and minimizes [their] total interest cost." (Compl. at ¶¶ 120, 148–48a.) The complaint further alleges that the promises were material in that they induced borrowers to seek Navient's help and misleading because Navient steered them into repayment plans that were not in the borrowers' best interests. (Compl. at ¶ 151.) As a result of this practice, Travis was allegedly not informed of repayment options that may have been more advantageous to her. (*Id.* at ¶ 115.) Since these allegations are

sufficient to state a claim under GBL § 349, Navient's motion to dismiss Travis' third cause of action is denied.

V.      Declaratory Judgment

The federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 ("DJA"), gives a district court the discretion to "declare the legal rights and other legal relations of any interested party seeking such declaration." *Id.* § 2201(a). However, the DJA "is procedural only and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (internal quotation marks and citations omitted). Thus, a "request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief." *Lisa Coppola, LLC v. Higbee*, No. 1:19-CV-678, 2020 WL 1154749, at *10 (W.D.N.Y. Mar. 10, 2020). Travis' fourth cause of action is therefore construed as a request for declaratory relief, not a separate cause of action.

VI.     The Motion to Strike Class Allegations

Navient argues that, if Travis' complaint survives the motion to dismiss, the Court should strike the class allegations of the complaint. Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike material solely "on the ground that the matter is impertinent and immaterial" are disfavored. *Brown v. Maxwell*, 929 F.3d 41, 52 n.42 (2d Cir. 2019). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404

(W.D.N.Y. 2010) (internal citations and quotations omitted); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) (same). Motions to strike class allegations at the motion-to-dismiss phase are therefore "[g]enerally … deemed procedurally premature." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012).

"There is an exception to this general rule … [where] a motion to strike … addresses issues 'separate and apart from the issues that will be decided on a class certification motion.'" *Id.* (quoting *Rahman v. Smith & Wollensky Rest. Group, Inc.*, 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008). However, Navient's motion does not fall within this exception. Navient principally argues that Travis will be unable to "demonstrate commonality, predominance, or superiority," and will therefore be unable to certify a class pursuant to Federal Rule of Civil Procedure 23(a). (Defendants' Memo at 19.) Since it would be premature to decide this fact-specific argument at this juncture, Navient's motion to strike Travis' class allegations is denied. Navient may raise these arguments if Travis moves for class certification pursuant to Federal Rule of Civil Procedure 23.

## CONCLUSION

For the reasons set forth above, Navient's motion to dismiss is granted with respect the first and second causes of action alleged in Travis' complaint but denied with respect to the third cause of action, which alleges a violation of New York General Business Law § 349. Travis' fourth cause of action is construed as request for declaratory relief, not as a separate cause of action. Navient's motion to strike the class allegations of the complaint is denied as premature.

SO ORDERED.

Dated: Brooklyn, New York
      May 18, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge